**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

AVIENT CORPORATION,

                           Plaintiff,

v.

WESTLAKE VINYLS, INC.,

                         Defendant.

Case No.  5:22-cv-51-TBR

Electronically Filed

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Avient Corporation ("Avient") files this Complaint for Declaratory and Injunctive Relief against Defendant Westlake Vinyls, Inc. ("Westlake") and alleges as follows:

## PRELIMINARY STATEMENT

In 1951, the Goodrich Corporation ("Goodrich") acquired farmland near Calvert City, Kentucky, and built a facility to manufacture various chemicals ("the Site"). Goodrich sold the facility to Westlake via two transactions in 1990 and 1997. The agreements supporting those transactions required Westlake to indemnify Goodrich for environmental costs attributable to Westlake's activities at the Site, and required Goodrich to indemnify Westlake for environmental costs attributable to Goodrich's activities at the Site. As Goodrich's successor in interest under the agreements, Avient assumed Goodrich's indemnification obligations.

In 2007, after years of litigation over the allocation of Site-related environmental costs, Goodrich, Avient, and Westlake entered into a settlement agreement (the "2007 Settlement Agreement") (attached as Exhibit 1, filed under seal). As relevant here, that agreement provided a method to allocate particular environmental costs going forward. Specifically, the 2007

Settlement Agreement required Avient and Westlake to allocate future environmental costs through arbitration. *See* 2007 Settlement Agreement § 6.3. But it also stated that the result of any arbitration would not be binding: Instead, either party could seek a completely de novo judicial determination of the environmental cost allocation after any arbitration. *Id.* This provision is invalid under *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008). There, the Supreme Court held that an arbitration clause allowing for de novo judicial review of awards conflicts with the Federal Arbitration Act ("FAA")—which allows only narrow judicial review of awards—and is thus unenforceable. *See id.* at 583.

In 2017, Avient filed an arbitration demand seeking to allocate liability for certain costs related to the Site ("the 2017 Arbitration"). Before the arbitration hearing began, the Tenth Circuit decided *Citizen Potawatomi Nation v. Oklahoma*, 881 F.3d 1226 (10th Cir. 2018). Building on *Hall Street*, *Potawatomi* concluded that when a judicial review provision authorizing de novo review of arbitral awards is material to the parties' agreement to arbitrate, the entire arbitration agreement is invalid and unenforceable and must be severed from the remainder of the parties' agreement. *See id.* at 1241.

Because *Hall Street* and *Potawatomi* made clear that the 2007 Settlement Agreement's arbitration provisions are invalid, Avient asked this Court to declare the parties' obligation to arbitrate unenforceable and to enjoin the 2017 Arbitration. The Court rejected that request, holding that, by initiating the 2017 Arbitration, Avient had waived its right to challenge the validity of the arbitration provisions.

On appeal, the Sixth Circuit observed that Avient "has a strong argument that the judicial-relief provision violates *Hall Street* by expanding the grounds for vacating an arbitration award" and hence "that the Agreement's judicial-relief provision is invalid under the FAA."

*PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 697, 701 (6th Cir. 2019). The court also opined that Avient's claim that the Agreement's other arbitration provisions are unenforceable was likewise "strong." *Id.* at 694. But even though the "contract … violate[d] federal law," the court of appeals agreed with this Court that Avient had waived that argument with respect to the 2017 Arbitration. *Id.* at 701. The Sixth Circuit expressly left open, however, whether Avient could challenge the arbitration provisions with respect to a future proceeding. *Id.*

On March 23, 2022, Westlake filed an arbitration demand against Avient seeking to allocate certain environmental costs related to the Site—different costs than were at issue in the 2017 Arbitration. Avient objects to this new arbitration given that the arbitration provisions of the 2007 Settlement Agreement are illegal and invalid.

Based on *Hall Street* and *Potawatomi*, as well as the Sixth Circuit's observations in *PolyOne*, Avient now seeks a declaration that: (1) the provision in the 2007 Settlement Agreement allowing for de novo judicial determination of the arbitrated cost allocation is invalid; (2) the de novo judicial-determination provision is material to and not severable from the parties' agreement to arbitrate; (3) the parties' agreement to arbitrate as set forth in the 2007 Settlement Agreement is therefore invalid in its entirety; and (4) the arbitration provisions of the 2007 Settlement Agreement are severable from the other provisions of the Agreement. Avient also seeks an order enjoining the arbitration proceeding Westlake initiated on March 23, 2022.

## PARTIES

1.       Plaintiff Avient Corporation is an Ohio corporation with its principal place of business in Avon Lake, Ohio. Avient was formed in August 2000, when The Geon Company ("Geon") was consolidated with M.A. Hanna Company. Geon was formed in 1993, when

Goodrich divested itself of the assets of its vinyl division. Avient changed its name from PolyOne Corporation in July 2020.

2.      Defendant Westlake Vinyls, Inc. is a Delaware corporation with its principal place of business in Calvert City, Marshall County, Kentucky.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interests and costs, and Avient and Westlake are citizens of different states.

4.      This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201-2202 because an actual controversy exists between the parties.

5.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) because the acts and omissions giving rise to Avient's claims occurred in this judicial district, and because Westlake resides therein.

6.      Assignment to this jury division is proper pursuant to Civil Local Rule 3.2 because Westlake resides in Marshall County, Kentucky.

## GENERAL ALLEGATIONS

**A.      Westlake and Avient Entered Into a Settlement Agreement in 2007 That Requires Arbitration To Allocate Certain Costs but Also Gives the Parties the Absolute Right to a De Novo Judicial Determination of Cost Allocation After It Has Been Arbitrated.**

7.      Westlake owns and operates the Site, a facility in Calvert City, Marshall County, Kentucky that manufactures vinyl chloride monomer ("VCM"). The Site houses three chemical manufacturing plants, all owned and operated by Westlake: (1) the Chlorine Plant, which manufactures chlorine gas; (2) the Ethylene Plant, which produces ethylene; and (3) the

4

EDC/VCM Plant, which produces both ethylene dichloride and VCM, the final output of the facility.

8.      As discussed, Westlake purchased the three plants from Goodrich via two separate transactions, in 1990 and 1997. The agreements effecting those transactions include mutual indemnity provisions that require Goodrich to indemnify Westlake for environmental costs attributable to Goodrich's activities at the Site, and Westlake to indemnify Goodrich for environmental costs attributable to Westlake's activities at the Site. As Goodrich's successor-in-interest under the indemnity provisions, Avient stands in Goodrich's shoes for purposes of enforcing the 1990 and 1997 agreements and may bring claims based on Goodrich's right to indemnification under those agreements. (Avient is also responsible for paying certain Goodrich environmental liabilities at the Site under a 1993 Separation Agreement between Goodrich and Avient's predecessor company Geon.)

9.      Beginning in 2003, the parties engaged in litigation in this Court related to the parties' environmental liabilities at the Site. *See generally Westlake Vinyls, Inc. v. Goodrich Corp.*, No. 5:03-cv-00240-TBR (W.D. Ky.). After four years, Westlake, Goodrich, and Avient reached a settlement to resolve the litigation.

10.     In the 2007 Settlement Agreement, the parties resolved liability for environmental investigation and remediation costs arising on or before July 31, 2007. *See* 2007 Settlement Agreement § 2.2(a). Claims related to these costs were released by the parties.

11.     For certain defined environmental costs arising after July 31, 2007, called "Allocable Costs," the 2007 Settlement Agreement requires Avient and Westlake to arbitrate the amount and allocation of those costs. *See id.* §§ 3-6. But the agreement does not bind either party to any award made in arbitration. It instead provides that following any arbitration, either Avient

or Westlake "may file a complaint … seeking a de novo judicial determination of (1) the amount of the Allocable Costs, and/or (2) the appropriate dollar division of the Allocable Costs between the Parties." *Id.* § 6.3. Any such judicial-determination proceeding must be filed in this judicial district. *Id.*

12.     The provision allowing this de novo judicial proceeding (section 6) is material to the parties' agreement. First and foremost, the provision converts what would be a binding arbitration (without section 6) into a non-binding arbitration (with section 6). In fact, section 6.1 provides that "the filing of a complaint under Section 6.3 … shall render the arbitrators' award null and void."

13.     In addition, the parties' right to the de novo judicial proceeding is absolute. Section 6.3(c) provides that "[t]he Parties agree that they shall not dispute a Party's right to bring a claim for judicial relief as provided for in this Section 6."

14.     Section 6 also includes detailed substantive and procedural requirements for the judicial-allocation determination, illustrating the import the parties placed on the right to the judicial proceeding following any arbitration. For example, section 6.4 includes detailed requirements regarding interim payments of arbitration awards pending the judicial determination, which provide that any new allocation of costs takes effect when the judicial determination becomes final, or within two years, whichever is earlier. And section 6.5 defines how much the allocation of costs must change in the judicial-determination proceeding for purposes of determining who is the prevailing party.

15.     The materiality of section 6 to the parties' agreement to arbitrate is beyond serious question, given the foregoing. Put simply, agreeing to arbitration that will be binding and

final save for the extremely narrow judicial review permitted under the FAA is manifestly very different from agreeing to arbitration that will in effect be meaningless.

**B.**     **The Arbitration Agreement Within the 2007 Settlement Agreement Is Invalid, and Must Be Severed from the Remainder of the 2007 Settlement Agreement.**

16.     Westlake's arbitration against Avient pursuant to the 2007 Settlement Agreement is subject to the FAA, because that act applies where, as here, there is a written arbitration provision in a contract "evidencing a transaction involving [interstate] commerce." 9 U.S.C. §§ 1-2. Where applicable, the "FAA governs all aspects of arbitration procedure and preempts inconsistent state law." *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 688 (1996), and *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

17.     In *Hall Street*, decided about a year after the 2007 Settlement Agreement's execution, the Supreme Court considered whether a provision in an arbitration agreement allowing review of an arbitration award for "legal error" was preempted by sections 10 and 11 of the FAA, which enumerate grounds on which a federal court can set aside or modify an arbitration award. *Hall Street* held that those grounds are *exclusive, i.e.*, that an arbitration agreement cannot provide more (or fewer) grounds. *See* 552 U.S. at 586. Moreover, the Court held, an FAA-governed agreement that does so is unenforceable. *Id.* at 584. This is true even if the agreement does not expressly invoke the FAA. *Id.* at 590.

18.     In *Potawatomi*, decided in 2018, the Tenth Circuit considered an appeal from an Indian tribe's effort to enforce an arbitration award against Oklahoma. The arbitration agreement at issue, which was part of a tribal gaming compact, involved a de novo judicial-review provision. Based on *Hall Street*, the court of appeals concluded that the provision was invalid and unenforceable. *See Potawatomi*, 881 F.3d at 1235-37. The court further concluded that

"[b]ecause the availability of de novo review is a material aspect of the parties' agreement to engage in binding arbitration, and because *Hall Street Associates* renders the de novo review provision legally unenforceable," the arbitration agreement as a whole was unenforceable and had to be severed from the remaining provisions of the compact. *Id.* at 1241.

19.     The compact in *Potawatomi* included a severability clause providing that the invalidation of any provision of the compact would not affect the other provisions "unless the invalidated provision, section or subsection is material." *Id.* at 1240 n.20. The Tenth Circuit analyzed the materiality of the de novo judicial-review provision in relation to the agreement to arbitrate, which it recognized to be a discrete agreement within the overall compact. The court concluded that the judicial-review provision was indeed material to the parties' arbitration agreement, and the arbitration agreement could be and must be severed from the larger compact. *Id.* at 1241.

20.     As in *Potawatomi*, the 2007 Settlement Agreement includes a materiality provision (section 14), which states that:

> In the event that any provision of this Agreement shall be finally determined to be unenforceable, such provision shall, ***so long as the economic and legal substance of the transactions contemplated hereby is not affected in any materially adverse manner as to any Party***, be deemed severed from this Agreement and every other provision of this Agreement shall remain in full force and effect.

2007 Settlement Agreement § 14 (emphasis added).

21.     The availability of a post-arbitration de novo judicial determination of cost allocation is a material aspect of the economic and legal substance of the 2007 Settlement Agreement. In fact, section 6 of the Agreement is more drastic and expansive than the judicial de novo review provision at issue in *Potawatomi*. Under section 6, a court does not review an arbitral award at all; the award is simply nullified and the litigation proceeds largely as if the arbitration never occurred. Section 6 also includes, as mentioned, detailed, specifically

negotiated provisions regarding the nature of the judicial proceeding, as well as regarding interim payments pending the completion of the judicial determination and the recovery of legal fees and expenses.

22.     These provisions demonstrate the materiality of the judicial-determination provision, which the parties affirmatively negotiated to ensure their rights to have the cost allocation definitively resolved by an Article III judge rather than in arbitration. The availability of a judicial proceeding was an important factor in Avient's decision to agree to arbitrate claims for environmental costs incurred after July 31, 2007, and the availability of such a proceeding affected the economic and legal substance of Avient's rights under the 2007 Settlement Agreement and the discrete arbitration agreement therein. In entering into that agreement— which was executed before *Hall Street*—the parties agreed to arbitrate the allocation of future environmental costs at the Site only on the understanding that either party would have the right to go to federal court after any arbitration and seek a judicial cost allocation if they were dissatisfied with the arbitral result.

23.     The attorneys' fees provision in section 6.5 differs from the provisions applicable to the arbitration itself (in which each party bears its own fees and costs) and includes a detailed definition as to how much the allocation must change for the plaintiff to be deemed the "prevailing party" in the judicial proceeding. These fee-shifting provisions reflect a careful attempt to balance the parties' interest in preserving de novo judicial-relief rights against the expense of further litigation, further demonstrating their materiality to the substance of the parties' agreement.

24.     Still further evidence of the materiality of the post-arbitration judicial process is the fact that each party gave up the right to challenge the other party's right to avail itself of that

process. Specifically, the Agreement provides that "[t]he Parties agree that they ***shall not dispute a Party's right to bring a claim for judicial relief*** as provided for in this Section 6." 2007 Settlement Agreement § 6.3(c) (emphasis added).

25.     In addition, numerous other sections of the 2007 Settlement Agreement refer to and/or rely upon the judicial-determination provision in section 6, further demonstrating its materiality to the parties' bargain. For example:

   a.     Section 3.1 refers to the modification of the cost allocation "pursuant to the procedures described in … Section 6."

   b.     Section 3.3 defines the costs to be allocated "under [the] Agreement" by way of arbitration pursuant to section 4 and subsequent judicial determination pursuant to section 6.

   c.     Section 4.1 contains arbitration procedures and refers to section 6, saying "[n]either Party shall initiate an arbitration if another arbitration regarding allocation is in process pursuant to Section 4 or a judicial proceeding regarding allocation is in process pursuant to Section 6."

   d.     Section 4.2 states "Goodrich is not a party to any of the provisions of Section 4, Section 5, and Section 6 (except for Section 6.3 to which Goodrich is a Party and with which it shall comply) of the Agreement . . . ."

   e.     Section 4.4 states "[e]xcept as provided for in Section 6, neither PolyOne nor Westlake shall engage in litigation with the other Party regarding any dispute over the allocation of Allocable Costs or any dispute regarding the amount of an Allocable Cost if the allocation or if the amount of Allocable Costs has been initially determined in an arbitration conducted pursuant to this Section 4."

f.      Section 4.5(c) states "[t]he ratio of Allocable Costs allocated to either Party compared to the total amount of Allocable Costs shall then be used to constitute each Party's total 'Arbitration Allocated Percentage' for purposes of Section 6.5."

g.      Section 5 sets the effective dates of modified cost allocations by reference to sections 4 and 6.

h.      Section 5.1 refers to the "judicial decision" provided for in section 6.

i.      Section 5.2 refers to the finalization of the cost allocation "by the arbitrators under Section 4 or the Court under Section 6" and the "procedures set forth in Section 4 or Section 6."

j.      Section 5.3 refers to section 4 and section 6 proceedings in connection with limits on reallocation of costs.

k.      Section 10.2 provides discovery procedures for the "litigation between or among the parties, including the arbitration and judicial proceedings referenced in Section 4 and Section 6 of the Agreement . . . ."

l.      Section 10.3 notes that materials produced during discovery in an arbitration "may be used by the Parties in any . . . judicial proceeding."

m.      Section 11.2 refers to section 6 in discussing the parties' jurisdictional choices.

n.      Section 15 refers to section 6 in describing how the 2007 Settlement Agreement may be modified.

26.      All of this makes eminently clear that the judicial-determination provision cannot by itself be severed from the 2007 Settlement Agreement because doing so would materially adversely affect "***the economic and legal substance of the transactions contemplated***" by the

parties. However, the judicial-determination provision is part of a discrete arbitration agreement within the 2007 Settlement Agreement, just as the agreement to arbitrate in *Potawatomi* was a discrete agreement within the gaming compact. This is evinced in part by section 4.2 of the 2007 Settlement Agreement, which states that Goodrich is not a party to Section 4, Section 5, and Section 6 (essentially, the agreement to arbitrate), except for section 6.3 (stating that the complaint for judicial determination of cost allocation must be filed in Goodrich's name).

27.     As in *Potawatomi*, the entire arbitration agreement here is intertwined with the judicial-determination provision and is therefore invalid in its entirety. However, the arbitration agreement can—and should—be severed from the remaining provisions of the 2007 Settlement Agreement. *See Potawatomi*, 881 F.3d at 1241; *Glazer v. Lehman Bros.*, 394 F.3d 444, 453 (6th Cir. 2005) (arbitration provisions are "severable insofar as they are considered in determining whether a contractual dispute should be submitted to arbitration"). The severance of the arbitration provisions from the 2007 Settlement Agreement while preserving the remaining non-arbitration provisions will not materially adversely affect "***the economic and legal substance of the transactions contemplated***" because the parties will retain their rights to allocate environmental costs in federal court, which is not materially different than what was contemplated. Indeed, it was exactly what was contemplated by the parties' inclusion of section 6 in the 2007 Settlement Agreement. All that would change is that the parties would not have to spend time and money on an all-but-meaningless arbitration proceeding before beginning the federal-court proceeding where their rights would actually be determined.

### C.     Avient Previously Challenged the Validity of the 2007 Settlement Agreement's Arbitration Provisions.

28.     On May 19, 2017, Avient filed an arbitration demand under the 2007 Settlement Agreement seeking an allocation of costs.

29.     On February 6, 2018, the Tenth Circuit decided *Potawatomi*, which made clear that the 2007 Settlement Agreement's arbitration provisions are invalid.

30.     Accordingly, on July 10, 2018, Avient filed a complaint in this Court seeking a declaration that the parties' obligation to arbitrate was unenforceable. It also asked the Court to enjoin the 2017 Arbitration.

31.     On January 16, 2019, the Court dismissed Avient's complaint, holding that, by initiating arbitration under the 2007 Settlement Agreement, Avient had waived its right to challenge the arbitration provision. *See PolyOne Corp. v. Westlake Vinyls, Inc.*, No. 5:18-CV-107-TBR, 2019 WL 238018, at *2 (W.D. Ky. Jan. 16, 2019).

32.     Avient appealed to the Sixth Circuit, which opined that Avient "has a strong argument that the judicial-relief provision violates *Hall Street* by expanding the grounds for vacating an arbitration award" and hence "that the Agreement's judicial-relief provision is invalid under the FAA." *PolyOne*, 937 F.3d at 697, 701.

33.     The Sixth Circuit also observed that Avient's claim that the Agreement's other arbitration provisions are unenforceable was "strong." *Id.* at 694.

34.     Despite this, and despite also concluding that the "contract … violate[d] federal law," the Sixth Circuit agreed with this Court that Avient had waived its ability to challenge the arbitration provisions with respect to the 2017 Arbitration. *Id.* at 701. But the court explicitly left open whether Avient could challenge the arbitration provisions with respect to a future arbitration under the 2007 Settlement Agreement. *Id.*

**D.     Notwithstanding the Invalidity of the 2007 Settlement Agreement's Arbitration Provisions, Westlake Initiated a New Arbitration to Allocate Different Cleanup Costs.**

35.     On March 23, 2022, despite the Sixth Circuit's opinion that the 2007 Settlement Agreement's arbitration provisions are invalid, Westlake filed an arbitration demand under the 2007 Settlement Agreement to require Avient to submit to another (invalid) arbitration regarding allocable costs.

36.      Because *Hall Street* precludes de novo judicial relief after an arbitration award—and because Avient, like Westlake, did not agree to be finally bound by any arbitral award under the 2007 Settlement Agreement—Avient now seeks a declaration from this Court that the arbitration provisions of the Agreement are illegal, void, and unenforceable.

37.     Westlake filed its arbitration demand less than a month ago. Avient has not yet filed a response. No motions have been filed, no discovery has taken place, and no hearings have been scheduled. In fact, no arbitrators have even been selected. Avient has preserved and will continue to preserve all of its rights to challenge the arbitration provisions in the 2007 Settlement Agreement.

38.     The 2007 Settlement Agreement expressly limits the arbitrator's jurisdiction to "a determination of the amount of the Allocable Costs that are in issue, if not agreed upon by the Parties, and the amount of Allocable Costs that should be allocated to each Party." 2007 Settlement Agreement, Ex. C § 3. The Agreement provides that "the arbitrators shall have no jurisdiction to determine any other aspect of the Agreement, including, without limitation, the validity of the Agreement." *Id.* Thus, the validity and enforceability of the arbitration provisions is a question that only this Court can decide.

39.     Avient has sought a stay of the arbitration with the arbitration administrator. Given that Avient has not yet responded to the arbitration demand and arbitrators have not been appointed, staying the arbitration for the pendency of this action will not prejudice Westlake.

Avient does not consent to the arbitrator's jurisdiction for any aspect of the allocation dispute or the instant dispute regarding the invalidity of the arbitration provisions.

**COUNT I**

**Declaratory Judgment**

40.     Avient incorporates by reference the allegations in paragraphs 1-39 as if fully restated herein.

41.     An actual controversy exists between Avient and Westlake with respect to the validity of the arbitration provisions of the 2007 Settlement Agreement. Avient contends that the provision therein allowing for de novo judicial determination of the arbitrated cost allocation is invalid; that the de novo judicial-determination provision is material to and not severable from the parties' agreement to arbitrate; that the parties' obligation to arbitrate as set forth in the 2007 Settlement Agreement is invalid and unenforceable; and that the arbitration provisions of that agreement must be severed from the provisions unrelated to arbitration.

42.     Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties is necessary and appropriate under the circumstances, in addition to such further necessary or proper relief the Court deems appropriate.

**COUNT II**

**Injunctive Relief Under Federal Arbitration Act, 9 U.S.C. § 1** *et seq.*

43.     Avient incorporates by reference the allegations contained in Paragraphs 1-42 as if fully restated herein.

44.     Westlake has initiated a new arbitration pursuant to the 2007 Settlement Agreement notwithstanding the illegality of the arbitration provisions therein.

45.    Under *Hall Street* and *Potawatomi*, the arbitration agreement in the 2007 Settlement Agreement is illegal, invalid, and unenforceable. Thus, no valid agreement to arbitrate exists between the parties, and any award issued by the arbitrators would be null and void.

46.    Injunctive relief is appropriate to prevent a party from being forced to arbitrate issues not covered by a valid agreement to arbitrate, or to arbitrate in a manner to which the party did not agree. *See, e.g.*, *Dean Witter Reynolds, Inc. v. McCoy*, 995 F.2d 649, 651 (6th Cir. 1993) (holding that "injunctive relief must be given" where issues to be arbitrated were not covered by valid arbitration agreement).

47.    The parties will expend significant resources to engage in a new arbitration proceeding, including millions of dollars in arbitration, legal, and expert fees. The 2017 Arbitration took approximately two years to complete, with a seven-week hearing involving more than 120 witnesses and more than 6,000 exhibits, and required Avient to expend substantial sums in fees and costs.

48.    If the new arbitration proceeds, Avient will likewise incur substantial additional time and expense litigating its positions in the arbitration proceeding, despite the invalidity of the agreement to arbitrate (and the non-binding exercise that arbitration is under the 2007 Settlement Agreement). It will also be forced to arbitrate a dispute where the parties do not have a valid agreement to arbitrate. These circumstances constitute irreparable harm. *See Maryland Cas. Co. v. Realty Advisory Bd. on Lab. Rels.*, 107 F.3d 979, 985 (2d Cir. 1997) (affirming finding of irreparable harm in order enjoining an arbitration on the ground that the movant "would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable"); *CIG Asset Mgmt. v. Bircoll*,

2013 WL 4084763, at *2 (E.D. Mich. Aug. 13, 2013) ("[T]he harm suffered by a party who is forced to arbitrate claims that it did not agree to arbitrate is per se irreparable."); *Goldman Sachs & Co. v. Becker*, 2007 WL 1982790, at *7 (N.D. Cal. July 2, 2007) (loss of money and employees' time in defending claims in arbitration establishes irreparable harm for purposes of granting a preliminary injunction).

49.     Avient has raised the issue of the unenforceability of the arbitration provisions of the 2007 Settlement Agreement promptly after receiving Westlake's new arbitration demand. Avient seeks to enjoin the arbitration pending a judicial determination that the arbitration provisions cannot be enforced. The arbitration proceeding is at its inception stage, with no response filed. Thus, Westlake will suffer little if any prejudice from enjoining the arbitration proceeding so the Court can address the validity and enforceability of the arbitration provisions of the 2007 Settlement Agreement. Therefore, the balance of equities tips decidedly in Avient's favor.

50.     By reason of the foregoing, the Court should issue an order enjoining the arbitration of the dispute between the parties.

## PRAYER FOR RELIEF

Based on the foregoing, Avient prays for the following relief:

1.     A declaration that the de novo judicial-determination provision of the 2007 Settlement Agreement is illegal and not severable from the parties' agreement to arbitrate claims for Allocable Costs under the Agreement; that the parties' arbitration agreement is accordingly null, void, and unenforceable; and that the arbitration agreement is severable from the non-arbitration related provisions of the 2007 Settlement Agreement (*e.g.*, Sections 1 (definitions), 2 (dismissals and releases), and 17 (notices));

2.      An order enjoining Westlake and its agents, attorneys, and other representatives from prosecuting arbitral proceedings under the 2007 Settlement Agreement, or otherwise taking any actions in furtherance of any such proceedings;

3.      Judgment in Avient's favor on all causes of action described herein;

4.      An award of costs of this action to the fullest extent permitted by law; and

5.      Any and all additional relief as the Court deems just and proper.

Dated: April 15, 2022

By:/s/Mark S. Riddle

Mark S. Riddle
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY 40202
Telephone:     (502) 587-3623
Facsimile:     (502) 540-2194

*Davina Pujari
*Christopher A. Rheinheimer
WILMER CUTLER PICKERING
    HALE & DORR LLP
One Front Street, Suite 3500
San Francisco, California 94111
Telephone:     (628) 235-1000
Facsimile:     (628) 235-1001

*Charles C. Kelsh
WILMER CUTLER PICKERING
    HALE & DORR LLP
60 State Street
Boston, Massachusetts 02210
Telephone:     (617) 526-6000
Facsimile:     (617) 526-5000

Attorneys for Plaintiff Avient Corporation

*Pro Hac Vice Applications to Be Filed