UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:22-CV-51-TBR

**AVIENT CORPORATION,**                                                                 **PLAINTIFF**

**v.**

**WESTLAKE VINYLS, INC.**                                                                **DEFENDANT**

## MEMORANDUM OPINION & ORDER

This matter is before the Court on the Motion to Dismiss filed by Defendant Westlake Vinyls, Inc. ("Westlake"), [DN 10]. Plaintiff Avient Corporation ("Avient") has responded, [DN 25], and Westlake replied, [DN 26]. Westlake has since filed a motion seeking to change the relief requested from dismissal to a stay, [DN 29]. The Court granted that motion but allowed Avient to file an objection to the requested form of relief. [DN 33]. Avient has filed its objection, [DN 37], and this matter is now fully briefed and ripe for review. For the reasons set forth below, the Court will deny Westlake's Motion to Dismiss, [DN 10], now construed as a motion seeking a stay pending arbitration.

### I.     BACKGROUND

#### A.   The 2007 Settlement Agreement

In 1951, the Goodrich Corporation ("Goodrich") purchased a plot of land in Calvert City, Kentucky, and thereafter built a facility to manufacture chemicals ("the Site"). [DN 1, pp. 1, 4]. Goodrich ultimately sold the property to Westlake via two separate transactions—one in 1990 and the other in 1997. *Id.* at 1, 5. As part of those transactions, Westlake agreed to indemnify

1

Goodrich for environmental costs attributable to Westlake's activities at the Site, and Goodrich likewise agreed to indemnify Westlake for any environmental costs attributable to Goodrich's activities on the property. *Id.* Avient (formerly known as PolyOne Corporation) ultimately became Goodrich's successor-in-interest under the 1990 and 1997 agreements. *Id.*; *see also PolyOne Corp. v. Westlake Vinyls, Inc. ("PolyOne May 2018 Opinion")*, No. 5:17-cv-157-TBR, 2018 WL 2437241 (W.D. Ky. May 30, 2018) (describing process by which Avient came to assume Goodrich's indemnification obligations). As a result, Avient assumed Goodrich's indemnification obligations. *See, e.g.*, [DN 1, pp. 1, 5].

Over the next several years, the parties engaged in litigation over the allocation of the environmental costs ("Allocable Costs") of the Site. *Id.* at 1, 5; *see also Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F.Supp.2d 918 (W.D. Ky. 2007). Goodrich, Avient, and Westlake ultimately entered into a settlement agreement in 2007 (the "2007 Settlement Agreement"). [DN 1 at pp. 1, 5]; *see also* [DN 6 (2007 Settlement Agreement)]. Under that agreement, the parties agreed to the method by which the environmental costs would be allocated in the future. [DN 1, p. 1]; *see also* [DN 6, § 3]. The agreement also provided that Avient and Westlake would arbitrate to resolve disputes over the amount and allocation of those Allocable Costs. [DN 1, p. 2]; *see also* [DN 6, § 4]. More specifically, it allowed either party to dispute the allocation of costs by filing a notice of arbitration. [DN 6, § 4.1]. The agreement also provided that, "[e]xcept as otherwise provided in the Agreement, any arbitration shall be conducted in accordance with the procedures set forth in Exhibit C." *Id.*

Exhibit C goes on to explain that its provisions "shall govern any arbitration conducted pursuant to Section 4 of the" 2007 Settlement Agreement, and such arbitrations "shall be administered by [Judicial Arbitration and Mediation Services, Inc. ("JAMS")] under its

Comprehensive Arbitration Rules and Procedure." *Id.* at 21. Importantly, Exhibit C states, "All provisions of the [JAMS Rules] shall apply unless the provisions are inconsistent with this Exhibit C or the Agreement." *Id.* Exhibit C then goes on to explain the various agreed-upon rules and procedures for any arbitration proceedings. *Id.* at 21–26. For example, Section 3 of Exhibit C outlines the jurisdiction of the arbitrators:

> The jurisdiction of the arbitrators is expressly limited to a determination of the amount of the Allocable Costs that are in issue, if not agreed upon by the Parties, and the amount of Allocable Costs that should be allocated to each Party. Without limiting the preceding sentence, the arbitrators shall have no jurisdiction to determine any other aspect of the Agreement, including, without limitation, the validity of the Agreement.

*Id.* at 23.

The agreement also provided that any arbitration ruling would not be binding. [DN 6, § 6.1]. Instead, after arbitration, either party could "file a complaint . . . seeking a de novo judicial determination" of the amount and allocation of the environmental costs. *Id.* § 6.3. The agreement explains that the filing of the complaint "shall render the arbitrators' award null and void." *Id.* § 6.1. The validity of this judicial determination provision is at issue in Avient's current complaint.

### B. The 2010 Arbitration Proceeding

In 2010, Avient initiated the first arbitration proceeding under the agreement. *See* [DN 10-3]. In that proceeding, Avient argued that Westlake was responsible for various environmental investigation and remediation costs. *Id.* The matter was eventually voluntarily dismissed with prejudice in 2015. *See* [DN 10, p. 7].

### C. The 2017 Arbitration Proceeding and the 2017 and 2018 Lawsuits

Roughly two years later, in May 2017, Avient (then PolyOne) filed an arbitration demand again seeking to allocate certain environmental costs. [DN 1, p. 2]; *PolyOne May 2018 Opinion*,

3

2018 WL 2437241, at *4. In September 2017, Westlake filed a cross-notice of arbitration, seeking reimbursement for certain excavation and disposal costs and certain waste characterization costs. *Id.* at *6.

On October 6, 2017, with that arbitration proceeding still pending, Avient filed a complaint in this Court, essentially asking the Court to determine whether "construction costs" (such as the excavation, disposal, and waste characterization costs) qualified as "Allocable Costs" under the 2007 agreement. *Id.* Westlake then filed a Motion to Dismiss, arguing that the matter should be ordered to arbitration. Among other things, Westlake argued that, by incorporating the JAMS Comprehensive Arbitration Rules and Procedures in Exhibit C of the 2007 Settlement Agreement, the parties had agreed that that the issue of arbitrability should be decided by an arbitration panel. *Id.* at 9. Avient, on the other hand, argued that the arbitration clause was narrow, such that the arbitrators could perform an "accounting analysis" of Allocable Costs but not a "definitional analysis." *Id.* The Court disagreed and found that Avient's claims were subject to arbitration. *Id.* at *11. In so ruling, the Court noted that the dispute at issue in that case—i.e., whether "construction costs" qualified as "Allocable Costs" under the agreement— was at least "arguably covered by the [arbitration] agreement." *Id.* at *10 (internal quotation marks omitted). Thus, the Court explained, it "[did] not agree with [Avient] that JAMS Rule 11 is inconsistent with the 2007 Agreement and should not apply to the arbitration provision at issue." *Id.* The matter was therefore dismissed.

However, before the arbitration hearing took place, the Tenth Circuit held that an agreement to arbitrate is invalid and unenforceable when it contains a provision authorizing de novo judicial review of an arbitration award and that provision is material to the arbitration agreement. *See Citizen Potawatomi Nation v. Oklahoma*, 881 F.3d 1226 (10th Cir. 2018).

4

Relying on this Tenth Circuit decision, Avient filed a new lawsuit and asked this Court to declare the parties' agreement to arbitrate unenforceable and to enjoin the arbitration that it had previously requested. [DN 1, p. 2]; *see also PolyOne Corp. v. Westlake Vinyls, Inc. ("PolyOne Jan. 2019 Opinion")*, No. 5:18-cv-107-TBR, 2019 WL 238018 (W.D. Ky. Jan. 16, 2019).[1] Westlake filed a Motion to Dismiss in response.

The Court granted the Motion to Dismiss, finding that Avient had waived any right to challenge the validity of the arbitration provisions by invoking those provisions and initiating the 2017 arbitration proceeding at issue in that case. [DN 1, p. 2]; *see also PolyOne Jan. 2019 Opinion.*, 2019 WL 238018, at * 11. Because the Court did not analyze the validity of the arbitration agreement, it did not address any arguments regarding the Court's jurisdiction or authority to decide that issue.

Avient appealed that decision. The Sixth Circuit affirmed this Court's decision, holding that, "by demanding the 2017 arbitration that led to this litigation, PolyOne [now, Avient] has waived its ability to obtain declaratory and injunctive relief—at least for that arbitration." *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 694 (6th Cir. 2019). However, the Sixth Circuit "[withheld] judgment on whether PolyOne has waived its ability to challenge the Agreement's arbitration provisions for all time." *Id.* In other words, the Sixth Circuit did not address whether Avient could challenge the arbitration agreement if Westlake filed a demand for arbitration in the future.

The matter thereafter proceeded to arbitration. On May 22, 2019, the arbitration panel issued its final award, assigning the full amount of Allocable Costs to Avient. *See PolyOne Corp.*

---

[1] Avient had also sought a preliminary injunction or temporary restraining order, but the Court, acknowledging the waiver issue, declined to grant that motion. *See PolyOne Corporation v. Westlake Vinyls, Inc. ("PolyOne July 2018 Opinion")*, No. 5:18-CV-107-TBR, 2018 WL 3625742 (W.D. Ky. July 30, 2018).

*v. Westlake Vinyls, Inc. ("PolyOne Feb. 2020 Opinion")*, No. 5:19-cv-121-TBR, 2020 WL 695657, *1 (W.D. Ky. Feb. 11, 2020). Avient thereafter moved this Court to vacate that award (based on arguments not relevant here), and Westlake asked the Court to affirm the award. *Id.* On February 11, 2020, the Court issued an opinion affirming the arbitration panel's final award. *Id.*

### D.  The 2022 Arbitration Proceeding and the Present Lawsuit

On March 23, 2022, Westlake filed an arbitration demand, seeking to allocate certain environmental costs different than those at issue in the 2017 arbitration proceeding. On April 15, 2022, Avient filed its Complaint for Declaratory and Injunctive Relief, [DN 1], in this Court. Avient seeks a declaration that (1) the specific arbitration provision contained within the 2007 Settlement Agreement, which allows for de novo judicial determinations of an arbitration ruling, is invalid; (2) that judicial-relief provision is material to and not severable from the parties' overall agreement to arbitrate; (3) the overall agreement to arbitrate contained within the 2007 Settlement Agreement is invalid as a result; and (4) the overall agreement to arbitrate contained within the 2007 Settlement Agreement is severable from the other portions of that settlement agreement. *Id.* at 3, 15–16. Avient also asks the Court to enjoin the arbitration proceeding initiated by Westlake on March 23, 2022. *Id.* at 4, 16–17.

Westlake then filed the present Motion to Dismiss, [DN 10]. In its motion, Westlake argues that the Court lacks authority to consider the validity of the arbitration agreement. *Id.* Rather, Westlake argues, under the terms of the arbitration agreement and JAMS Rule 11(b), the validity issue is reserved for arbitration, and the Court must therefore dismiss this lawsuit and allow the matter to proceed to arbitration. *Id.* In support of its argument, Westlake relies in part on the prior Court orders and arbitration rulings and argues that they must be given preclusive

6

effect. *Id.* Avient has responded to Westlake's arguments, and Westlake replied. [DN 25; DN 26].

After this matter was fully briefed, Westlake filed a motion seeking to amend its Motion to Dismiss such that it no longer sought complete dismissal of this action but instead sought a stay of this action pending resolution of the 2022 arbitration proceeding. [DN 29]. The Court granted that motion and allowed Westlake to request a stay, rather than dismissal. [DN 33]. The Court allowed Avient an opportunity to file an objection to the requested form of relief, and Avient did so. [DN 37]. Accordingly, all matters are now fully briefed and ripe for review.

## II. LEGAL STANDARD

Westlake initially filed its Motion to Dismiss, [DN 10, p. 1], under Federal Rule of Civil Procedure 12(b)(1) (for lack of subject matter jurisdiction) and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. Though Westlake now requests a stay, rather than dismissal, its goal remains the same: to have the Court order this matter to arbitration. *See* [DN 29]. Thus, the Court construes Westlake's motion as a motion to compel arbitration under the FAA.

As a result, the Court must now determine which Federal Rule of Civil Procedure provides the appropriate lens through which to consider Westlake's motion. As the United States District Court for the Eastern District of Kentucky has explained, "The Federal Rules of Civil Procedure do not line up perfectly with the provisions contained in the" FAA. *FCCI Ins. Co. v. Nicholas Cnty. Libr.*, No. 5:18-CV-038-JMH, 2019 WL 1234319, at *2 (E.D. Ky. Mar. 15, 2019). For example, Rule 12 "does not list 'motion to compel arbitration' as a potential responsive pleading," and federal courts have split on the proper procedural vehicle to compel arbitration. *Id.*

Presumably, by citing to Rule 12(b)(1), Westlake argues that the arbitration agreement in this case divests the Court of subject matter jurisdiction. In other words, Westlake argues that the Court lacks subject matter jurisdiction over claims that are subject to arbitration. However, by seeking a stay, Westlake seemingly acknowledges that this Court may retain jurisdiction over the case. Other courts in this circuit have considered this issue and declined to consider a motion to compel under Rule 12(b)(1) (for lack of subject matter jurisdiction) when the Court may retain subject matter jurisdiction pending arbitration. *See FCCI Ins. Co.*, 2019 WL 1234319, at *3–4 ("Here, the defect created by the binding arbitration clause, assuming it applies to these claims, does not appear to be a lack of subject matter jurisdiction where the Court in fact has and may retain subject matter jurisdiction pending arbitration."). Accordingly, the Court will not consider this motion to compel arbitration through the lens of Rule 12(b)(1).

Instead, the Court finds that this motion is more properly characterized as a motion to compel arbitration under Rule 12(b)(6). *See FCCI Ins. Co.*, 2019 WL 1234319, at *5; *High v. Cap. Senior Living Properties 2-Heatherwood, Inc.*, 594 F. Supp. 2d 789, 795 (E.D. Mich. 2008). However, because the parties have cited to matters outside the pleadings, the motion must be considered as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *FCCI Ins. Co.*, 2019 WL 1234319, at *5.

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In the present case, there do not appear to be any material facts in dispute; rather, the parties present pure questions of law for the Court to consider (i.e., contract interpretation). Further, while the Court acknowledges that it must generally give notice to the parties when construing a motion as one for summary judgment, *see* Fed. R. Civ. P. 56(f), the

Court finds that such notice is unnecessary in this case. Neither party expended much effort in evaluating their claims under the Rule 12(b)(1) (or Rule 12(b)(6)) standard, and instead they both focused on matters outside the pleading and appear to argue for judgment as a matter of law. The Court therefore turns to their arguments with the understanding that the proper procedural vehicle in this case is the summary judgment standard under Rule 56. *See FCCI Ins. Co.*, 2019 WL 1234319, at *5.

### III.   ANALYSIS

As the Supreme Court has explained, the FAA "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67–68 (2010) (citations omitted). Parties to such contracts "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 68–69 (citations omitted). The Supreme Court has explained the significance of such "delegation clauses":

> An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other. The additional agreement is valid under § 2 [of the FAA] "save upon such grounds as exist at law or in equity for the revocation of any contract," and federal courts can enforce the agreement by staying federal litigation under § 3 and compelling arbitration under § 4.

*Id.* at 70.

To determine whether the parties have agreed to arbitrate a particular gateway issue (like arbitrability or validity), the Court must find that there is "clear and unmistakable" evidence that the parties intended that the issue would be subject to arbitration. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (citations omitted). "In effect, this rule

reverses the usual presumption in favor of arbitration when it comes to questions of 'arbitrability.'" *Id.* (citation omitted). Ultimately, if the Court finds that the parties' intentions are clear and unmistakable, the Court must refer the matter to arbitration. *Blanton*, 962 F.3d at 844 (citation omitted). This is true "even if a particular argument for arbitration seems to be 'wholly groundless.'" *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528–31 (2019)).

In the present case, Westlake argues that the parties' intent to arbitrate issues of validity (of the arbitration agreement) is clear and unmistakable because the parties incorporated the JAMS rules into their arbitration agreement through Exhibit C to the 2007 Settlement Agreement. [DN 6, p. 21]. As noted above, Exhibit C states that its provisions "shall govern any arbitration conducted pursuant to Section 4 of the" 2007 Settlement Agreement, and such arbitrations "shall be administered by [Judicial Arbitration and Mediation Services, Inc. ("JAMS")] under its Comprehensive Arbitration Rules and Procedure." *Id.* It also states, "All provisions of the [JAMS Rules] shall apply unless the provisions are inconsistent with this Exhibit C or the Agreement." *Id.* Relying primarily on this language from Exhibit C, Westlake argues that the parties clearly intended to incorporate the delegation provision of JAMS Rule 11(b). [DN 10-1, pp. 17–20]. That rule provides,

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

[DN 10-2, p. 3]. Westlake argues that, if the parties intended to incorporate this rule, it follows that they intended for issues over the arbitration agreement's validity to be resolved through arbitration. [DN 10-1, pp. 17–20].

10

Avient, on the other hand, points to the provision in Exhibit C that states, "All provisions of the [JAMS Rules] shall apply *unless the provisions are inconsistent with this Exhibit C or the Agreement.*" [DN 6, p. 21 (emphasis added)]. Avient argues that the language of JAMS Rule 11(b) conflicts with certain language in the 2007 Settlement Agreement—specifically, Section 3 of Exhibit C, which states in full,

> The jurisdiction of the arbitrators is expressly limited to a determination of the amount of the Allocable Costs that are in issue, if not agreed upon by the Parties, and the amount of Allocable Costs that should be allocated to each Party. Without limiting the preceding sentence, the arbitrators shall have no jurisdiction to determine any other aspect of the Agreement, including, without limitation, the validity of the Agreement.

*Id.* at 23. Based on these provisions, Avient argues that the parties did not clearly and unmistakably agree that the arbitration agreement's validity would be subject to arbitration.

The Court agrees that, in this case, JAMS Rule 11(b) conflicts with Section 3 of Exhibit C to the extent that JAMS Rule 11(b) authorizes an arbitrator to decide issues unrelated to the amount and allocation of Allocable Costs. The language in Section 3 is clear: the arbitrator has jurisdiction to determine the amount and allocation of the Allocable Costs but does *not* have jurisdiction to decide *any other aspect* of the 2007 Settlement Agreement. [DN 6, p. 23]. Given this express limitation on the arbitrator's jurisdiction, the Court cannot find that the arbitration agreement evidences a clear and unmistakable intention to submit issues of validity to an arbitrator.

On this point, the Court acknowledges the several cases cited by Westlake in which federal courts have found that arbitrability issues are subject to arbitration because the parties incorporated the American Arbitration Association's rules into the arbitration agreement, and those rules, in turn, delegated the issue of arbitrability to an arbitrator. *Blanton*, 962 F.3d at 845–46 (citations omitted); *see also McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019).

11

Westlake also cites cases in which the parties incorporated the JAMS rules, including Rule 11(b), into their arbitration agreements, and as a result, issues of arbitrability and validity were subject to arbitration. *Cooper v. Adobe Systems, Inc.*, No. 18-cv-06742-BLF, 2019 WL 5102609 (N.D. Cal. Oct. 11, 2019); *Sidell v. Structured Settlement Investments,* LP, No. 2:08-cv-00710 (VLB), 2009 WL 103518 (D. Conn. Jan. 14, 2009). However, none of the arbitration agreements in those cases contained a limiting provision like the one in Section 3 of Exhibit C of the 2007 Settlement Agreement.

Westlake also relies on the Court's May 2018 opinion, detailed above, and argue that that opinion must be given preclusive effect. In that opinion, the Court stated that it "[did] not agree with [Avient] that JAMS Rule 11 is inconsistent with the 2007 Agreement and should not apply to the arbitration provision at issue." *PolyOne May 2018 Opinion.*, 2018 WL 2437241, at *10. However, the issue before the Court at that time was whether an arbitrator could decide whether certain "construction costs" fell within the definition of Allocable Costs. *Id.* at *8. The Court concluded that this specific issue was "arguably covered by the [arbitration] agreement." *Id.* at *9–10. In other words, that issue was at least arguably within the scope of the arbitrator's limited jurisdiction over the amount and allocation of the Allocable Costs. *Id.* at *9–10. Today, on the other hand, the Court is asked to determine whether the validity of the arbitration agreement itself (and potentially, the validity of the 2007 Settlement Agreement) is subject to arbitration. This is a different issue than the one considered by the Court in May 2018, and as the Court has already explained, there is not a clear and unmistakable agreement to arbitrate this specific issue. Thus, to be clear, the Court's decision in this case does *not* conflict with the Court's prior ruling in its May 2018 opinion.

12

For this same reason, the Court finds Westlake's issue preclusion arguments to be without merit. For issue preclusion to apply, a variety of factors must be considered, one of which is whether a prior order addressed the precise issue presently before the Court. *Merial, Inc. v. Sergeant's Pet Care Prod., Inc.*, 806 F. App'x 398, 405–06 (6th Cir. 2020). In this case, there is no prior order squarely addressing the issue before the Court today—namely, whether an arbitrator has jurisdiction to determine the validity of the arbitration agreement in the 2007 Settlement Agreement. In fact, when this issue was previously before the Court, the Court found that Avient waived its right to contest the arbitration proceeding that it had initiated,[2] and as a result, it did not address that jurisdictional argument. *See PolyOne Jan. 2019 Opinion*, 2019 WL 238018, at * 11.

Westlake's preclusion arguments also reference two preliminary orders issued by the arbitration panel in the 2017 arbitration proceeding, both of which were incorporated into the panel's final award, which was ultimately affirmed by this Court. *See* [DN 15 (Preliminary Orders 3 and 21 and Final Award)]. Arguably, these orders more directly address the issue before the Court today. For instance, in Preliminary Order No. 3 (dated December 4, 2017), the panel found that it possessed the authority to determine whether it could address issues of arbitrability. [DN 15-1]. In Preliminary Order No. 21 (dated June 22, 2018), the panel ruled that it had jurisdiction to decide the validity of the arbitration agreement. [DN 15-2]. In doing so, the panel found that JAMS Rule 11(b) did not conflict with Section 3 of Exhibit C. *Id.* Westlake now argues that this ruling should be given preclusive effect.

The Court disagrees. As the Sixth Circuit has made clear, "An arbitration award cannot bar a claim that the arbitrator lacked authority to decide, and an arbitrator lacks authority to

---

[2] There are no waiver arguments presently before the Court.

13

decide a claim that the parties did not agree to arbitrate." *W.J. O'Neil*, 765 F.3d 625, 627 (6th Cir. 2014). To require a party to arbitrate claims that it did not agree to arbitrate "would in, effect, bind the [party] to a contract to which it never agreed." *Id.* at 631. "Indeed, it is an 'axiom' that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id.* (quoting *AT & T Techns.*, 475 U.S. 643, 648 (1986)). Thus, in this case, the Court declines to apply the doctrine of res judicata "in a way that subverts basic contract principles." *Id.* The Court has already explained that the arbitration agreement in this case limits the authority of the arbitrator to deciding only those issues at least arguably related to the amount and allocation of Allocable Costs. The validity of the arbitration agreement (and certainly the validity of the 2007 Settlement Agreement) is beyond that limited jurisdiction. To hold otherwise would effectively bind the parties to a contract term to which they did not clearly and unmistakably agree.

In sum, the Court finds that the 2007 Settlement Agreement incorporates JAMS Rule 11(b), but only to the extent that that rule does not conflict with other portions of the 2007 Settlement Agreement. The Court finds that, under the circumstances presented, JAMS Rule 11(b) *does* conflict with other portions of the 2007 Settlement Agreement, specifically Section 3 of Exhibit C, which expressly limits the jurisdiction of the arbitrator. That provision authorizes the arbitrator to consider only issues regarding the amount and allocation of Allocable Costs, but here, Westlake seeks to arbitrate the issue of validity—specifically, the validity of the arbitration agreement itself. That issue is unrelated to the amount and allocation of Allocable Costs. The Court therefore finds that the parties did *not* clearly and unmistakably agree to submit issues of arbitrability and validity to arbitration. The Court therefore finds that the issues raised by Avient's complaint in this case are not subject to arbitration.

## IV.     CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Westlake's Motion to Dismiss, [**DN 10**], now construed as a motion seeking a stay pending arbitration, is **DENIED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

August 18, 2022

cc: Counsel of Record