# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

| | |
|---|---|
| **AVIENT CORPORATION,**<br><br>                                  **Plaintiff**<br><br>   **v.**<br><br>**WESTLAKE VINYLS, INC.,**<br><br>                                  **Defendant** | **Case No. 5:22-CV-51-TBR** |

## WESTLAKE VINYLS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON VALIDITY OF ARBITRATION AGREEMENT, AND MOTION TO COMPEL ARBITRATION

David A. Super *(admitted pro hac)*
Britt Cass Steckman *(admitted pro hac)*
Margaret B. Beasley *(admitted pro hac)*
Bracewell LLP
2001 M Street NW, Suite 900
Washington, D.C. 20036
(202) 828-5800
david.super@bracewell.com
britt.steckman@bracewell.com
margaret.beasley@bracewell.com

Adam T. Goebel
Angela S. Fetcher
Adam C. Reeves
Stoll Keenon Ogden PLLC
500 West Jefferson Street
Suite 2000
Louisville, KY 40202
(502) 333-6000
adam.goebel@skofirm.com
angela.fetcher@skofirm.com
adam.reeves@skofirm.com

*Counsel for Defendant Westlake Vinyls, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

I.      INTRODUCTION ...........................................................................................1

II.     BACKGROUND .............................................................................................3

      A.   The 2007 Settlement Agreement Containing The Parties' Arbitration Agreement. ..........................................................................................3

      B.   Avient Confirms The Arbitration Agreement's Validity In The 2010 Arbitration. .........................................................................................4

      C.   Avient Performs Under The Arbitration Agreement And Confirms Its Validity. ...............................................................................................5

      D.   Avient Confirms The Validity Of The Arbitration Agreement In The 2017 Arbitration And This Court's May 2018 Opinion Enforces The Agreement. ..........................................................................................6

      E.   This Court And The 2017 Arbitration Panel Both Reject Avient's Eleventh-Hour Attempt To Invalidate The Arbitration Agreement. .................8

            1.   The 2017 Arbitration Panel's Preliminary Order No. 21 ......................9

            2.   The July 2018 Opinion .........................................................10

            3.   The January 2019 Opinion .....................................................10

      F.   The Sixth Circuit Affirms This Court's Finding Of Waiver .........................11

      G.   This Court Confirms The 2017 Arbitration Panel's Final Award. .................12

      H.   Avient Again Confirms The Validity Of The Arbitration Agreement In April 2020. .......................................................................................12

III.    ARGUMENT ................................................................................................13

      A.   Avient Has Permanently Waived Its Validity Challenge. ...............................13

      B.   Avient's Validity Challenge Is Barred By Judicial Estoppel .........................17

      C.   Avient's Challenge To The Validity Of The Arbitration Agreement Is Barred By Claim Preclusion. .................................................................19

      D.   Avient's Validity Challenge Is Barred By Issue Preclusion. .........................23

      E.   Avient Has Waived Or Is Estopped From Enforcing Section 6, Or Section 6 Must Be Severed From The 2007 Settlement Agreement. .............25

            1.   Avient waived or is estopped from asserting contract rights under Section 6. ................................................................25

2.      Applicable  law, the contract, and Avient's performance
        require Section 6 to be severed from the 2007 Settlement
        Agreement. ..........................................................................................26

IV.     CONCLUSION .............................................................................................30

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Avient Corp., v. Westlake Vinyls, Inc.*,
   No. 5:22-CV-51-TBR, 2022 WL 3569019 (W.D. Ky. Aug. 18, 2022) ...................................20

*In re B&P Baird Holdings, Inc.*,
   759 F. App'x. 468 (6th Cir. Jan. 8, 2019) ................................................................17

*Booker v. Robert Half Int'l*,
   413 F.3d 77 (D.C. Cir. 2005) .........................................................................27, 28

*Bowen v. Amoco Pipeline Co.*,
   254 F.3d 925 (10th Cir. 2001) .........................................................................27

*Bullitt Fire Prot. Dist. v. City of Shepherdsville*,
   2015 WL 510935 (Ky. App. 2015) ....................................................................24

*Carneyhan v. Trigg Cty. Pub. Schools*,
   2019 WL 6329362 (W.D. Ky. Nov. 26, 2019) (Russell, J.) ......................................21

*Chung v. StudentCity.com, Inc.*,
   2011 WL 4074297 (D. Mass. Sept. 9, 2011) ......................................................27

*Citizen Potawatomi Nation v. Oklahoma*,
   881 F.3d 1226 (10th Cir. 2018) ..........................................................8, 9, 10, 11, 28

*Columbia Gas Transmission, LLC v. Raven Co.*,
   2014 WL 2711943 (E.D. Ky June 13, 2014) ......................................................24

*Cont'l Cas. Co. v. Indian Head Indus., Inc.*,
   941 F.3d 828 (6th Cir. 2019) ..........................................................................20

*Davis v. Tuggle's Adm'r.*,
   178 S.W.2d 979 (Ky. 1944) ..........................................................................24

*Dynaquest Corp. v. U.S. Postal Serv.*,
   242 F.3d 1070 (D.C. Cir. 2001) ......................................................................14

*Emerson v. Gramley*,
   91 F.3d 898 (7th Cir. 1996) ..........................................................................14

*Farmers' Bank of White Plains v. Bass*,
   292 S.W. 489 (Ky. 1927) ..........................................................................27, 28

*Great Earth Cos., Inc. v. Simons*,
   288 F.3d 878 (6th Cir. 2002) ....................................................17, 18, 19, 21, 22, 25

*Green Tree Fin. Corp. v. Randolph*,
   531 U.S. 79 (2000)........................................................................................20

*Gunn v. NPC Int'l, Inc.*,
   625 F. App'x 261 (6th Cir. 2015) ..............................................................15

*Hall Street Associates, LLC v. Mattel, Inc.*,
   552 U.S. 576 (2008)................................................................................ *passim*

*Hashemian v. Louisville Reg'l Airport Auth.*,
   493 S.W.3d 843 (Ky. App. 2016) ................................................................22

*Heartland Materials, Inc. v. Warren Paving, Inc.*,
   2021 WL 5168352 (W.D. Ky. Nov. 3, 2021) (Russell, J.) ......................22

*Heartland Materials, Inc. v. Warren Paving, Inc.*,
   819 F. App'x 323 (6th Cir. 2020) ..............................................................23

*HL 1 LLC v. Riverwalk, LLC*,
   15 A.3d 725 (Me. 2011)..............................................................................27

*Kyocera Corp. v. Prudential-Bache Trade Servs.*,
   341 F.3d 987 (9th Cir. 2003) ......................................................................27

*Lawrence v. Bingham Greenebaum Doll*,
   599 S.W.3d 813 (Ky. 2019) ........................................................................21

*Louisville & Jefferson Cnty Metro. Sewer Dist. v. T+C Constr., Inc.*,
   570 S.W.3d 551 (Ky. 2018) ........................................................................27

*McCarthy v. Louisville Cartage Co.*,
   796 S.W.2d 10 (Ky. App. 1990) ............................................................26, 30

*McElroy v. B.F. Goodrich Co.*,
   73 F.3d 722 (7th Cir. 1996) ..........................................................14, 15, 16, 26

*McMullen v. Meijer, Inc.*,
   166 F. App'x 164 (6th Cir. 2006) ..........................................................27, 28, 29

*Merial, Inc. v. Sergeant's Pet Care Prods., Inc.*,
   806 F. App'x 398 (6th Cir. 2020) ..............................................................23, 25

*Miller v. Admin. Off. of Courts*,
   361 S.W.3d 867 (Ky. 2011) ........................................................................23

*Moore v. Cabinet for Human Res.*,
  954 S.W.2d 317 (Ky. 1997) ...................................................................23, 24, 25

*Morrison v. Circuit City Stores, Inc.*,
  317 F.3d 646 (6th Cir. 2003) ................................................................27, 28, 29

*Muncy v. G.C.R., Inc.*,
  110 F. App'x 552 (6th Cir. 2004) .....................................................................14

*New Hampshire v. Maine*,
  532 U.S. 742 (2001)...............................................................................17, 18, 19

*Newman v. Newman*,
  451 S.W.2d 417 (Ky. 1970) ...............................................................................22

*Nghien v. NEC Elec., Inc.*,
  25 F.3d 1437 (9th Cir. 1994) .............................................................................19

*Parsons v. Halliburton Energy Servs., Inc.*,
  785 S.E.2d 844 (W. Va. 2016)...........................................................................14

*PolyOne Corp. v. Westlake Vinyls, Inc.*,
  5:19-cv-121-TBR, 2020 WL 695657 (W.D. Ky. Feb. 11, 2020)
  ("*Feb. 2020 Op.*") ........................................................................................4, 12

*PolyOne Corp. v. Westlake Vinyls, Inc.*,
  937 F.3d 692 (6th Cir. 2019) ...................................................................... *passim*

*PolyOne Corp. v. Westlake Vinyls, Inc.*,
  No. 5:18-cv-107-TBR, 2019 WL 238018 (W.D. Ky. Jan. 16, 2019)
  ("*Jan. 2019 Op.*")........................................................................................ *passim*

*PolyOne Corp. v. Westlake Vinyls, Inc.*,
  No. 5:18-cv-107-TBR, 2018 WL 3625742, at *3 (W.D. Ky. July 30, 2018)
  ("*July 2018 Op.*")........................................................................................10, 25

*PolyOne Corp. v. Westlake Vinyls, Inc.*,
  No. 5:17-cv-157-TBR, 2018 WL 2437241 (W.D. Ky. May 30, 2018)
  ("*May 2018 Op.*") ...................................................................................... *passim*

*Prihoda v. McCaughtry*,
  910 F.2d 1379 (7th Cir. 1990) ...........................................................................14

*Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC*,
  -- F.4th --, 2022 WL 3585013 (6th Cir. Aug. 22, 2022)......................................20

*Riniker v. UnitedHealth Grp., Inc.*,
  2015 WL 1782566 (D. Minn. Apr. 20, 2015)......................................................27

*Sedley v. City of W. Buechel*,
    461 S.W.2d 556 (Ky. 1970) .................................................................23

*Seventeenth St. Assocs. v. Cole*,
    855 F. Supp. 2d 606 (S.D. W.Va. 2012) ............................................22

*Shields Ltd. P'ship v. Bradberry*,
    526 S.W.3d 471 (Tex. 2017) ...............................................................14

*Stamper v. Ford's Adm'x*,
    260 S.W.2d 942 (Ky. 1953) ...................................................14, 16, 26

*United States v. Saucedo*,
    226 F.3d 782 (6th Cir. 2000) ..............................................................14

*Warda v. Comm'r*,
    15 F.3d 533 (6th Cir. 1994) .......................................................17, 18, 19

*Water Mgmt. Servs., LLC v. City of Edmonton*,
    2020 WL 5121402 (W.D. Ky. Aug. 31, 2020) ..................................14

*Yeoman v. Comm. Health Policy Bd.*,
    983 S.W.2d 459 (Ky. 1998) ...........................................................20, 21

**Statutes**

9 U.S.C. § 13.........................................................................................12

Federal Arbitration Act § 4 ........................................................... *passim*

Federal Arbitration Act § 10 ...............................................2, 25, 26, 30

Federal Arbitration Act § 11 ...............................................2, 25, 26, 30

**Rules**

JAMS Rule 25.....................................................................................4, 30

**Treatises**

18 James Wm. Moore, Moore's Fed. Prac. § 131.23[1] (3d ed. 2018) .......................................21

46 Am. Jur. 2d Judgments § 473...........................................................24

Restatement (Second) of Judgments § 27 .............................................24

Restatement (Second) Judgments § 33 .................................................20

13 Williston on Contracts § 39.14 (4th ed.)....................................14, 26

## I.      INTRODUCTION

Like its first challenge four years ago, the sole basis for Avient's current challenge to the validity of the Arbitration Agreement in Sections 4, 5 and Exhibit C of the 2007 Settlement Agreement between Westlake and Avient ("Arbitration Agreement") is Avient's assertion that a separate (and never utilized) provision—the de novo judicial proceeding provision in Section 6 of the 2007 Settlement Agreement—is illegal and material to the Arbitration Agreement, thus invalidating the Arbitration Agreement.  Complaint ¶ 41.  However, both Judge Thomas B. Russell of this Court and the Sixth Circuit previously held that Avient knew that its ability to challenge Section 6 arose *14 years ago* with the issuance of *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008).  But instead of raising that issue, Avient for over ten years did the opposite: it repeatedly confirmed the validity of the Arbitration Agreement in its course of performance with Westlake regarding payment of Allocable Costs under the Agreement; it confirmed the validity of the Arbitration Agreement before this Court; and it actively enforced the Arbitration Agreement by initiating two arbitrations, most recently in 2017, leading to a final award confirmed by this Court.  Plainly, Avient concluded that any infirmity with Section 6 due to *Hall Street* did not invalidate the *Arbitration Agreement*.

Since 2007, the parties have engaged in a course of performance to enforce the Arbitration Agreement, including following the agreed-upon structure requiring payment of Allocable Costs by Avient subject to potential reallocation through arbitration.  Westlake devoted substantial time and resources to litigation pursuant to the Arbitration Agreement, obtaining decisions in two prior arbitrations that address more than $40 million in Allocable Costs and a decision from this Court concerning the enforcement and validity of the Arbitration Agreement.  Even after the 2017 Arbitration Panel issued the Final Award in May 2019 (DN 15-3), Avient deliberately chose *not* to file a Section 6 proceeding, but instead followed the Federal Arbitration Act ("FAA") process

as contemplated by the Arbitration Agreement.  As recently as April 2020, Avient declared that Westlake "must" pursue arbitration to resolve Westlake's current claims for Allocable Costs.

Like its belated validity challenge in 2018, Avient's latest challenge to the validity of the Arbitration Agreement should be rejected.  First, under well-settled law, Avient has *permanently* waived its validity challenge.  Second, Avient is judicially estopped from relitigating validity because Avient previously advocated, and this Court adopted, Avient's position that the Arbitration Agreement *is valid*.  *See PolyOne Corp. v. Westlake Vinyls, Inc.*, No. 5:17-cv-157-TBR, 2018 WL 2437241 (W.D. Ky. May 30, 2018) ("*May 2018 Op.*").  Next, this Court's *May 2018 Opinion* enforcing the Arbitration Agreement and holding that it is valid should be given preclusive effect here under the doctrines of claim preclusion and issue preclusion.

Finally, Avient cannot rely on Section 6 to avoid its contractual obligation to arbitrate. Because Avient has waived or is otherwise legally precluded from challenging the validity of the Arbitration Agreement, that same conduct resulted in Avient's waiver of all contract rights to a judicial proceeding under Section 6.  Since *Hall Street* was issued in 2008, Avient knew it was settled law that Sections 10 and 11 of the FAA were the exclusive process for judicial review of an arbitration award.  Yet over the next ten years, Avient performed under the Arbitration Agreement and did not raise a concern about Section 6 being unavailable, even when this Court enforced the Agreement against Avient in 2018.  Avient also initiated two arbitrations knowing Section 6 was unavailable post-arbitration.  In so doing, Avient knowingly waived and abandoned its contract rights to a judicial proceeding under Section 6 and is also estopped from enforcing them.  No further analysis is needed as to whether Section 6 is severable.

Not only did Avient waive Section 6, but under applicable precedent, the terms of the 2007 Settlement Agreement, and Avient's long-standing performance, Section 6 should be severed from

the 2007 Settlement Agreement, leaving the entire Arbitration Agreement in place. Avient itself agrees that Section 6 may be severed from the *2007 Settlement Agreement*. Complaint ¶ 27. But Avient claims that Section 6 is material to the *Arbitration Agreement* and cannot be severed from it. Avient is wrong. Avient's position that Section 6 is material to the Arbitration Agreement is refuted by established precedent, the terms of the 2007 Settlement Agreement, and Avient's performance over more than a decade confirming the validity of the Arbitration Agreement. Avient's validity challenge is simply a pretext for Avient to avoid its contractual obligation to arbitrate. Accordingly, Westlake is entitled to summary judgment that the Arbitration Agreement is valid, and this Court should order Avient to arbitrate.

## II.      BACKGROUND

### A.      The 2007 Settlement Agreement Containing The Parties' Arbitration Agreement.

In 2007, Westlake, Avient and Goodrich Corporation ("Goodrich"), with Judge Russell's assistance, resolved a highly contentious lawsuit then pending in this Court over environmental costs at the former Goodrich facility in Calvert City, Kentucky ("Site"). In resolving that lawsuit, Westlake and Avient agreed to a structure to efficiently address disputes over ongoing environmental costs at the Site. Rather than face serial indemnity claims under the 1990 Master Conveyance Agreement or 1997 Purchase and Sale Agreement between Westlake and Goodrich, Westlake and Avient agreed to a structure to allocate "Allocable Costs" going forward. Under Section 3.1 of the 2007 Settlement Agreement, Avient is required to pay 100% of the Allocable Costs, which responsibility "shall continue unless and until that percentage is modified" in arbitration. 2007 Settlement Agreement (DN 6) at 3. Under Section 4 of the Arbitration Agreement, either party may initiate arbitration once every five years to modify the 100% allocation to Avient. *Id.* at 5. If no party files arbitration to re-allocate Allocable Costs incurred and paid during the applicable five-year window, then any claim to re-allocate those costs is barred

pursuant to Section 5.3.  *Id.* at 7.  Under Section 4.5, the arbitration panel has discretion on how to allocate costs and may apply the allocation prospectively.  Exhibit C to the 2007 Settlement Agreement contains detailed procedures governing the arbitration.

Contrary to Avient's characterization (Compl. ¶ 2), an arbitration under the Arbitration Agreement is not "non-binding."  Rather, the Arbitration Agreement provides that, pursuant to JAMS Rule 25, the FAA process to confirm or vacate an arbitration award applies.  DN 6 (intro. para.).  Both parties followed the FAA process for the Final Award issued in the 2017 Arbitration, and this Court applied the FAA in confirming the Final Award.  *PolyOne Corp. v. Westlake Vinyls, Inc.*, 5:19-cv-121-TBR, 2020 WL 695657 (W.D. Ky. Feb. 11, 2020) ("*Feb. 2020 Op.*").

A separate provision of the 2007 Settlement Agreement that is not part of the Arbitration Agreement—Section 6—provides that, after an arbitration, a party may choose to file a separate "judicial proceeding" to obtain "a de novo determination" of the allocation of Allocable Costs. DN 6 at 7-8.  But consistent with the strong preference for arbitration, Section 6.5 provides a formidable disincentive to pursuing a judicial proceeding under Section 6.  *Id.* at 9.  A party filing a separate Section 6 judicial proceeding must succeed in reducing its share of Allocable Costs by 50% as compared to the arbitration award or it must pay the other side's legal and expert fees.  *Id.*[1]

**B.     Avient Confirms The Arbitration Agreement's Validity In The 2010 Arbitration.**

In March 2010, two years after *Hall Street* and knowing of Section 6's infirmity, Avient initiated an arbitration under Section 4 of the Arbitration Agreement seeking to allocate millions

---

[1]      As an example, the Final Award in the 2017 Arbitration (DN 15-3) held Avient responsible for 100% of the Allocable Costs based on Goodrich's massive legacy contamination of the entire Site.  Thus, in a Section 6 action—which, in fact, Avient deliberately elected to not pursue—Avient would have had to change this allocation by at least 50% or pay all of Westlake's attorney and expert fees, which would amount to several million dollars.  Here, Avient seeks not only to undo the arbitration process, but to have the right to litigate a series of indemnification lawsuits in this Court without the risk of paying that agreed upon penalty.

of dollars of Allocable Costs to Westlake ("2010 Arbitration").  In so doing, Avient affirmatively represented that the Arbitration Agreement was valid.[2]  Similarly, in a letter to the 2010 Arbitration Panel, Avient unambiguously described its then view on the validity of the Arbitration Agreement:

> As with other Allocable Costs incurred at the Calvert City Site, [Avient] assumed 'initial responsibility' for the payment of these soil disposal costs.  Under the terms of the Settlement Agreement, these payments (like other costs incurred at the Site) were made with the understanding that the allocation of responsibility between [Avient] and Westlake **would be determined in arbitration**.

Letter dated 5/7/10, at 2 (**Ex. 2**) (emphasis added).[3]  In its preliminary hearing brief in the 2010 Arbitration, Avient declared that "[e]arly, cost-effective resolution of allocation issues was and remains the goal of this arbitration."  **Ex. 3** at 10-12.  After five years of litigation, Avient voluntarily dismissed the 2010 Arbitration with prejudice, and the 2010 Arbitration Panel issued a final award in December 2015.  **Ex. 4**.  Avient retained its 100% allocation of Allocable Costs, and any claims related to the Allocable Costs incurred and paid before March 2010 were resolved.

## C.    Avient Performs Under The Arbitration Agreement And Confirms Its Validity.

After agreeing to the Arbitration Agreement, the parties performed in accordance with its terms by not only engaging in the 2010 Arbitration, but also by following its overall structure requiring Avient to pay 100% of the Allocable Costs with the understanding that the parties would arbitrate any claim for reallocation.  Avient mostly complied with its obligation to pay Westlake 100% of the Allocable Costs subject to arbitration.  In numerous letters regarding Allocable Costs

---

[2]    *See* Notice of Arbitration letter, dated 3/16/10, at 1-2 ("Pursuant to Section 4 and Exhibit C of the [2007] Settlement and Release Agreement . . . [Avient] hereby submits this written notice that it is initiating arbitration . . . against Westlake to recover Allocable Costs for investigation and remediation of environmental contamination at the [Site] … [Avient] and Westlake . . . have contractually agreed to arbitrate this dispute under the administration of JAMS.") (**Ex. 1**).

[3]    Each exhibit referenced herein by number is attached to the Declaration of Adam T. Goebel filed concurrently with Westlake's Memorandum in Support.

Avient was paying, Avient expressly reserved its right to reallocate those costs in arbitration.[4] Under this structure in the Arbitration Agreement, the parties addressed at least $38.3 million in costs through 2017.[5]  Further, based on the Arbitration Agreement's provisions, the 2019 Final Award applied the allocation of certain Allocable Costs prospectively, which applies to millions more in Allocable Costs.  Final Award (DN 15-3) at 64 ¶ 1 & 66 ¶ 4.a.  In sum, since 2007, the parties have addressed more than $40 million in Allocable Costs under the Arbitration Agreement.

D.   **Avient Confirms The Validity Of The Arbitration Agreement In The 2017 Arbitration And This Court's *May 2018 Opinion* Enforces The Agreement.**

In May 2017, 10 years after executing the Arbitration Agreement and 9 years after *Hall Street*, Avient initiated a second arbitration, seeking to allocate to Westlake millions of dollars of Allocable Costs ("2017 Arbitration").   In its demand, Avient asserted that the Arbitration Agreement was valid.  *See* Preliminary Order No. 21 (DN 15-2) at 3 ("In its Demand commencing *this case*, [Avient] stated, 'Pursuant to Section 4 of the 2007 Settlement Agreement … the parties have contractually agree[d] to arbitrate this dispute under the administration of JAMS.'"); **Ex. 7**.

After Westlake filed its own claims in the 2017 Arbitration to allocate costs for Westlake's disposal of Goodrich's contamination, Avient filed a lawsuit in this Court asserting that Westlake's claims were not arbitrable ("2017 Lawsuit").  Avient again asserted that the Arbitration Agreement was valid and invoked this Court's jurisdiction to interpret and apply it.  *PolyOne Corp.*, No. 5:17-

---

[4]    For example, by letter dated July 17, 2014, Avient said it disagreed that certain disposal costs it was paying were Allocable Costs, and Avient "reserve[d] the right to challenge Westlake's characterization of any such costs as Allocable Costs in future arbitration proceedings undertaken pursuant to the Settlement Agreement." **Ex. 5.**  In letters in February 2015 and April 2017, Avient again contested that costs it was paying were Allocable Costs and reserved its right to reallocate those costs in arbitration pursuant to the 2007 Settlement Agreement.  **Ex. 6.**

[5]    *See* **Ex. 1** (Avient's 2010 Demand to allocate $8.5 million in Allocable Costs); **Ex. 7** (Avient's 2017 Demand to allocate $25.7 million in Allocable Costs), **Ex. 8** (Westlake's Second Amended Cross-Demand to allocate $4.1 million in Allocable Costs).

cv-157, First Am. Comp., DN 23 at 8-9 (alleging that "[Avient] and Westlake *agreed to arbitrate* the allocation of certain environmental costs arising after July 31, 2007" and that the Arbitration Agreement "*requires* [Avient] and Westlake to arbitrate the amount and allocation" of costs at issue) (emphasis added) (**Ex. 9**).

      In response, Westlake asserted a claim under Section 4 of the FAA to enforce the Arbitration Agreement by filing a motion to dismiss and to compel arbitration. *Id.*, DN 25-1 at 22 (**Ex. 10**). Westlake asserted that the parties were required to arbitrate under a valid Arbitration Agreement and, pursuant to Section 4 of the FAA, the Court should enforce the Arbitration Agreement by dismissing Avient's lawsuit and ordering arbitration. *Id.* at 20, 22. Westlake asserted "there is no dispute that the agreement to arbitrate set forth in the 2007 Settlement Agreement is valid and enforceable . . . Even [Avient] does not attack the validity of the agreement." *Id.* at 22. In response, Avient agreed the Arbitration Agreement was valid. *Id.*, DN 27 at 5 (**Ex. 11**) ("[Avient] and Westlake agreed to arbitrate the allocation of certain specified environmental costs, defined as 'Allocable Costs,'" in the Arbitration Agreement). As this Court noted, both parties argued that, under Section 4 of the FAA, the Court must consider "whether [the] agreement to arbitrate between the parties was valid and whether the dispute falls within the scope of the arbitration agreement." *May 2018 Op.*, 2018 WL 2437241, at *7 n.2.

      This Court analyzed Westlake's motion as a motion to compel arbitration under Section 4 of the FAA, *id.* at *7, and ruled that Westlake's claims were subject to arbitration. *Id.* at *8. The Court observed that a motion to compel arbitration under Section 4 of the FAA required the Court to "engage in a limited review to determine whether the dispute is arbitrable." *Id.* The first step of that review is determining whether "a valid agreement to arbitrate exists between the parties." *Id.* The Court recognized that Avient itself argued that the dispute must be analyzed

pursuant to the FAA, including "whether [the] agreement to arbitrate between the parties was valid." *Id.* at *7 n.2.  In deciding the validity question, the Court found that "neither party disputes that the 2007 [Settlement] Agreement containing the arbitration clause was valid," and, therefore, the Court accepted and adopted Avient's (and Westlake's) position that the Arbitration Agreement is valid, and it enforced the Arbitration Agreement against Avient.  *Id.* at *8.

**E.     This Court And The 2017 Arbitration Panel Both Reject Avient's Eleventh-Hour Attempt To Invalidate The Arbitration Agreement.**

In July 2018, just one month before the start of the final evidentiary hearing in the 2017 Arbitration, Avient abruptly undertook a 180-degree reversal of its then ten-year-old position that the Arbitration Agreement was valid.  Avient asked the Panel to stay the arbitration.  It also filed a new lawsuit in this Court challenging the Arbitration Agreement's validity ("2018 Lawsuit").

It was apparent that Avient's change of position was strategic, driven entirely by Avient's displeasure with the status of the ongoing arbitration.  Specifically, on May 30, 2018, one month before Avient sought to stay the arbitration, the Panel ruled against Avient on a crucial dispositive motion, rejecting Avient's position that certain costs Westlake sought to allocate in arbitration were not Allocable Costs.  *See* Preliminary Order No. 16 (**Ex. 12**).  Then, on June 29, 2018, six days before Avient moved for the stay, the Panel heard oral argument on another Westlake dispositive motion, which would allocate millions of dollars to Avient.  The Panel granted Westlake's dispositive motion a week later, on July 6.  *See* Preliminary Order No. 20 (**Ex. 13**).

When Avient challenged the validity of the Arbitration Agreement on July 5, 2018, Avient claimed it learned of the basis for its challenge—*Citizen Potawatomi Nation v. Oklahoma*, 881 F.3d 1226 (10th Cir. 2018)—on June 30, 2018, the very next day after the June 29 oral argument on Westlake's dispositive motion.  That timing was no coincidence.  Avient changed its position on validity because of the status of the arbitration, electing to pursue an aggressive tactic to avoid

-8-

arbitration altogether.[6]  This Court and the Sixth Circuit have already rejected Avient's contention that *Potawatomi*, not *Hall Street*, provided the basis to challenge Section 6.  *PolyOne Corp. v. Westlake Vinyls, Inc.*, No. 5:18-cv-107-TBR, 2019 WL 238018, at *3 (W.D. Ky. Jan. 16, 2019) ("*Jan. 2019 Op.*"); *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 699-700 (6th Cir. 2019).

### 1.    The 2017 Arbitration Panel's Preliminary Order No. 21.

On July 22, 2018, the 2017 Arbitration Panel rejected Avient's stay request.  Preliminary Order No. 21 (DN 15-2) at 6.   Based on Avient's conduct in initiating two arbitrations and confirming the validity of the Arbitration Agreement in the 2017 Lawsuit, the Panel found that:

> [t]his is an unusually compelling case for concluding that [Avient], based on its prior conduct, has waived and is estopped and judicially estopped from arguing that the arbitration agreement is not valid.  The analysis supporting waiver, estoppel, and judicial estoppel equally strongly supports the conclusion that [Avient] understands that the arbitration agreement in the 2007 Settlement Agreement is valid.

---

[6]      *See PolyOne Corp. v. Westlake Vinyls, Inc.*, No. 5:18-cv-107, Mem. In Support of Motion for TRO, DN 4-1 at 15-16.  During the July 21, 2018, oral argument on Avient's motion to stay the 2017 Arbitration, one of the arbitrators expressly raised the prospect that Avient was changing its position on the validity of the Arbitration Agreement solely for strategic reasons based on how the arbitration was unfolding to that point:

> [O]ne of the things I'm struggling with . . . *Hall Street* is an old case and you guys are really good lawyers, and I find it very difficult to believe that a case so on point escaped your notice. . . .   [B]ut one thing that occurs to me is that you guys did know about *Hall Street*, and instead of *Potawatomi*, it should have been [Avient] who brought that challenge to the arbitrability provision in your settlement agreement, you know, five, six, seven, eight, nine years ago.  But you didn't do it. . . .  Now things are changing and orders are being issued by this panel, and maybe – I don't think *Potawatomi* . . . really does a whole lot that *Hall Street* doesn't do. . . . And why are we just getting this now, after so much water has gone under this bridge?  And I'm not just talking about dribs of water, I'm talking about eight years of water and two separate arbitrations instituted under that clause by [Avient], that's now telling us the clause is no good.

Telephonic Arbitration Hearing Transcript dated 7/21/18, at 9:22-11:5 (**Ex. 14**).

*Id.* at 2.  The Panel found "[t]hat [Avient] has always understood that the arbitration provision of the 2007 Settlement Agreement is valid," and that Avient had been aware (or should have been aware) of its ability to challenge the Arbitration Agreement since *Hall Street's* issuance in 2008. *Id.* at 4.  Based on these findings, the Panel concluded:

> as a legal matter that [Avient] has waived and is estopped and judicially estopped from making the arguments it is making to the effect that the arbitration provision is not valid.  Regardless of its ruling on the waiver and estoppel arguments, the Panel (without itself determining the validity of the arbitration agreement) finds that the parties have consistently understood that the arbitration agreement is valid, and have so conducted themselves for a decade.  *Id.*

### 2.    The *July 2018 Opinion*.

On July 30, 2018, this Court denied Avient's motion to enjoin the 2017 Arbitration, finding that Avient had "waived any argument that the 2007 Agreement is invalid."  *PolyOne Corp. v. Westlake Vinyls, Inc.*, No. 5:18-cv-107-TBR, 2018 WL 3625742, at *3 (W.D. Ky. July 30, 2018) ("*July 2018 Op.*").  This Court held that Avient "had ten years to object to the validity of the 2007 Agreement since the publishing of *Hall* [*Street*], yet, instead, it instituted one arbitration in 2010 under the 2007 Agreement—which lasted five years—and another arbitration in May of 2017." *Id.*  This Court rejected Avient's attempt to excuse its waiver based on *Potawatomi*, explaining: "Avient either knew or should have known of its right to challenge the validity of Section 6 of the 2007 Agreement.  Furthermore, it was clearly *Hall* [*Street*] that gave [Avient] the right to argue the invalidity of Section 6, not *Potawatomi*, making [Avient's] argument that it did not learn of *Potawatomi* until June of 2018 irrelevant."  *Id.*

### 3.    The *January 2019 Opinion*.

In the *January 2019 Opinion*, this Court again held that Avient had waived its right to challenge the Arbitration Agreement, explaining:

> By initiating two different arbitrations and a lawsuit against Westlake, [Avient] abandoned the right to now claim that the arbitration clause was invalid all along.

> If [Avient] wished to object to the validity of the arbitration clause, it could have done so in 2008—a year after the agreement was formed—under the binding authority of the Supreme Court in *Hall Street*. Instead, both parties continued to pour time and resources of their own and of this Court into arbitration and litigation . . . Quite simply, if [Avient] wished to object to this arbitration agreement, it should have done so a decade ago.

*Jan. 2019 Op.*, 2019 WL 238018, at *3. The Court again rejected Avient's reliance on *Potawatomi*, stating that the Tenth Circuit in *Potawatomi* simply conducted a routine severability analysis. *Id.* The Court said *Potawatomi* is not new law: "Beyond the fact that the Tenth Circuit's holding is not binding on this Court, . . . the Tenth Circuit cited to traditional contract interpretation, such as the parole evidence rule—not a revolutionary change in law." *Id.*

This Court also rejected Avient's argument that the severance clause in *Potawatomi* was substantively like the severance clause in Section 14 of the 2007 Settlement Agreement. *Id.* at 4. As this Court explained, the structure of the dispute resolution provision in *Potawatomi* controlled the Tenth Circuit's severability analysis and demonstrated that the arbitration agreement was "specifically conditioned on, and inextricably linked to, the availability of de novo review in federal court.'" *Id.* at *4 (quoting *Potawatomi*, 881 F.3d at 1239-40). But this Court found no such link here, explaining "[u]nlike the Compact in *Potawatomi*, the section labeled 'Arbitration Procedures' of the 2007 [Settlement] Agreement did not contain any language specifically conditioning arbitration on the availability of de novo review in court." *Id.*

## F.    The Sixth Circuit Affirms This Court's Finding Of Waiver.

On September 6, 2019, the Sixth Circuit affirmed this Court's ruling on waiver, "conclud[ing] that [Avient] has waived its challenge to the judicial-relief provision [Section 6], at least for the arbitration that began in 2017." *PolyOne Corp.*, 937 F.3d at 701. Like this Court, the Sixth Circuit determined that Avient's ability to challenge the Arbitration Agreement arose in 2008 due to the *Hall Street* decision, not *Potawatomi*. *Id.* at 699-700. The Court also stated that it was

not ruling on Westlake's other arguments to preclude Avient from challenging the Arbitration Agreement and that Westlake could raise those arguments in the future. *Id.* at 701 n.3.

**G.      This Court Confirms The 2017 Arbitration Panel's Final Award.**

On May 22, 2019, the 2017 Arbitration Panel issued a unanimous Final Award allocating 100% of the Allocable Costs at issue to Avient. *Feb. 2020 Op.*, 2020 WL 695657, at *1; Final Award (DN 15-3). This ruling applied provisions of the Arbitration Agreement, such as Sections 4.5 and 5.2. *See* Final Award (DN 15-3) at 63-64. Avient did not file a Section 6 judicial proceeding after the 2017 Arbitration Panel issued the Final Award. Instead, per the Arbitration Agreement, Avient moved this Court to vacate the Final Award under the FAA. Westlake then moved to confirm the Final Award under the FAA. In the *February 2020 Opinion*, this Court applied the FAA standard and denied Avient's motion and granted Westlake's. As a result of the Court's confirmation order, the Final Award is a final judgment. *See* 9 U.S.C. § 13.

**H.      Avient Again Confirms The Validity Of The Arbitration Agreement In April 2020.**

Despite the 100% allocation in the Final Award, Avient still refuses to pay Westlake for certain costs incurred by Westlake to remediate Goodrich's legacy contamination, which costs Westlake now seeks to recover in an arbitration filed by Westlake in March 2022 ("Pending Arbitration"). In refusing to pay those costs, Avient in April 2020 again confirmed the validity of the Arbitration Agreement and told Westlake it ***must*** arbitrate the dispute. Avient wrote:

> To the extent Westlake disputes [Avient's] position that [certain] costs are not Allocable Costs, *that dispute **must** be resolved by an arbitration panel under the 2007 Settlement Agreement* (*see* Memorandum Opinion, May 30, 2018, *PolyOne Corp. v. Westlake Vinyls, Inc.*, WDKY Case No. 5:17-CV-157-TBR (Dkt. No. 39), at 15-21).

Letter from Avient Asst. Gen. Counsel, dated 4/27/20 (emphasis added) (**Ex. 15**). Thus, two years after this Court rejected Avient's attempt to invalidate the Arbitration Agreement, Avient declared

-12-

that Westlake's claim "must be resolved by an arbitration panel" under the Arbitration Agreement, and even cited the *May 2018 Opinion* confirming the Arbitration Agreement's validity.  *Id.*

## III.    ARGUMENT

### A.    Avient Has Permanently Waived Its Validity Challenge.

Avient claims Section 6 is illegal under *Hall Street* and invalidates the Arbitration Agreement.  Complaint ¶ 41.  But once a party to a contract waives a right, that right is gone forever.  Thus, Avient's waiver is *permanent*.  This Court and the Sixth Circuit held that, due its 10-year course of conduct, Avient waived its challenge to the validity of the Arbitration Agreement.  *Jan. 2019 Op.*, 2019 WL 238018, at *2, 5; *PolyOne Corp.*, 937 F.3d at 701.  The Sixth Circuit explicitly said what Avient waived: "[a]s soon as the Supreme Court issued *Hall Street* in 2008, [Avient] could have requested a declaratory judgment that the [2007 Settlement] Agreement's judicial-relief provision [Section 6] was invalid.  And [Avient] could have argued— as it does now—that striking the judicial-relief provision but keeping intact the other arbitration provisions would materially alter the legal substance of the Agreement, leaving the court no choice but to strike all of the Agreement's arbitration provisions."  937 F.3d at 699.  Ultimately, the Sixth Circuit held Avient intentionally waived its "challenge to the judicial-relief provision."  *Id.* at 701.

The Sixth Circuit stated that it was "withhold[ing] judgment" only on whether Avient's "prior conduct precludes it from *ever* challenging the Agreement's arbitration provisions in the future," leaving this Court free to address that issue.  *Id.* at 701, 702 (emphasis added).  Thus, here, the Court need only apply black letter contract law to the prior holdings on Avient's waiver to now hold that Avient's waiver is permanent and bars Avient's validity challenge forever.

Courts recognize that a waiver of a contract right is permanent.  As Judge Posner explained:

[I]f a party to a contract engages in conduct that demonstrates that he intends to give up a right, *then he has waived it and cannot revive it*.  The contractual doctrine of waiver, whether express or implied, seems, . . . to rest on an idea no more

complicated than that any competent adult can abandon a legal right and if he does so *then he has lost it forever.*

*McElroy v. B.F. Goodrich Co.*, 73 F.3d 722, 724 (7th Cir. 1996) (emphasis added) (citations omitted).  *Accord Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 482 (Tex. 2017) (same); *Parsons v. Halliburton Energy Servs., Inc.*, 785 S.E.2d 844, 850 (W. Va. 2016) (same); *Water Mgmt. Servs., LLC v. City of Edmonton*, 2020 WL 5121402 (W.D. Ky. Aug. 31, 2020) ("'A party may waive or relinquish rights to which he is entitled under a contract, and having done so may not reverse his position to the prejudice of another party to the contract.'") (quoting *Stamper v. Ford's Adm'x*, 260 S.W.2d 942, 943 (Ky. 1953)).  The permanence of a waiver in these circumstances "is in accord with the general principle of contract law that either party to a contract may waive virtually any contractual provision or right in its favor, as well as the more elementary legal principle that one may waive virtually any right, including both procedural and substantive rights . . ."  13 Williston on Contracts § 39.14 (4th ed.).[7]

Applying this black letter law here, Avient's waiver must be deemed permanent.  Both this Court and the Sixth Circuit found that Avient was fully aware that it could challenge the contractual terms in Section 6 once *Hall Street* was issued in 2008 but did not do so.  *Jan. 2019 Op.*, 2019 WL 238018, at *3; *PolyOne Corp.*, 937 F.3d at 699-700.  Instead, over a 10-year period, Avient

___

[7]     The Sixth Circuit and other courts recognize the permanence of waiver in other contexts as well.  In *Muncy v. G.C.R., Inc.*, the Sixth Circuit found that an appellant who failed to cite legal authority or record evidence in support of an argument waived the argument.  110 F. App'x 552, 558 (6th Cir. 2004).  The Court explained: "Unlike a mere 'forfeiture,' a waiver, once accomplished, is complete, permanent, and irrevocable; a litigant which has waived a contention or claim is powerless to retract that waiver, and the issue is forever foreclosed." *Id.* (citing *United States v. Saucedo*, 226 F.3d 782, 787 (6th Cir. 2000)).  *See also Dynaquest Corp. v. U.S. Postal Serv.*, 242 F.3d 1070, 1074 (D.C. Cir. 2001) (affirming ruling that party's failure to raise issue "constitutes a waiver of its right to raise it in subsequent proceedings"); *Emerson v. Gramley*, 91 F.3d 898, 904 (7th Cir. 1996) ("[i]f you waive or forfeit a claim, it's ordinarily barred forever, in any court system"); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1387 (7th Cir. 1990) (claims that are waived "are almost always *gone forever*") (emphasis added).

deliberately ignored any issue with Section 6 and initiated two arbitrations affirmatively declaring the Arbitration Agreement's validity.  It then filed the 2017 Lawsuit expressly confirming the Arbitration Agreement's validly, resulting in this Court enforcing the Agreement against Avient under Section 4 of the FAA.  *Jan. 2019 Op.*, 2019 WL 238018, at *3-4.  As a matter of law, that conduct resulted in Avient permanently waiving its right to challenge the validity of the Arbitration Agreement based on the contract terms of Section 6.  *Id.* at *2, 5; *PolyOne Corp.*, 937 F.3d at 701. Indeed, this Court previously held that "[b]y initiating two different arbitrations and a lawsuit against Westlake, [Avient] *abandoned the right* to now claim that the arbitration clause was invalid all along."  *Jan. 2019 Op.*, 2019 WL 238018, at *3 (emphasis added).  That holding falls squarely within the law that "any competent adult can *abandon a legal right* and if he does so *then he has lost it forever*."  *McElroy*, 73 F.3d at 724 (emphasis added).  Thus, Avient's waiver is permanent.

Avient's contract performance shows that its waiver is permanent.  After *Hall Street's* issuance in 2008, Avient engaged in a 10-plus-year course of performance with Westlake in which the parties addressed more than $40 million in Allocable Costs.  *See supra* at 5-6.  Throughout that period, Avient never once suggested that the Arbitration Agreement was invalid due to Section 6, but rather sought to enforce the Agreement at every turn.  Avient reversed course only after it became dissatisfied with the then-ongoing arbitration.  *See supra* at 8-9.  Avient's cynical gamesmanship must not be permitted.  *See Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261, 265 (6th Cir. 2015) (waiver where party tried to compel arbitration after unfavorable rulings in litigation).

Avient's conduct *since* the conclusion of the 2017 Arbitration supports treating Avient's waiver as permanent.  After the 2017 Arbitration Panel issued the Final Award in May 2019, Avient did not attempt to avail itself of Section 6.  Instead, it opted to challenge the Final Award under the FAA process contemplated by the Arbitration Agreement.  Moreover, Avient had every

incentive to seek a declaratory judgment on the validity issue immediately after the Sixth Circuit's September 2019 ruling rejecting Avient's validity challenge on waiver grounds.  But Avient did not do so until Westlake initiated the Pending Arbitration in March 2022.  Even in connection with the claims at issue in the Pending Arbitration, Avient declared in writing in April 2020 that the "dispute [over current costs] ***must*** be resolved by an arbitration panel under the 2007 Settlement Agreement."  **Ex. 15** (emphasis added).  Avient even relied upon this Court's *May 2018 Opinion* confirming the validity of the Arbitration Agreement.  *Id.*  Plainly, that position is diametrically opposed to Avient's current effort to invalidate the Arbitration Agreement.  Under black letter law, Avient's waiver is permanent.  *McElroy*, 73 F.3d at 724.

Finally, Avient's reversal of position, if allowed, would prejudice Westlake.  *Stamper*, 260 S.W.2d at 943.  The parties have a 15-year course of performance in applying the Arbitration Agreement's structure for addressing Allocable Costs.  If Avient had a concern about the validity of the Arbitration Agreement, then Avient was *required* to raise that issue 15 years ago.  *Jan. 2019 Op.*, 2019 WL 238018, at *3; 937 F.43d at 699.  Instead, Westlake relied on Avient's repeated assertions in legal proceedings that the Arbitration Agreement is valid and the parties' long course of performance addressing more than $40 million in Allocable Costs.  In reliance on Avient's position, Westlake has obtained rulings from this Court enforcing the Arbitration Agreement and Westlake also obtained rulings in the Final Award that are based on the Arbitration Agreement. *See* Final Award (DN 15-3) at 63-64.  Westlake has a substantial interest in upholding the process for addressing Allocable Costs, including the streamlined arbitration process the parties have followed since 2007 for potentially reallocating costs.  Avient cannot now unravel the parties' entire process for addressing Allocable Costs after 15 years of conduct that has been premised on the validity of the Arbitration Agreement.

**B.     Avient's Validity Challenge Is Barred By Judicial Estoppel.**

Judicial estoppel "preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Warda v. Comm'r*, 15 F.3d 533, 539 (6th Cir. 1994) (quotation omitted).  The Sixth Circuit has confirmed that judicial estoppel applies to inconsistent legal positions.  *Id.* at 538-40 & n.5 (judicial estoppel applied to "legal position" on validity of will); *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 892-93 (6th Cir. 2002) (applying judicial estoppel to interpretation of contractual forum selection clause).[8]  In *New Hampshire*, the Supreme Court listed the factors for courts to apply in the judicial estoppel analysis:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.  . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

532 U.S. at 749-50 (internal quotations omitted).  Each factor is satisfied here.

First, the Sixth Circuit and this Court found that, since 2008, Avient has known of its ability to challenge Section 6.  *PolyOne*, 937 F.3d at 699; *Jan. 2019 Op.*, 2019 WL 238018, at *3.  Yet despite that knowledge, for 10 years Avient affirmatively stated that the Arbitration Agreement was valid, including in correspondence, the 2010 Arbitration, the 2017 Arbitration, and the 2017 Lawsuit.  *See supra* at 4-8.  Only when it became dissatisfied with the status of the 2017 Arbitration (*see supra* at 8-9) did Avient reverse course and attack the Arbitration Agreement's validity.  The inconsistency in Avient's positions could not be starker.

---

[8]     The U.S. Supreme Court and the Sixth Circuit also confirmed that application of judicial estoppel does not require a statement made under oath.  *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001); *In re B&P Baird Holdings, Inc.*, 759 F. App'x. 468, 482, (6th Cir. Jan. 8, 2019).

Second, Avient's decade-plus-long position that the Arbitration Agreement is valid was accepted by this Court in the 2017 Lawsuit, and by the Panels in the 2010 and 2017 Arbitrations. Both Westlake and this Court expressly relied on Avient's position that the Arbitration Agreement is valid in the 2017 Lawsuit, and this Court specifically adopted Avient's position in the *May 2018 Opinion* when it enforced the Arbitration Agreement against Avient.  2018 WL 2437241, at \*8. The entire purpose of the 2017 Lawsuit was to obtain a ruling from this Court on the scope of the Arbitration Agreement that Avient agreed was valid, and to enforce the Arbitration Agreement against Avient under Section 4 of the FAA.  As this Court noted in the *May 2018 Opinion*, Avient even asserted that the Court was *required* to find that a valid arbitration agreement existed before determining the scope of the Arbitration Agreement.  *Id.* at \*7 n.2.  *See also Great Earth*, 288 F.3d at 889 ("[W]hen asked by a party to compel arbitration under a contract, a federal court must determine whether the parties have agreed to arbitrate the dispute at issue.").

The *New Hampshire* opinion is instructive.  There, the Supreme Court held that New Hampshire was judicially estopped from taking a position in the pending litigation regarding the location of its border with Maine that was inconsistent with a position previously agreed to by New Hampshire in a prior consent decree.  The Court had relied upon and adopted New Hampshire's prior concession in approving the consent decree, which is precisely the same circumstance that exists here where this Court, in the *May 2018 Opinion*, relied upon and adopted Avient's position that the Arbitration Agreement is valid.  532 U.S. at 755.[9]  Moreover, as in *New Hampshire*, where the state's new position was based on information that was available to it during the prior litigation when it entered the consent decree, 532 U.S. at 754, Avient has known about

---

[9]      Similar to *New Hampshire*, in *Warda*, 15 F.3d 533, the party was judicially estopped because it agreed to a legal position concerning a will in a settlement agreement, and that settlement agreement was adopted by the court.

*Hall Street* since 2008, *Jan. 2019 Op.*, 2019 WL 238018, at *3, yet Avient still elected to confirm the validity of the Arbitration Agreement in its 2017 Lawsuit and two separate arbitrations.

Finally, for the same reasons discussed above (*see supra* at 16), Westlake will be prejudiced if Avient is allowed to reverse its position now, after more than 10 years of knowingly asserting that the Arbitration Agreement is valid. Avient's reversal of position after becoming dissatisfied with the status of the 2017 Arbitration, and its effort to invalidate an Arbitration Agreement that has governed the parties' course of performance over Allocable Costs for more than 15 years, is the height of "cynical gamesmanship" intended to "suit an exigency of the moment." *Warda*, 15 F.3d at 538. Judicial estoppel precludes such conduct. *Great Earth*, 288 F.3d at 893 ("Having successfully argued in a prior proceeding that the Southern District of New York should not determine the question of arbitrability in Michigan, the Simonses cannot now resurrect the New York forum. . . . To hold otherwise would allow the Simonses to defend diametrically opposed interpretations of the Agreement—one that requires litigation in New York and one that prohibits litigation there."). Accordingly, this Court should reject Avient's tactic.

**C.    Avient's Challenge To The Validity Of The Arbitration Agreement Is Barred By Claim Preclusion.**

In the *May 2018 Opinion*, this Court found that the Arbitration Agreement is valid and enforced the Agreement under Section 4 of the FAA. 2018 WL 2437241, at *8. That ruling is entitled to preclusive effect here under the doctrine of claim preclusion.[10] Under Kentucky law,

---

[10]    The Panel's ruling in Preliminary Order 21 that Avient "waived and is estopped and judicially estopped" from challenging the Arbitration Agreement's validity is entitled to preclusive effect as well. In *PolyOne Corp.*, 937 F.3d at 697, the Sixth Circuit cited to *Nghien v. NEC Electric, Inc.*, which holds that a party initiating arbitration waives the right to object to an arbitrator's authority. 25 F.3d 1437, 1440 (9th Cir. 1994). Here, Avient initiated the 2017 Arbitration and filed a motion asking the Panel to stay that arbitration. In ruling on that motion, the Panel held that Avient "waived and is estopped and judicially estopped" from challenging the Arbitration Agreement's validity. *See supra* at 9-10. In the confirmation process for the Final Award before this Court, Avient did not challenge the Panel's jurisdiction to issue these rulings in

claim preclusion applies when (i) there is an identity of parties, (ii) there is identity of causes of action, and (iii) the action was resolved on the merits. *Yeoman v. Comm. Health Policy Bd.*, 983 S.W.2d 459, 464-65 (Ky. 1998).[11]  The *May 2018 Opinion* satisfies each of these elements.  As to the first element, Westlake and Avient are parties to both actions.  As to the third element, the *May 2018 Opinion*, which enforced the Arbitration Agreement and dismissed the 2017 Lawsuit with prejudice, plainly constitutes a final judgment on the merits of the 2017 Lawsuit.  *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 85-87 (2000).[12]

The second element—identity of causes of action—is also satisfied.  Kentucky follows the "transactional approach" for determining identity of causes of action.  *Lawrence v. Bingham*

---

Preliminary Order No. 21, which are now part of a final judgment.  While Westlake fully acknowledges this Court's determination on the jurisdiction of the arbitrators in its August 18, 2022 Opinion, *Avient Corp., v. Westlake Vinyls, Inc.*, No. 5:22-CV-51-TBR, 2022 WL 3569019 (W.D. Ky. Aug. 18, 2022), there is a separate legal point that a party may waive any objection to the Panel's authority.  Here, Avient did not object during the confirmation process to the Panel's jurisdiction to issue the rulings in Preliminary Order No. 21.  Because the confirmed Final Award is a final judgment, the Panel's rulings on waiver, estoppel and judicial estoppel should be given preclusive effect and provide separate bases to bar Avient from challenging the Arbitration Agreement here.

[11]  Because this is a diversity case, Kentucky law on claim preclusion applies.  *See Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC*, 46 F.4th 454, 457-58 (6th Cir. 2022).

[12]  Avient has previously argued that claim preclusion does not apply to the *May 2018 Opinion* because Avient sought a declaratory judgment in the 2017 Lawsuit.  That is incorrect.  First, although Avient *sought* declaratory relief in the 2017 Lawsuit, the *May 2018 Opinion* does not *grant* declaratory relief.  Instead, the *May 2018 Opinion* addresses Westlake's claim under Section 4 of the FAA to enforce the Arbitration Agreement because Avient's claims for declaratory relief were subject to arbitration.  *See supra* at 7-8.  Thus, any exception to claim preclusion for declaratory relief actions simply does not apply here.  Second, even assuming the *May 2018 Opinion* did grant declaratory relief, the Sixth Circuit recognizes that claim preclusion *does* apply to the matters declared.  *See Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 835-37 (6th Cir. 2019); *see also* Restatement (Second) Judgments § 33 cmt. b (declaratory judgment "is conclusive, *with respect to the matters declared*, as to all persons who are bound by the judgment") (emphasis added).  The *May 2018 Opinion* accepted Avient's and Westlake's position that the Arbitration Agreement is valid and, thus, is conclusive between the parties on that matter.

*Greenebaum Doll*, 599 S.W.3d 813, 826 (Ky. 2019).  Under that approach, "'[t]he key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts.  If the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or *could have been brought* in support of the cause of action.'"  *Carneyhan v. Trigg Cty. Pub. Schools*, 2019 WL 6329362, at *4 (W.D. Ky. Nov. 26, 2019) (Russell, J.) (quoting *Yeoman*, 938 S.W. 2d at 465)).  Here, the claims in both actions arise from the same transactional nucleus of facts—the enforcement of the Arbitration Agreement against Avient.  Although the specific Allocable Costs may differ, the nucleus of facts is Avient's resistance to enforcement of the Arbitration Agreement to arbitrate Allocable Costs.  Because both actions arise out of the Arbitration Agreement, they arise out of the same transaction.  *See* 18 James Wm. Moore, Moore's Fed. Prac. § 131.23[1] (3d ed. 2018) ("[A] contract is generally considered to be a single transaction for purposes of claim preclusion.").

More specifically, the 2017 Lawsuit involved the validity, and enforcement, of the Arbitration Agreement pursuant to Section 4 of the FAA.  Although Avient filed the 2017 Lawsuit seeking declaratory relief to interpret the Arbitration Agreement, Westlake responded by asserting a claim under Section 4 of the FAA to enforce the Arbitration Agreement.  The *May 2018 Opinion* decided Westlake's Section 4 claim by addressing the validity of the Arbitration Agreement, and this Court enforced the Arbitration Agreement against Avient.  *See supra* 7-8; *see also Great Earth*, 288 F.3d at 889 (court must determine if valid arbitration agreement exists before ordering arbitration).  The *May 2018 Opinion* squarely addressed the *very issue Avient raises here*—the validity of the Arbitration Agreement.  2018 WL 2437241, at *7-8.  If Avient had any basis to challenge validity in response to Westlake's Section 4 claim to enforce the Arbitration Agreement, then Avient should have raised its claim in the 2017 Lawsuit.  As this Court stated in the *January*

*2019 Opinion*, "if [Avient] wished to object to this arbitration agreement, it should have done so a decade ago."  2019 WL 238018, at *3; *PolyOne*, 937 F.43d at 699.  Under Kentucky law, "the plea of *res judicata* applies not only to the points upon which the court was required by the parties to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time."  *Newman v. Newman*, 451 S.W.2d 417, 419 (Ky. 1970).  *See also Hashemian v. Louisville Reg'l Airport Auth.*, 493 S.W.3d 843, 846 (Ky. App. 2016) ("*Res judicata* bars not only those claims previously raised, but those which could have been raised in the prior action.").

Clearly, in response to Westlake's claim to enforce the Arbitration Agreement under Section 4 of the FAA, Avient "could, and should, have obtained a final judgment" that the Arbitration Agreement was invalid, "but chose not to do so."  *Heartland Materials, Inc. v. Warren Paving, Inc.*, 2021 WL 5168352, at *7 (W.D. Ky. Nov. 3, 2021) (Russell, J.).  Avient itself asserted that a necessary element to resolving Westlake's motion to compel arbitration was for this Court to determine that a valid Arbitration Agreement existed.  *May 2018 Op.*, 2018 WL 2437241, at *7 n.2; *Great Earth*, 288 F.3d at 889.  Avient even amended its complaint to add a new claim but again did not add a claim challenging the Arbitration Agreement's validity.  *See* 2017 Lawsuit, DN 23.  Thus, because Avient could have, and should have, raised in the 2017 Lawsuit its claim that the Arbitration Agreement is not valid, claim preclusion applies to the *May 2018 Opinion* and bars Avient from re-litigating the validity of the Arbitration Agreement.  *See Seventeenth St. Assocs. v. Cole*, 855 F. Supp. 2d 606, 612-14 (S.D. W.Va. 2012) (claim preclusion applied in second proceeding involving motion to compel arbitration preventing party from challenging validity of arbitration agreement where court determined that same arbitration agreement was valid in prior proceeding to compel arbitration).

**D.      Avient's Validity Challenge Is Barred By Issue Preclusion.**

Kentucky courts generally use a five-part test for issue preclusion:

(1) at least one party to be bound in the second case must have been a party in the first case; (2) the issue in the second case must be the same as the issue in the first case; (3) the issue must have been actually litigated; (4) the issue was actually decided in that action; and (5) the decision on the issue in the prior action must have been necessary to the court's judgment and adverse to the party to be bound.

*Heartland Materials, Inc. v. Warren Paving, Inc.*, 819 F. App'x 323, 327 (6th Cir. 2020) (citing

*Miller v. Admin. Off. of Courts*, 361 S.W.3d 867, 872 (Ky. 2011). A key inquiry under Kentucky's

elements is whether the party to be precluded had "a full and fair opportunity to litigate" the issue.

*Sedley v. City of W. Buechel*, 461 S.W.2d 556, 558-59 (Ky. 1970); *Moore v. Cabinet for Human*

*Res.*, 954 S.W.2d 317, 319 (Ky. 1997). The *May 2018 Opinion* satisfies the Kentucky elements.

First, both Avient and Westlake were parties to the 2017 Lawsuit and this case. Second,

this action and the 2017 Lawsuit address the identical issue—the validity of the Arbitration

Agreement. Avient cannot legitimately assert that the Arbitration Agreement's validity was not

an issue in the 2017 Lawsuit. In *Merial, Inc. v. Sergeant's Pet Care Products, Inc.*, the Sixth

Circuit explained that, in assessing whether the issues addressed in two proceedings are identical,

"the best argument begins with how the [first] court itself" described the issue. 806 F. App'x 398,

406 (6th Cir. 2020). The Sixth Circuit then closely analyzed the first court's decision and held

that "because the [first] court mentions so explicitly in at least one part of its ruling the [issue], we

hold that the [first] court *did* speak to the precise issue before us." *Id.* at 409. Here, as required

by Section 4 of the FAA, the *May 2018 Opinion* specifically addressed whether "a valid agreement

to arbitrate exists between the parties." 2018 WL 2437241, at *8. Finding that "neither party

disputes that the 2007 Agreement containing the arbitration clause was valid," this Court accepted

Avient's and Westlake's position that a valid agreement existed and enforced it. *Id.*

Next, in the 2017 Lawsuit, Avient had a full and fair opportunity to litigate the validity of the Arbitration Agreement, and that issue was actually litigated and decided.  "When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated within the meaning of this Section."  Restatement (Second) of Judgments § 27 cmt. d (1982) ("Issue Preclusion, General Rule").  *Accord* 46 Am. Jur. 2d Judgments § 473.  Here, in response to Avient's 2017 Lawsuit, Westlake moved to enforce the Arbitration Agreement under Section 4 of the FAA, and the parties specifically addressed, as required, whether the Arbitration Agreement was valid.  *See supra* at 6-8.  Both parties agreed the Arbitration Agreement was valid, and this Court confirmed the Agreement's validity. *May 2018 Op.*, 2018 WL 2437241, *8.  Thus, validity was expressly raised and at issue in litigation over the enforceability of the Arbitration Agreement because it was a mandatory element the parties were required to address.  Avient had a full and fair opportunity to litigate that issue.  Indeed, under Kentucky law, issue preclusion applies to issues that are specifically addressed in litigation by agreement and reflected in a court judgment as well as default judgments.[13]

As to the fourth and fifth elements, as this Court observed, Section 4 of the FAA *required* the Court to address the Arbitration Agreement's validity to decide Westlake's claim, and Avient itself even argued that determining validity was necessary to the Court's decision.  *May 2018 Opinion* at *7-8 & n.2.  The test for necessity "is whether the previous court could have issued the

---

[13]    *See, e.g.*, *Moore*, 954 S.W.2d at 319-20 (issue preclusion applied to prior divorce decree addressing paternity by settlement thereby precluding re-litigation of paternity issue); *See Bullitt Fire Prot. Dist. v. City of Shepherdsville*, 2015 WL 510935, at *4 (Ky. App. 2015) (issue of City's annexation of property that was resolved by agreement and reflected in court judgment was "actually litigated" and subject to issue preclusion under Kentucky law; *Columbia Gas Transmission, LLC v. Raven Co.*, 2014 WL 2711943, at *5 (E.D. Ky June 13, 2014) ("[T]he Secretary's ensuing Final Order is most fairly characterized as a default judgment. And as such, that Order counts as 'actual litigation' under Kentucky's doctrine of issue preclusion.") (citing *Davis v. Tuggle's Adm'r.*, 178 S.W.2d 979, 981 (Ky. 1944)).

ruling it did, had it not made the determination which is now at the heart of the collateral estoppel dispute.  Put another way, the focus is on the court ruling, not the parties' briefs, in the prior case." *Merial*, 806 F. App'x at 409, 413 (quotations omitted); *Moore*, 954 S.W.2d at 319 (paternity issue necessary to divorce decree).  Here, as both parties agreed, this Court could not have granted Westlake's motion to compel arbitration without finding that the Arbitration Agreement was valid. *May 2018 Opinion* at *7-8 & n.2; *see also* 9 U.S.C. § 4; *Great Earth*, 288 F.3d at 889.  Clearly, that finding of validity was necessary to, and actually decided in, the *May 2018 Opinion*.  Finally, that decision was unquestionably adverse to Avient.  Thus, issue preclusion applies here and Avient is precluded from further challenging the Arbitration Agreement's validity.

**E.      Avient Has Waived Or Is Estopped From Enforcing Section 6, Or Section 6 Must Be Severed From The 2007 Settlement Agreement.**

Both this Court and the Sixth Circuit strongly suggested, without deciding, that Section 6 is invalid under *Hall Street*.  *July 2018 Op.*, 2018 WL 3625742, at *2; *PolyOne Corp.*, 937 F.3d at 701.  However, assuming Section 6 is invalid, that fact does not invalidate the *Arbitration Agreement*.  Instead, Avient has permanently waived, or is estopped from enforcing, the contract terms in Section 6, nor may Avient claim Section 6 is material.  Alternatively, this Court may sever Section 6 because that provision is not entwined with, and material to, the Arbitration Agreement.

**1.      Avient waived or is estopped from asserting contract rights under Section 6.**

In *Hall Street*, the Supreme Court made clear that Sections 10 and 11 of the FAA are the exclusive grounds for judicial review of an arbitral award.  *Hall Street*, 552 U.S. at 578.  Despite being fully aware of that holding since 2008, Avient not only failed to challenge the validity of the Arbitration Agreement, but it also initiated, and engaged in, the arbitration process over Allocable Costs for more than ten years.  By engaging in the arbitration process over Allocable Costs for more than ten years after *Hall Street* held that Sections 10 and 11 of the FAA are exclusive, Avient

waived all contract rights to a judicial proceeding under Section 6. More specifically, this Court and the Sixth Circuit have already concluded that Avient waived its validity challenge by not raising validity after *Hall Street*, and this Court even enforced the Arbitration Agreement against Avient. It logically follows from these holdings that Avient's conduct must also result in a waiver of any rights under Section 6. Engaging in the arbitration process for over ten years knowing that settled law established an exclusive process for judicial review of any arbitral award clearly evidences Avient's intent to relinquish its contractual rights under Section 6. *PolyOne Corp.*, 937 F.3d at 701 ("[Avient] has waived its challenge to the judicial relief provision . . . ."). Further, as discussed above, *see supra* at 16, Westlake has detrimentally relied on Avient's conduct since 2007. Thus, Avient should also be estopped from claiming that Section 6 precludes enforcement of the Arbitration Agreement. *See McCarthy v. Louisville Cartage Co.*, 796 S.W.2d 10, 12 (Ky. App. 1990); *Stamper*, 260 S.W.2d at 943; *see also* 13 Williston on Contracts § 39.14 (contracting party may be estopped from asserted contract right if there is detrimental reliance by counterparty). Accordingly, this Court need not perform a further severability analysis because Avient has permanently waived and is estopped from asserting any rights under Section 6. *McElroy*, 73 F.3d at 724; *Stamper*, 260 S.W.2d at 943; *McCarthy*, 796 S.W.2d at 12.

### 2. Applicable law, the contract, and Avient's performance require Section 6 to be severed from the 2007 Settlement Agreement.

The parties *agree* that Section 6 may be severed from the 2007 Settlement Agreement. *See* Complaint ¶ 27. But Avient claims that Section 6 is material to the *Arbitration Agreement* and cannot be severed from it, thereby invalidating the Arbitration Agreement. *Id.* Avient is wrong. The Arbitration Agreement is valid, Section 6 is not material to it, and Section 6 may be severed.

Kentucky law is clear that an offending contract term may be severed if doing so does not destroy the general purpose of the contract.[14]   Similarly, the Sixth Circuit instructs that an arbitration agreement must be examined to determine the parties' intent to arbitrate and whether an invalid provision can be severed because it is not so intertwined that it cannot be removed from the other provisions.[15]   Thus, if a court is not called upon to "unravel 'a highly integrated' complex of interlocking illegal provisions," and instead may remove a separate and discrete section of the arbitration agreement, then severance is proper.  *Booker v. Robert Half Int'l*, 413 F.3d 77, 84-85 (D.C. Cir. 2005).  Courts regularly sever terms purporting to expand review of arbitral awards because such terms are not material to the arbitration agreement.[16]

Here, the detailed Arbitration Agreement plainly shows the parties intended to arbitrate their ongoing disputes over Allocable Costs in a streamlined manner.  *E.g.*, **Ex. 3** at 10-12.  (Avient

---

[14]   *See Farmers' Bank of White Plains v. Bass*, 292 S.W. 489, 490 (Ky. 1927); *Louisville & Jefferson Cnty Metro. Sewer Dist. v. T+C Constr., Inc.*, 570 S.W.3d 551, 559 (Ky. 2018) (where one contract provision "is illegal and vicious, the general rule which prevails is that, if the illegal covenant of the contract can be eliminated from it without impairing its symmetry as a whole, the courts will adopt that view and eliminate the obnoxious feature and enforce the remainder of the contract").

[15]   *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 674-75 (6th Cir. 2003) (severing invalid remedy-limiting provisions under severance clause); *McMullen v. Meijer, Inc.*, 166 F. App'x 164, 168-69 (6th Cir. 2006) (severing invalid arbitrator selection clause even in absence of severance provision).

[16]   *See Kyocera Corp. v. Prudential-Bache Trade Servs.*, 341 F.3d 987, 1001-02 (9th Cir. 2003) (severing provision on expanded judicial review); *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 937 (10th Cir. 2001) (holding that expanded review of arbitrator's award violated FAA, declining to enforce provision, and affirming confirmation under FAA.); *Riniker v. UnitedHealth Grp., Inc.*, 2015 WL 1782566, at *7-8  (D. Minn. Apr. 20, 2015) (severing provision for expanded judicial review); *Chung v. StudentCity.com, Inc.*, 2011 WL 4074297, at *2 (D. Mass. Sept. 9, 2011) ("[P]laintiffs cite no authority that supports the proposition that this more expansive review is so essential to the arbitration clause, that, in its absence, the clause itself becomes null."); *HL 1 LLC v. Riverwalk, LLC*, 15 A.3d 725, 737 (Me. 2011) ("[T]he judicial review provision is not central to the purpose of the arbitration agreement, and it can be severed without reforming the contract.").

touting "[e]arly, cost-effective resolution of allocation issues was and remains the goal of this arbitration"). As evidence of that intent, the parties engaged in two complete arbitrations over Allocable Costs. The parties' course of performance, including as recently as April 2020 (**Ex. 15**), is replete with Avient's acknowledgments that any disputes over allocation of Allocable Costs "***must***" be arbitrated. *See supra* at 5-6, 12-13. In the *May 2018 Opinion*, this Court enforced the Arbitration Agreement and ordered Avient to arbitrate. The parties arbitrated for more than a decade despite the infirmity of Section 6, proving Section 6's immateriality. Where, as here, the intent to arbitrate is clear, an invalid provision should be severed and the arbitration agreement preserved. *See Morrison*, 317 F.3d at 674-75; *McMullen*, 166 F. App'x at 168-69.

It is equally clear that Section 6 is not entwined with the Arbitration Agreement and, thus, severing Section 6 will not destroy the purpose of the Arbitration Agreement. *Farmers' Bank*, 292 S.W. at 490; *Booker*, 413 F.3d at 83-86. This Court has already recognized that the arbitration provisions in Section 4, and the judicial proceeding provision in Section 6, are separate provisions, and that the right to arbitration in Section 4 is not conditioned on the availability of a Section 6 judicial proceeding. *Jan. 2019 Op.*, 2019 WL 238018, at *4.[17] Thus, severing Section 6 simply removes a separate provision from the 2007 Settlement Agreement, while preserving the Arbitration Agreement in Sections 4, 5 and Exhibit C. Attached as **Exhibit 16** is a copy of the 2007 Settlement Agreement highlighting the text to be removed if Section 6 is severed. Other than Section 6 itself, roughly 120 words would be removed from the 2007 Settlement Agreement, all

---

[17]    As this Court noted, in *Potawatomi*, arbitration was explicitly "subject to" the right to judicial "review" of any arbitration award. *Jan. 2019 Op.*, 2019 WL 238018, at *4. Here, the Arbitration Agreement is separate from Section 6 and not conditioned on availability of a judicial determination under Section 6. *Id.* None of the various cross-references to Section 6 on which Avient relies (*see* Complaint ¶ 25) makes the right to arbitration in any way conditioned on the availability of a Section 6 judicial proceeding. Like *Potawatomi*, the parties *could* have made arbitration conditioned on the right to a judicial proceeding under Section 6. They did not.

of which simply cross-reference Section 6 and are not entwined with the Arbitration Agreement itself.[18]   Section 6 and the references to it simply drop out, leaving a complete Arbitration Agreement containing the terms the parties followed in the 2010 and 2017 Arbitrations—a result no different from the cases cited above, *see supra* n.16, where courts severed provisions violating *Hall Street* but left the remainder of the arbitration agreement intact.

Severing Section 6 is further compelled by inclusion of Section 14, the severance clause. DN 6 § 14 at 12.  The Sixth Circuit explains that a severance clause creates a strong presumption to sever an invalid provision instead of invalidating an arbitration agreement.  *See Morrison*, 317 F.3d at 674-75; *McMullen*, 166 F. App'x at 168-69.  Even Avient, in its briefing before the Sixth Circuit, agreed that the plain language of Section 14 "on its face, would seem to preclude an argument that the arbitration agreement is invalid as a whole . . . ."  *See* Avient Opening Brief, *PolyOne Corp.*, 937 F.3d 692, DN 23 at 35 (**Ex. 17**).

Finally, Avient's course of performance proves the parties' intent to arbitrate despite any issue with Section 6 and definitively refutes any notion that Section 6 is material to the Arbitration Agreement.  In addition, Avient's performance, as well as the fact that Avient is legally precluded from even challenging the Arbitration Agreement (*see supra* at 13-25), operates as a waiver and estoppel as to Avient's claim that Section 6 is material to the Arbitration Agreement.  Avient has

---

[18]    For example, Section 4.5(c), in part, simply sets out a measure for determining fee shifting in the event a party pursues a Section 6 judicial proceeding; removing the minimal reference to Section 6 in Section 4.5(c) has zero bearing on the arbitration provisions.  Section 5, including subparts 5.1-5.3, simply addresses timing issues applicable to Sections 4 and 6; again, removing the very minimal references to Section 6 has no impact whatsoever on the arbitration provisions.  Section 10.2 provides that discovery from the parties' 2003-2007 litigation in this Court can be used in arbitration or a judicial proceeding.  Section 11.2 selects this Court as the jurisdiction for actions arising under the Agreement, with merely four words relating to Section 6.  Finally, Section 15 is a garden-variety modification clause, which references Section 6.  None of these references to Section 6 makes arbitration in any way subject to Section 6, and they could easily be severed with no impact whatsoever, let alone material impact, on the Arbitration Agreement.

known since 2008 that it could ***not*** pursue a Section 6 judicial proceeding because, per *Hall Street*, Sections 10 and 11 of the FAA are the exclusive process for judicial review. *PolyOne*, 937 F.3d at 699; *Jan. 2019 Op.*, 2019 WL 238018, at *3. Yet for ten years Avient ignored the infirmity of Section 6, and instead aggressively confirmed the validity of the Arbitration Agreement. *See supra* at 4-8. Clearly, Avient was unconcerned about Section 6's infirmity or whether Section 6 would be available after an arbitration. Indeed, in stark contrast to the Arbitration Agreement, Section 6 has never once been utilized in its 15-year existence. Avient's performance for more than a decade proves that Section 6 is immaterial to the Arbitration Agreement and can be severed.

Even after the 2019 Final Award held Avient liable for 100% of the Allocable Costs at issue, Avient did not pursue a Section 6 judicial proceeding, but instead moved to vacate the Final Award under the FAA as provided in JAMS Rule 25. Avient also told the Sixth Circuit in 2019 that it *could* have filed a Section 6 proceeding, stating that it had two "[a]vailable avenues to challenge the [Final] [A]ward"—an action under the FAA or a judicial proceeding under Section 6. *See* DN 27 at 8 (**Ex. 18**). Yet Avient chose not to use Section 6. Even as recently as April 2020, Avient told Westlake that it "must" arbitrate its claim for Allocable Costs. *See* **Ex. 15**. In sum, Avient's performance before, during and after the 2017 Arbitration definitively proves that Section 6 is not material to the Arbitration Agreement and is a discrete term that can be severed from the 2007 Settlement Agreement. Also, Avient's course of performance operates as a waiver and estoppel from now claiming that Section 6 is material. This Court should sever Section 6, leaving in place the arbitration process followed since 2007. *McCarthy*, 796 S.W.2d at 12.

## IV.   CONCLUSION

For the foregoing reasons, Westlake requests that the Court grant Westlake's motion for summary judgment that the Arbitration Agreement is valid and compel Avient to arbitrate in the Pending Arbitration.

October 7, 2022                          Respectfully submitted,


                                          _/s/ Adam T. Goebel_____
David A. Super *(admitted pro hac)*       Adam T. Goebel
Britt Cass Steckman *(admitted pro hac)*  Angela S. Fetcher
Margaret B. Beasley *(admitted pro hac)*  Adam C. Reeves
Bracewell LLP                             Stoll Keenon Ogden PLLC
2001 M Street, N.W.                       500 West Jefferson Street
Washington, D.C. 20036                    Suite 2000
(202) 828-5800                            Louisville, KY 40202
david.super@bracewell.com                 (502) 333-6000
britt.steckman@bracewell.com              adam.goebel@skofirm.com
margaret.beasley@bracewell.com            angela.fetcher@skofirm.com
                                          adam.reeves@skofirm.com

                                          ***Counsel for Defendant Westlake Vinyls, Inc.***