UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | | |
|---|---|---|
| AVIENT CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:22-CV-051-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| WESTLAKE VINYLS, INC., | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the renewed cross-motions for summary judgment filed by Defendant Westlake Vinyls, Inc. ("Westlake") and Plaintiff Avient Corporation ("Avient"). [R. 74; R. 77].[1] Both motions have been fully briefed and are ripe for review. [R. 80; R. 81; R. 82; R. 83]. For the reasons set forth below, the Court will grant Westlake's motion and will deny Avient's motion.

## I.  BACKGROUND[2]

### A.  The 2007 Settlement Agreement

In 1951, the Goodrich Corporation ("Goodrich") purchased a plot of land in Calvert City, Kentucky, and thereafter built a facility to manufacture chemicals ("the Site"). [R. 1, pp. 1, 4]. Goodrich ultimately sold the property to Westlake via two separate transactions—one in 1990 and the other in 1997. *Id.* at 1, 5. As part of those transactions, Westlake agreed to indemnify

---

[1] When citing to these motions and the briefing, the Court cites to the page number at the bottom of the filing, not to the page number assigned by the Court's electronic docketing system.

[2] The Court's August 18, 2022 Memorandum Opinion and Order, [R. 38], provides a thorough overview of the factual and procedural background of this case, and much of that background information was repeated in the Court's September 30, 2023 Order. [R. 58]. Westlake does not dispute that factual summary. [R. 74, p. 1]. The Court repeats much of that background information herein.

Goodrich for environmental costs attributable to Westlake's activities at the Site, and Goodrich likewise agreed to indemnify Westlake for any environmental costs attributable to Goodrich's activities on the property. *Id.* Avient (formerly known as PolyOne Corporation) ultimately became Goodrich's successor-in-interest under the 1990 and 1997 agreements. *Id.*; *see also PolyOne Corp. v. Westlake Vinyls, Inc. ("PolyOne May 2018 Opinion")*, No. 5:17-cv-157-TBR, 2018 WL 2437241 (W.D. Ky. May 30, 2018) (describing process by which Avient came to assume Goodrich's indemnification obligations). As a result, Avient assumed Goodrich's indemnification obligations. *See, e.g.*, [R. 1, pp. 1, 5].

Over the next several years, the parties engaged in litigation over the allocation of the environmental costs ("Allocable Costs") of the Site. *Id.*; *see also Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F.Supp.2d 918 (W.D. Ky. 2007). Goodrich, Avient, and Westlake ultimately entered into a settlement agreement in 2007 (the "2007 Settlement Agreement" or "Settlement Agreement"). [R. 1, pp. 1, 5]; *see also* [R. 6 (2007 Settlement Agreement)]. Under that agreement, the parties agreed to the method by which the environmental costs would be allocated in the future. [R. 1, p. 1]; *see also* [R. 6, § 3]. The agreement also provides that Avient and Westlake will arbitrate to resolve disputes over the amount and allocation of those Allocable Costs. [R. 1, p. 2]; *see also* [R. 6, § 4]. More specifically, it allows either party to dispute the allocation of costs by filing a notice of arbitration. [R. 6, § 4.1]. The parties may do so only once every five years. *Id.*

Section 6 of the Settlement Agreement also provides that any arbitration award "shall not be final and binding on the Parties until ninety (90) days after issuance of the award." *Id.* at § 6.1. During that ninety-day period, either party can "file a complaint . . . seeking a de novo judicial determination" of the amount and allocation of the environmental costs. *Id.* § 6.3. The

agreement explains that the filing of the complaint "shall render the arbitrators' award null and void." *Id.* § 6.1. The agreement also prohibits the parties from introducing the arbitration award into evidence at any judicial proceeding. *Id.* § 10.3. Thus, "[a]s far as the federal court is concerned, it is as though the arbitration never happened." *PolyOne Corp. v. Westlake Vinyls, Inc.*, 937 F.3d 692, 694 (6th Cir. 2019). While it appears that neither party has ever invoked this judicial determination provision, *see* [R. 74, p. 1], it is the central provision at issue in Avient's current complaint. *See* [R. 1].

Also of relevance to the issues raised in that complaint is the Settlement Agreement's severability provision. That provision, Section 14 of the agreement, provides that

> [i]n the event that any provision of this Agreement shall be finally determined to be unenforceable, such provision shall, so long as the economic and legal substance of the transactions contemplated hereby is not affected in any materially adverse manner as to any Party, be deemed severed from this Agreement and every other provision of this Agreement shall remain in full force and effect.

[R. 6 § 14].

### B.  The 2010 Arbitration Proceeding

In 2010, Avient initiated the first arbitration proceeding under the agreement. *See* [R. 10-3]. In that proceeding, Avient argued that Westlake was responsible for various environmental investigation and remediation costs. *Id.* The matter was eventually voluntarily dismissed with prejudice in 2015. *See* [R. 10, p. 7].

### C.  The 2017 Arbitration Proceeding and the 2017 and 2018 Lawsuits

Roughly two years later, in May 2017, Avient (then PolyOne) filed an arbitration demand again seeking to allocate certain environmental costs. [R. 1, p. 2]; *PolyOne May 2018 Opinion*, 2018 WL 2437241, at *4. In September 2017, Westlake filed a cross-notice of arbitration,

seeking reimbursement for certain excavation and disposal costs and certain waste characterization costs. *PolyOne May 2018 Opinion*, 2018 WL 2437241, at *6.

On October 6, 2017, with that arbitration proceeding still pending, Avient filed a complaint in this Court, essentially asking the Court to determine whether "construction costs" (such as the excavation, disposal, and waste characterization costs) qualified as "Allocable Costs" under the 2007 agreement. *Id.* Westlake then filed a Motion to Dismiss, arguing that the matter should be ordered to arbitration. The Court agreed and found that Avient's claims were subject to arbitration, and the 2017 lawsuit was dismissed on May 30, 2018. *Id.* at *11.

Meanwhile, on February 6, 2018, the Tenth Circuit held that an agreement to arbitrate is invalid and unenforceable when it contains a provision authorizing de novo judicial review of an arbitration award and that provision is material to the arbitration agreement. *See Citizen Potawatomi Nation v. Oklahoma*, 881 F.3d 1226 (10th Cir. 2018). Relying on this Tenth Circuit decision, Avient filed a new lawsuit on July 10, 2018 and asked this Court to declare the parties' agreement to arbitrate unenforceable and to enjoin the arbitration that it had previously requested. [DN 1, p. 2]; *see also PolyOne Corp. v. Westlake Vinyls, Inc. (*"*PolyOne Jan. 2019 Opinion*"*)*, No. 5:18-cv-107-TBR, 2019 WL 238018 (W.D. Ky. Jan. 16, 2019).[3]

In that complaint, Avient acknowledged the Supreme Court's pre-*Potawatomi* decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). *See PolyOne Corp. v. Westlake Vinyls, Inc.*, 2019 WL 238018, at R. 1, pp. 1–2. In *Hall*, decided in 2008, the Supreme Court held that an arbitration clause that allows for immediate de novo review of an arbitration award conflicts with the Federal Arbitration Act ("FAA"), which only allows for limited judicial

---

[3] Avient had also sought a preliminary injunction or temporary restraining order, but the Court, acknowledging the waiver issue, declined to grant that motion. *See PolyOne Corporation v. Westlake Vinyls, Inc. ("PolyOne July 2018 Opinion")*, No. 5:18-CV-107-TBR, 2018 WL 3625742 (W.D. Ky. July 30, 2018).

review (e.g., where the award was procured by corruption, fraud, or undue means). *Hall*, 552 U.S. at 584. Thus, provisions allowing for such de novo review are invalid and unenforceable. *Id.* The *Hall* Court did not address whether such invalid provisions were severable from the overall agreement to arbitrate, however. No court had addressed that precise issue until *Potawatomi*, in which the Tenth Circuit found that the invalid judicial-review provision in that case was material to the arbitration agreement and could not be severed. *See PolyOne*, 937 F.3d at 699 ("PolyOne is correct that before *Potawatomi*, no court had considered the effect of an invalid judicial-review provision on the broad agreement to arbitrate."); *Potawatomi*, 881 F.3d at 1239–40. Thus, Avient argued, *Potawatomi* extended the *Hall* ruling, thereby allowing Avient to seek a declaration that the judicial-review provision in this case is not only invalid, but material, rendering the entire arbitration agreement unenforceable. *See PolyOne Corp.*, 2019 WL 238018, at R. 1, pp. 1–2.

In response, Westlake filed a Motion to Dismiss, arguing, among other things, waiver. *PolyOne Jan. 2019 Opinion*, 2019 WL 238018, at *3 (summarizing the parties' arguments). The Court granted the Motion to Dismiss, finding that Avient had waived any right to challenge the validity of the arbitration provisions by invoking those provisions and initiating the 2017 arbitration proceeding at issue in that case. [R. 1, p. 2]; *see also PolyOne Jan. 2019 Opinion*, 2019 WL 238018, at * 11. The Court also noted that the *Potawatomi* court had simply applied well-establish rules of contract interpretation; it was "not a revolutionary change in the law." *Id.* The applicable "change in the law" occurred in 2008 with *Hall*, the Court explained. *Id.* Thus, if Avient wished to challenge the validity of the arbitration agreement, it should have done so then, nearly a decade earlier. *Id.* at *3.

- 5 -

Avient appealed that decision. The Sixth Circuit affirmed, holding that, "by demanding the 2017 arbitration that led to this litigation, PolyOne [now, Avient] has waived its ability to obtain declaratory and injunctive relief—at least for that arbitration." *PolyOne Corp.*, 937 F.3d 692 at 694. However, the Sixth Circuit "[withheld] judgment on whether PolyOne has waived its ability to challenge the Agreement's arbitration provisions for all time." *Id.* In other words, the Sixth Circuit did not address whether Avient could challenge the arbitration agreement if Westlake filed a demand for arbitration in the future.

### D.  The 2019 Arbitration Award

On May 22, 2019, the arbitration panel issued its final award, assigning the full amount of Allocable Costs to Avient. *See PolyOne Corp. v. Westlake Vinyls, Inc. ("PolyOne Feb. 2020 Opinion")*, No. 5:19-cv-121-TBR, 2020 WL 695657, *1 (W.D. Ky. Feb. 11, 2020). Avient thereafter moved this Court to vacate that award (based on arguments not relevant here), and Westlake asked the Court to affirm the award. *Id.* On February 11, 2020, the Court issued an opinion affirming the arbitration panel's final award. *Id.*

### E.  The 2022 Arbitration Proceeding and the Present Lawsuit

On March 23, 2022, Westlake filed an arbitration demand, seeking to allocate certain environmental costs different than those at issue in the 2017 arbitration proceeding. [R. 1, p. 3; R. 42-2, ¶ 3 (Pujari Affidavit)]. On April 15, 2022, Avient filed its Complaint for Declaratory and Injunctive Relief in this Court. [R. 1]. Avient seeks a declaration that (1) the specific arbitration provision contained within the 2007 Settlement Agreement, which allows for de novo judicial determinations of an arbitration ruling, is invalid; (2) that judicial-relief provision is material to and not severable from the parties' overall agreement to arbitrate; (3) the overall agreement to arbitrate contained within the 2007 Settlement Agreement is invalid as a result; and

- 6 -

(4) the overall agreement to arbitrate contained within the 2007 Settlement Agreement is severable from the other portions of that settlement agreement. *Id.* at 3, 15–16. Avient also asks the Court to enjoin the arbitration proceeding initiated by Westlake on March 23, 2022. *Id.* at 4, 16–17. On the same day that it filed its complaint in this Court, Avient sought a stay in the arbitration proceedings, pending resolution of this lawsuit. [R. 42-2, ¶ 4].

On April 21, 2022, Westlake filed its first Motion to Dismiss, arguing that the Court lacked authority to consider the validity of the arbitration agreement. [R. 10]. The Court ultimately denied the motion, finding that the clear terms of the agreement did not allow an arbitrator to decide issues of validity. [R. 38]; *see also Avient Corp. v. Westlake Vinyls, Inc.*, 5:22-CV-51-TBR, 2022 WL 3569019 (W.D. Ky. Aug. 18, 2022). The Court therefore denied the Motion to Dismiss, finding that "the issues raised by Avient's complaint in this case are not subject to arbitration." *See, e.g.,* [R. 38, p. 14].

Meanwhile, on April 25, 2022, Avient filed an "Objection, Preservation of Rights to Challenge Arbitration Proceeding, and Response to Westlake's Demand" in the arbitration proceeding. [R. 42-2, ¶ 3]. Based on these objections, Avient's earlier request for a stay of the arbitration proceedings was granted. *Id.* ¶ 4.

The parties eventually filed cross-motions for summary judgment. [R. 42; R. 43]. On September 30, 2023, the Court denied both motions without prejudice and, in doing so, flagged several issues for the parties. [R. 58]. The Court allowed the parties time to refile motions for summary judgment specifically addressing those issues, including whether a party could permanently waive the right to challenge the validity of a contractual provision and other issues related to preclusion and estoppel. *Id.* at 26–27.

The parties have now filed their renewed cross-motions for summary judgment. [R. 74; R. 77]. Both motions have been fully briefed and are ripe for review. [R. 80; R. 81; R. 82; R. 83]. For the reasons set forth below, the Court will grant Westlake's motion and will deny Avient's motion.

## II.  LEGAL STANDARD

In filing this lawsuit, Avient invoked this Court's diversity jurisdiction. *See* [R. 1, p. 4]. As a result, this Court applies the substantive law of the forum state, Kentucky. *See Rawe v. Liberty Mut. Fire. Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006) (citation omitted). However, federal procedural law will govern as applicable, including in establishing the appropriate summary judgment standard. *See Weaver v. Caldwell Tanks, Inc.*, 190 F. App'x 404, 408 (6th Cir. 2006) (citation omitted).

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment if it first finds that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Winkler v. Madison County*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson*, 477 U.S. at 256. Once the moving party satisfies this burden, the non-moving party thereafter must produce "specific facts, supported by the evidence

in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citation omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

## III. ANALYSIS

### A. Avient's Request for a Hearing

The caption of Avient's motion and its supporting memorandum includes the language "HEARING REQUESTED," [R. 77, R. 77-1], as does the caption of Avient's reply brief, [R. 82]. As the only basis for this request, Avient explains in a footnote that it "requests that the Court hold a hearing on the parties' cross-motions for summary judgment given the importance of the issues in this case, including those on which the Court sought further briefing in its prior summary-judgment order." [R. 77-1, p. 2 n.1]. The Court has thoroughly reviewed the record in this case, including the parties' extensive briefing on the pending cross-motions for summary judgment, and does not believe that oral argument is necessary to resolve these motions. Accordingly, to the extent Avient seeks a hearing on the pending motions, the Court will deny that request.

### B. Waiver[4]

---

[4] Much of the Court's discussion on waiver is taken from the Court's earlier discussion of this issue in its September 30, 2023 Order. *See* [R. 58, pp. 10–26].

Westlake first argues that Avient permanently waived its challenge to the validity of the arbitration agreement. [R. 74-1, pp. 4–8]. For support, Westlake cites to Avient's conduct prior to the Sixth Circuit's waiver decision, including Avient's repeated initiation of arbitration proceedings and its filing of the 2017 lawsuit, and its fifteen-year record of performing under the arbitration agreement's terms (i.e., paying Allocable Costs subject to its agreement to arbitrate any disputes over the allocation of specific costs). *Id.* at 7–8. Westlake also points to Avient's conduct *after* the Sixth Circuit's decision, like Avient's failure to challenge the validity of the arbitration provision in the years following that decision and its insistence in a 2020 letter that the allocution of certain costs must be resolved through arbitration. *Id.* at 8; *see also* [R. 43-17 (April 2020 Letter)]; [R. 74-9 (2021, 2022, and 2023 Letters referring to April 2020 Letter)]. In response, Avient argues that permanent waiver is not supported by the law, and moreover, it has not waived its right to challenge the validity of the 2022 arbitration. [R. 81, pp. 7–9].

### 1. *Hall Street* and *Potawatomi*

When considering whether Avient has waived its right to challenge the validity of the arbitration agreement—either in response to the pending arbitration or to any future arbitration proceedings—the Court finds it helpful to first examine two decisions at the heart of this dispute: *Hall Street* and *Potawatomi*. The Court discussed these cases in detail in its September 30, 2023 Order, [R. 58, pp. 10–13], and finds it helpful to repeat that discussion here. The Court therefore turns to *Hall Street* and *Potawatomi*.

In *Hall Street*, the parties agreed to arbitrate an indemnification claim. *Hall Street*, 552 U.S. at 579. One provision of their arbitration agreement provided that the district court could enter judgment confirming, vacating, modifying, or correcting the arbitrator's award if it found that the arbitrator's factual findings were not supported by substantial evidence or the arbitrator's

legal conclusions were erroneous. *Id.* Pursuant to that provision, the plaintiff eventually sought review of the arbitration award in the district court, which then vacated the arbitrator's decision for legal error. *Id.* at 580. The Ninth Circuit reversed, however, finding that "the terms of the arbitration agreement controlling the mode of judicial review are unenforceable and severable." *Id.* at 581. The Supreme Court, acknowledging a circuit split on this issue, granted certiorari to decide whether the FAA's grounds for vacating and modifying an arbitration award are exclusive. *Id.* The Supreme Court ultimately held that §§ 10[5] and 11[6] of the FAA provide the exclusive (and narrow) grounds for when a court may vacate or modify an arbitration award. *Id.* at 584. Because the FAA does not allow for vacatur or modification based on erroneous legal conclusions, the judicial-review provision of the parties' arbitration agreement was unenforceable.

The Supreme Court "left unanswered, however, whether the entire arbitration agreement is unenforceable if the agreement contains an invalid provision expanding the scope of judicial

---

[5] Section 10 allows a district court to vacate an arbitration award in the following circumstances:

    (1) where the award was procured by corruption, fraud, or undue means;
    (2) where there was evident partiality or corruption in the arbitrators, or either of them;
    (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
    (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

[6] Section 11 allows a district court to modify or correct an arbitration award in the following circumstances:

    (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
    (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
    (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

review." *PolyOne*, 937 F.3d at 697.[7] For roughly a decade, no court considered this precise question. *See PolyOne*, 937 F.3d at 699 ("PolyOne is correct that before *Potawatomi*, no court had considered the effect of an invalid judicial-review provision on the broad agreement to arbitrate."). Then, in 2018, the Tenth Circuit found in *Potawatomi* that the invalid judicial-review provision in that case was material to the arbitration agreement and could not be severed. *Potawatomi*, 881 F.3d at 1240–41.

In that case, the Citizen Potawatomi Nation entered into a gaming compact with the state of Oklahoma in 2004, four years before the Supreme Court's decision in *Hall Street*. *Id.* at 1228. The compact contained an arbitration agreement that allowed the parties to refer compact disputes to arbitration, "subject to enforcement or pursuant to review as provided by paragraph 3 of this [provision] by a federal district court." *Id.* at 1229. Paragraph 3, in turn, allowed either party to "bring an action against the other in a federal district court for the de novo review of any arbitration award." *Id.* Several years after entering into this agreement (and after the ruling in *Hall Street*), the parties proceeded to arbitration over a compact dispute. *Id.* at 1232–33. The arbitrator entered an award in favor of the Citizen Potawatomi Nation, which then asked a district court to enforce the award. *Id.* at 1234. Oklahoma asked the district court to vacate the award, insisting that it was entitled to de novo review pursuant to the arbitration agreement. *Id.* at 1235. The district court disagreed, finding Oklahoma's request for de novo review to be foreclosed by the *Hall Street* ruling. *Id.* But the district court did not discuss Oklahoma's argument that the entire arbitration provision of the compact was rendered unenforceable by *Hall Street*. *Id.*

---

[7] As noted by the Supreme Court in *Hall Street*, the parties did not seek certiorari on the lower court's severability analysis, so that issue was not before the Court. *Hall Street*, 552 U.S. at 587 n.6.

The Tenth Circuit took up that question. First, the Court found that, under *Hall Street*, the judicial-review provision was invalid. *Id.* at 1236–38. Next, the Court considered whether that invalid provision was severable from the remainder of the compact. *Id.* In doing so, the Court turned to federal contract principles and, as a result, to the plain and unambiguous terms of the compact. *Id.* at 1239. Included among these terms was a severability provision, which in turn required "a materiality analysis to determine whether the parties would have agreed to engage in binding arbitration if they had known de novo review of an arbitration award was unavailable." *Id.* at 1240. The Court ultimately concluded that the compact "ma[de] clear that the parties' agreement to engage in binding arbitration was specifically conditioned on, and inextricably linked to, the availability of de novo review in district court." *Id.* at 1239–40. The Tenth Circuit therefore held that it could not sever the judicial-review provision without materially altering the overall agreement to arbitrate. *Id.* at 1240–41. The arbitration agreement was therefore invalid. *Id.*

### 2. *PolyOne Jan. 2019 Opinion* and 2019 Sixth Circuit Decision

Both this Court and the Sixth Circuit thoroughly considered the impact of *Hall Street* and *Potawatomi* in the 2018 lawsuit and specifically in the context of Westlake's waiver argument. Accordingly, the Court finds it helpful to next consider this Court's waiver analysis in the *PolyOne January 2019 Opinion* and the Sixth Circuit's decision affirming that ruling.[8]

This Court's January 2019 opinion was issued in response to Westlake's Motion to Dismiss PolyOne's complaint, in which PolyOne—relying on *Potawatomi*—sought to enjoin an arbitration proceeding. *PolyOne Jan. 2019 Opinion*, 2019 WL 238018, at *1. More specifically,

---

[8] Despite the obvious relevance of these cases, Avient argues that they "are not relevant to waiver." [R. 77, p. 27]. But those cases go directly to whether Avient knew of its right to challenge the judicial-relief provision and the overall arbitration agreement.

PolyOne sought to enjoin an arbitration proceeding that it had previously demanded on May 19, 2017. *Id.* In its Motion to Dismiss, Westlake argued, among other things, "that PolyOne waived any right to challenge the validity of the arbitration clause by consistently showing its intent to arbitrate through 'twice initiating arbitration against Westlake' and filing 'the October 2017 Lawsuit regarding arbitrability.'" *Id.* at *3 (quoting Westlake's Motion to Dismiss)].

This Court agreed, explaining its reasoning as follows:

> By initiating two different arbitrations and a lawsuit against Westlake, PolyOne abandoned the right to now claim that the arbitration clause was invalid all along. If PolyOne wished to object to the validity of the arbitration clause, it could have done so in 2008—a year after the agreement was formed—under the binding authority of the Supreme Court in *Hall Street*. Instead, both parties continued to pour time and resources of their own and of this Court into arbitration and litigation. Now, PolyOne wishes to object to the validity of the arbitration provision, not due to its negligence or ignorance of *Hall Street*, but because of a recent decision by a non-binding authority on this Court. Quite simply, if PolyOne wished to object to this arbitration agreement, it should have done so a decade ago.

*PolyOne Jan. 2019 Opinion*, 2019 WL 238018, at *3.

The Court went on to address PolyOne's argument that *Potawatomi* made "new law" in holding that the invalid judicial-review provision was material to and therefore not severable from the overall arbitration agreement in that case. *Id.* The Court first noted that "the Tenth Circuit's holding is not binding on this Court," and regardless, "in performing its severability analysis in *Potawatomi*, the Tenth Circuit cited to traditional contract interpretation" and was therefore "not a revolutionary change in the law." *Id.* Moreover, the Court suggested that *Potawatomi* is not as directly on point as PolyOne suggested because the arbitration provision in the Settlement Agreement here differs from that in *Potawatomi* in that it "does not condition arbitration on the availability of de novo review in court." *Id.* at *4.

The Court also acknowledged case law from other circuits, cited by PolyOne, in which courts declined to find waiver where there was some "change[] in applicable law due to a

recently decided opinion *by the Supreme Court.*" *Id.* (citations omitted) (emphasis in original). "True," the Court stated, "a change in the law did occur here due to the Supreme Court's holding in *Hall Street Associates*; however, PolyOne claims that it was the recent finding of the Tenth Circuit that brought a change in the law, not the Supreme Court's opinion that was decided ten years ago." *Id.* But clearly it was *Hall Street*, not *Potawatomi*, that triggered PolyOne's validity challenge, and it therefore would not have been premature to raise that issue prior to the *Potawatomi* decision. *Id.* (referencing its July 2018 opinion denying PolyOne's request for a temporary restraining order); *see also PolyOne July 2018 Opinion*, 2018 WL 3625742 (denying request for temporary restraining order). Accordingly, the Court granted Westlake's Motion to Dismiss. *Id.* at *5.

The Sixth Circuit affirmed. The Court first summarized its decision as follows: "On the merits, PolyOne has a strong case.[9]  But PolyOne's prior conduct does not align with its present position. Twice, PolyOne demanded arbitration to determine which costs are allocable. Indeed, PolyOne seeks to enjoin the very arbitration it demanded in 2017." 937 F.3d at 694.

Next, the Sixth Circuit acknowledged that it has not yet "held whether a party waives its ability to challenge an arbitration agreement when it demands arbitration," but it agreed with other courts that "have said as much." *Id.* (discussing *Nghiem v. NEC Elec. Inc.*, 25 F.3d 1437 (9th Cir. 1994) and *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Loc. No. 1*, 611 F.2d 580 (5th Cir. 1980)). The Court also noted that, in other cases, "courts have found waiver where a party consents to the

---

[9] In its motion, Avient insists that the Sixth Circuit opined that PolyOne (now Avient) had a "strong case," both on its arguments relating to the invalidity of the judicial-relief provision and its arguments relating to materiality and severability. [R. 77-1, p. 10, n.4]. The Court disagrees. *See PolyOne*, 937 F.3d at 697 ("PolyOne has a strong argument that the judicial-relief provision violates *Hall Street* by expanding the grounds for vacating an arbitration award."). In the end, however, it makes no difference. For the reasons explained herein, Avient is barred from raising such arguments by the doctrines of claim preclusion and judicial estoppel.

arbitration and only later challenges the arbitrator's authority over the dispute." 937 F.3d at 698 (citing *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003); *Env't Barrier Co. v. Slurry Sys., Inc.*, 540 F.3d 598, 607 (7th Cir. 2008); *Jones Dairy Farm v. Loc. No. P-1236, United Food & Com. Workers Intern. Union*, 760 F.2d 173, 175 (7th Cir. 1985)).

In other cases, however, parties have been permitted to challenge the validity of an arbitration agreement after being ordered by a court to participate in such arbitration. *Id.* (citing *Wiepking v. Prudential-Bache Sec.*, 940 F.2d 996, 999 (6th Cir. 1991)). Unlike the parties in those cases, "PolyOne, by contrast, not only consented to but *initiated* the arbitration that gave rise to this dispute—and waited to challenge the Agreement's arbitration provisions until after the arbitration was in motion." *Id.* As a result, "PolyOne 'missed the chance to come back later, before a court, and deny that [a valid] agreement to arbitrate existed.'" *Id.* (quoting *Env't Barrier Co. v. Slurry Sys., Inc.*, 540 F.3d 598, 607 (7th Cir. 2008)).

The Sixth Circuit next considered PolyOne's argument that it could not have known of its right to challenge the validity of the agreement until after *Potawatomi*. *Id.* at 698–99. On this point, the Sixth Circuit acknowledged that "[c]hanges in the law can excuse what might otherwise constitute a waiver." *Id.* at 699. However, unlike in other cases, "there was no negative authority . . . preventing PolyOne from obtaining declaratory relief when it chose instead to demand arbitration in 2010 and 2017." *Id.* (distinguishing the case from *Ackerberg v. Johnson*, 892 F.2d 1328 (8th Cir. 1989)). Instead,

> [a]s soon as the Supreme Court issued *Hall Street* in 2008, PolyOne could have requested a declaratory judgment that the [Settlement] Agreement's judicial-relief provision was invalid. And PolyOne could have argued—as it does now—that striking the judicial-relief provision but keeping intact the other arbitration provisions would materially alter the legal substance of the [Settlement] Agreement, leaving the court no choice but to strike all of the [Settlement] Agreement's arbitration provisions.

*Id.* Any attempt to request such declaratory relief would not have been futile, as evidenced by the fact that the State of Oklahoma successfully requested such relief in *Potawatomi*, without the benefit of any persuasive authority on point. *Id.* at 699–700. The Sixth Circuit again emphasized that

> [a]fter the Supreme Court issued *Hall Street*, all PolyOne had to do was ask a court to apply ordinary contract interpretation principles and perform a materiality analysis, which is what the *Potawatomi* court did. In that sense, *Potawatomi* did not break new ground. To be sure, having authority like *Potawatomi* to cite could have made PolyOne's argument more persuasive, but nothing prevented PolyOne from making its case.

*Id.* at 700.

The Court also addressed PolyOne's argument that a waiver finding would conflict with the outcome in *Potawatomi*. *Id.* True, in *Potawatomi*, the parties completed arbitration before the State of Oklahoma sought to challenge the judicial-review provision. *Id.* But, unlike PolyOne, the State of Oklahoma was not the party that demanded the arbitration in the first place. *Id.* (citing *Potawatomi*, 881 F.3d at 1230–31). Further, there had been no waiver argument made in that case and thus, the Tenth Circuit never addressed waiver. *Id.*

Lastly, the Sixth Circuit considered whether it should nevertheless address the merits of PolyOne's case, despite its waiver finding, due to exceptional circumstances or to avoid "a plain miscarriage of justice." *Id.* (quoting *In re Morris*, 260 F.3d 654, 664 (6th Cir. 2001). The Court declined to do so because, among other reasons, "there is no risk of a 'miscarriage of justice' by declining to address PolyOne's substantive arguments because again, PolyOne demanded the arbitration it now seeks to challenge." *Id.* And further, even though the judicial-review provision might well be invalid, the Settlement Agreement did not "involve activity so egregious" that the waiver must be overlooked and the merits addressed. *Id.* at 701.

Accordingly, the Sixth Circuit concluded that "PolyOne has waived its challenge to the judicial-relief provision, at least for the arbitration that began in 2017." *Id.* at 701. However, it "[withheld] judgment on whether PolyOne's prior conduct precludes it from ever challenging the Agreement's arbitration provisions in the future." *Id.*

### 3.  Avient's Waiver in This Case

Having reviewed the prior decisions finding waiver of the 2017 arbitration, the Court now considers whether Avient has waived its right to challenge the 2022 arbitration at issue in this case. However, before considering this question, the Court must address Avient's argument that the Court is limited to considering only its actions in relation to the present case, or in other words, its actions in relation to the 2022 arbitration. *See, e.g.*, [R. 81, p. 7 (arguing that Westlake "must show that Avient's conduct *in this case* establishes a waiver of its challenge," and "Avient's pre-2019 litigation conduct has no bearing on whether Avient waived its challenge in this case")]. But Avient cites no law or authority on point to support its position. Instead, it seems to rely on its position that a waiver in one case cannot result in a waiver in future cases, i.e., permanent waiver.  *See, e.g.*, *id.*; [R. 77, p. 17 ("Avient respectfully submits that considering conduct prior to *PolyOne* would conflict with the unbroken case law discussed above that rejects the notion of permanent waiver by holding that a waiver in (or as to) one case does not carry over to a different case.")]. But this argument misstates the question presently before the Court.

As will be made clear below, the Court is not determining whether Avient's earlier conduct alone resulted in a permanent waiver that prevents it from challenging the 2022 arbitration proceeding. Nor is the Court considering whether Avient's earlier actions, in addition to its actions in this case, result in a permanent waiver. Instead, the Court is considering whether Avient's actions, both prior to and after the initiation of the 2022 arbitration proceeding,

- 18 -

constitutes a waiver of its right to challenge *the 2022 arbitration proceeding*. As explained

below, the Court finds that Avient has waived that right. However, the Court need not address

whether that waiver, in turn, is a permanent bar to challenging the judicial-relief provision

because other doctrines bar Avient from doing so. *See infra* Sections III(C), (D).

Having clarified the precise question before it, the Court also notes that it is unable to

identify any caselaw or rule limiting the Court's review of this question to only the actions

arising after the initiation of the 2022 arbitration. Given the lack of any caselaw or authority

stating otherwise, the Court finds that it can properly consider Avient's actions both before and

after the initiation of the 2022 arbitration proceeding in considering whether Avient waived its

right to challenge that arbitration. *See generally Gunn v. NPC Intern., Inc.*, 625 F. App'x 261,

266–67 (6th Cir. 2015) (considering a similar argument in a consolidated appeal, but finding no

error with the district court's decision to consider the defendant's conduct across five cases,

rather than assessing his waiver in relation to each individual plaintiff). The Court now turns to

the question of whether Avient waived its right to challenge the 2022 arbitration proceeding.

As the Sixth Circuit previously explained, "waiver is 'the intentional relinquishment or

abandonment of a known right.'" *PolyOne*, 937 F.3d at 697 (quoting *United States v. Olano*, 507

U.S. 725, 733 (1993)); *see also Morgan v. Sundance, Inc.*, 596 U.S. 411, 417–18 (2022)

(explaining that this same test applies in cases involving the potential waiver of arbitration, and

there are no special "arbitration-preferring procedural rules"). It has similarly been described as

the intentional relinquishment or abandonment "of a specific opportunity or course of action."

*Stevens-Bratton v. TruGreen, Inc.*, No. 2:15-CV-2472, 2020 WL 3086571, at *4 (W.D. Tenn.

June 10, 2020) (citing *PolyOne*, 937 F.3d at 697). To waive a right (or an opportunity or course

of action), one must have "knowledge of the right and intent to waive that right," as shown

"either by action or omission." *CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 587

(6th Cir. 2015) (quoting *Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 n.6 (6th Cir.

2006)) (internal quotation marks omitted). Further, "[t]o establish waiver, there must be a clear,

unequivocal, and decisive act of a party showing such a purpose to relinquish." *Stevens-Bratton*,

2020 WL 3086571, at \*4 (citations omitted); *see also Schwebeke v. United Wholesale Mortg.*

*LLC*, 96 F.4th 971, 974–75 (6th Cir. 2024) (noting that, while prejudice is not required, a party's

actions must be "completely inconsistent" with reliance on an arbitration agreement in order to

find waiver). To be clear, however, waiver can be established through "either the actual intent to

relinquish an opportunity or course of action *or* conduct that would warrant such an inference."

*Stevens-Bratton*, 2020 WL 3086571, at \*4 (citing *O'Sullivan Corp. v. Duro-Last, Inc.*, 7 F.App'x

509, 516 (6th Cir. 2001) (emphasis added)).

On the issue of whether Avient's conduct warrants an inference of waiver in this case, the

Court is informed in part by its January 2019 opinion and the Sixth Circuit's 2019 opinion. In

those cases, both courts relied, at least in part, on the fact that Avient (then PolyOne) initiated the

arbitration that it then sought to avoid. *See, e.g.*, *PolyOne*, 937 F.3d at 697–98. But as detailed

above, both this Court and the Sixth Circuit considered that fact, as well as other considerations

(like Avient's post-*Hall Street* initiation of multiple arbitration proceedings and its active

participation in the 2017 arbitration) when finding waiver. *See, e.g.*, *id.* at 698–99; *PolyOne Jan.*

*2019 Opinion*, 2019 WL 238018, at \*3. And nowhere in the Sixth Circuit's 2019 decision does

that Court state that waiver may be found *only* where the party seeking to challenge the

arbitration provision was the party that initiated the underlying arbitration proceeding. Thus,

while it certainly may be sufficient to find that the party seeking to avoid arbitration is the party

that initiated (or actively participated) in the arbitration, that is not necessarily the only factor the Court should consider.

As noted above, "waiver is 'the intentional relinquishment or abandonment of a known right.'" *PolyOne*, 937 F.3d at 697 (quoting *Olano*, 507 U.S. at 733); *see also Morgan*, 596 U.S. at 417. Thus, the Court considers (1) whether the ability to challenge the arbitration provision (and consequently, the 2022 arbitration proceeding) was "known" to Avient and (2) whether it expressed an intent to abandon its right to challenge the arbitration agreement (at least for purposes of the 2022 arbitration proceeding) through "conduct that would warrant such an inference." *Stevens-Bratton*, 2020 WL 3086571, at *4 (citing *O'Sullivan Corp.*, 7 F.App'x at 516); *see also Schwebeke*, 96 F.4th at 974–75.

### a.  Known Right

On the "knowledge" question, Avient previously argued that it could not have known of its right to challenge the arbitration proceeding until *Potawatomi*. *See, e.g.*, [R. 49, p. 6]. The Court squarely addressed Avient's position in its September 30, 2023 Order, noting that the Court and the Sixth Circuit had already disposed of that argument. [R. 58, pp. 20–21]. Indeed, the Sixth Circuit made clear in 2019 that "[a]s soon as the Supreme Court issued *Hall Street* in 2008, PolyOne could have requested a declaratory judgment that the [Settlement Agreement's] judicial-relief provision was invalid." *PolyOne*, 937 F.3d at 699. As to whether PolyOne could have also sought to invalidate the entire arbitration agreement, the Sixth Circuit explained that, "[a]fter the Supreme Court issued *Hall Street*, all PolyOne had to do was ask a court to apply ordinary contract principles and perform a materiality analysis." *PolyOne*, 937 F.3d at 700. Having considered the Sixth Circuit decision on this point, this Court explained that, "[i]n ruling that Avient waived its right to challenge the judicial-relief provision (and the arbitration

agreement) in *PolyOne*, the Sixth Circuit necessarily found that this was a 'known right,' as required to find waiver." [R. 58, p. 20].

The Court also explained that, whatever basis Avient may have previously had for arguing that it lacked knowledge of its ability to challenge the arbitration provision, it cannot argue that it continues to lack such knowledge. After the Sixth Circuit's 2019 decision, there can be no question that Avient's ability to challenge the judicial-relief provision and the overall arbitration agreement was triggered in 2008 by *Hall Street*. To the extent that Avient previously claimed ignorance of that right, it cannot and does not do so now.

Indeed, Avient appears to no longer challenge the "knowledge" element of waiver. The Court therefore restates the Sixth Circuit's ruling that Avient knew or should have known of its rights to challenge the arbitration provision when the Supreme Court issued *Hall Street* in 2008. The Court further reiterates its own prior ruling that, as of September 2019, when the Sixth Circuit issued its decision in *PolyOne*, Avient knew of its ability to immediately bring a declaratory judgment action to challenge the judicial-relief provision and seek its severance from the overall arbitration agreement.[10] *See* [R. 58, pp. 20–21]. The Court therefore finds the existence of a known right.

### b.  Intentional Abandonment

This leaves the question of whether Avient's conduct warrants an inference that it intentionally abandoned that known right. On this point, the Court finds that Avient's conduct can best be divided into two categories. First, Avient's conduct after *Hall Street* and prior to the Sixth Circuit's 2019 ruling. During that time, Avient initiated two separate arbitration proceedings (in 2010 and 2017). *See* [R. 10-3]; *PolyOne May 2018 Opinion*, 2018 WL 2437241,

---

[10] To the extent that Avient challenges its ability to bring a declaratory judgment action after the Sixth Circuit's September 2019 ruling, *see* [R. 77, pp. 18–19], the Court addresses that argument below.

at *4. Then, with the 2017 arbitration pending, Avient also initiated a lawsuit in this Court, seeking to determine whether certain costs qualified as Allocable Costs under the 2007 Settlement Agreement. *PolyOne May 2018 Opinion*, 2018 WL 2437241, at *6. The Court ultimately found that the issue was subject to arbitration and dismissed the lawsuit. *Id.* at *11. In doing so, the Court acknowledged that it was required to first determine whether a valid arbitration agreement existed between the parties before then considering the scope of that agreement. *Id.* at *8. This threshold issue was easy to resolve "[a]s neither party dispute[d] that the 2007 Agreement containing the arbitration clause was valid." *Id.* In fact, in its filings in that lawsuit, Avient represented that "[u]nder the terms of the 2007 Agreement, the parties agreed to resolve liability for certain environmental costs arising on or before July 31, 2007, and *PolyOne and Westlake agreed to arbitrate the allocation of certain specified environmental costs*, defined as 'Allocable Costs,' arising after July 31, 2007." *PolyOne Corp. v. Westlake Vinyls, Inc.*, No. 5:17-cv-157-TBR, ECF No. 27, p. 5.

On May 30, 2018, the same day that this Court dismissed the 2017 lawsuit, the arbitration panel ruled against Avient on a motion for summary disposition and granted Westlake's motion for summary disposition, essentially ruling that Westlake was entitled to recover certain costs. [R. 45-5 (Preliminary Order No. 16)]. Then, on July 6, 2018, the arbitration panel again ruled in favor of Westlake on another motion for summary disposition. [R. 45-6 (Preliminary Order No. 20)]. Days later, on July 10, 2018, Avient filed suit in this Court, this time seeking to invalidate the entire arbitration agreement based on the Tenth Circuit's February 2018 decision in *Potawatomi*. With that lawsuit pending, Avient apparently sought to stay the arbitration proceeding. *See* [R. 45-7 (July 21, 2018 Arbitration Hearing Transcript Excerpt)]. The arbitration panel expressed concerns regarding Avient's motives for filing the 2018 federal court action:

> [O]ne of the things I'm struggling with—you know, *Hall Street* is an old case and
> you guys are really good lawyers, and I find it very difficult to believe that a case
> so on point escaped your notice. . . . [B]ut one thing that occurs to me is that you
> guys did know about *Hall Street*, and instead of *Potawatomi*, it should have been
> PolyOne who brought that challenge to the arbitrability provision in your settlement
> agreement, you know, five, six, seven, eight, nine years ago. But you didn't do
> it. . . . Now things are changing and orders are being issued by this panel, and
> maybe—I don't think *Potawatomi* . . . really does a whole lot that *Hall Street*
> doesn't do. . . . And why are we just getting this now, after so much water has gone
> under this bridge? And I'm not just talking about dribs of water, I'm talking about
> eight years of water and two separate arbitrations instituted under that clause by
> [Avient], that's now telling us the clause is no good.

*Id.* at 9:22–11:05. This Court holds similar concerns about Avient's course of conduct in the

years following *Hall Street*.

Next, the Court looks to Avient's conduct *after* the Sixth Circuit's ruling, issued on

September 6, 2019. As already noted, the issuance of that 2019 decision resolved any doubts as

to whether Avient knew it could plausibly challenge the judicial-relief provision and the overall

arbitration provision, and when it should have done so—i.e., immediately after the 2008 *Hall

Street* decision. And the Sixth Circuit even made clear that it was not addressing whether Avient

had "waived its ability to challenge those provisions for all time," suggesting that that issue

could be left "to another court." *PolyOne*, 937 F.3d at 702. Nevertheless, Avient did not bring a

declaratory action seeking to invalidate the judicial-relief provision or the arbitration agreement

until it filed its complaint in this case in April 2022, nearly three years after the Sixth Circuit teed

up the issue. [R. 1]. In fact, there is no evidence of record that Avient raised any challenges (in

this Court or informally to Westlake) to the judicial-relief provision or the overall arbitration

agreement at any point in the almost three-year period between the *PolyOne* decision and this

lawsuit. And it appears that the only reason Avient now seeks to challenge those provisions—

nearly fifteen years after the *Hall Street* decision and almost three years after *PolyOne*—is

because Westlake demanded arbitration.

- 24 -

Nevertheless, Avient argues that it could not possibly have brought a declaratory judgment action after the *PolyOne* decision and it instead had to wait for Westlake to initiate arbitration.[11] [R. 77-1, pp. 18–19]. More specifically, Avient argues that it did not have standing to assert its claims until Westlake initiated arbitration. *Id.* at 19. Citing two out-of-circuit cases, Avient argues that

> courts of appeals have held that parties lack standing to challenge an arbitration agreement's validity through a declaratory-judgment claim where "there has been no attempt to enforce the agreement against them, and they have not established that there is a substantial likelihood that it will be enforced against them in the future."

*Id.* (citing *Bowen v. First Fam. Fin. Servs., Inc.*, 233 F.3d 1331, 1334 (11th Cir. 2000); *Jones v. Sears Roebuck & Co.*, 301 F.App'x 276, 282 (4th Cir. 2008)). But Avient fails to explain how those cases, in which the arbitration provisions at issue had never been invoked, control in the current case, which involves a years-long history of arbitration between the parties. Moreover, the Sixth Circuit stated in *PolyOne* that, "[a]s soon as the Supreme Court issued *Hall Street* in 2008, PolyOne [now Avient] could have requested a declaratory judgment that the Agreement's judicial-relief provision was invalid." PolyOne, 937 F.3d at 699. The Court therefore finds Avient's arguments on standing to be undeveloped and, more importantly, without merit.

The Court next considers the circumstances leading to Westlake's demand for arbitration in 2022. On March 27, 2020, Westlake apparently issued an indemnity demand letter to Avient. *See* [R. 43-17 (April 2020 Letter)]. Westlake specifically sought indemnification for "DAF Unit costs," which appear to be associated with "the DAF Unit's construction and operation" costs.

---

[11] Avient also briefly argues that the failure to bring a "preemptive declaratory-judgment action after *PolyOne* cannot constitute a waiver," and would instead be considered a forfeiture, which is something Westlake has not expressly argued. [R. 77-1, p. 18]. But the Court is only considering Avient's failure to bring a post-*PolyOne* declaratory judgment action to determine whether Avient's actions, when viewed together, demonstrate an intentional abandonment of a known right.

*Id.* Westlake had claimed these costs were necessary to "remove Goodrich's historical mercury contamination." *Id.* As such, Westlake insisted that Avient was required to pay these costs under the terms of the 2007 Settlement Agreement and "the confirmed Final Award," presumably referring to the May 2019 arbitration award. *Id.* In an April 27, 2020 response letter, Avient disagreed that the DAF Unit costs were "Allocable Costs" to which Westlake was entitled to indemnification. *Id.* It further argued, "To the extent Westlake disputes PolyOne's position that the DAF Unit costs are not Allocable Costs, *that dispute must be resolved by an arbitration panel under the 2007 Settlement Agreement*," citing to this Court's May 2018 opinion. *Id.* (emphasis added). In various communications between April 2020 and September 2023, Avient continued to cite back to its April 27, 2020 letter. [R. 74-9 (Sept. 1, 2021, Nov. 4, 2021, and Feb. 2, 2022 email exchanges)].

Westlake cited to the April 2020 letter during the last round of summary judgment motions, and it now raises that issue again. *See* [R. 43-1, pp. 12–13, 16]; [R. 74-1, p. 8]. At no point has Avient disputed the contents of the letter or its prior insistence that these issues be arbitrated. Instead, Avient now argues that the letter "simply reflected the reality that the Sixth Circuit in *PolyOne* had declined to invalidate the arbitration agreement, and thus the agreement was still in force." [R. 77, p. 20]; *see also* [R. 81, pp. 8–9]. But if anything, the Sixth Circuit's *PolyOne* decision should have indicated to Avient the need to, at the very least, object to arbitration of those issues, rather than insist on it. Avient did no such thing and instead stated that the issues "must be resolved by an arbitration panel." [R. 43-17 (April 2020 Letter)].

The letter is highly relevant to the issue of waiver, and specifically, to whether Avient's conduct warrants an inference that it intentionally abandoned its right to challenge the validity of the arbitration provision in this lawsuit. The letter, when viewed in conjunction with Avient's

other actions, indicates that Avient did, in fact, abandon that known right, instead opting to push the issue to arbitration. Though it may have now changed course, Avient's prior insistence that these matters be resolved by arbitration is telling. *Cf. In re DePuy Orthopaedics, Inc. ASR Hip Implant Products Liability Litigation*, 838 F. App'x 922, 927 (6th Cir. 2020) (noting that the district court found no waiver of the right to challenge the validity of an agreement to arbitrate a fee dispute "because the record was 'replete with [the party's] assertions that the [multidistrict litigation] is the proper forum for resolution of any fee dispute'" (quoting *Drake v. DePuy Orthopaedics, Inc.*, No. 1:13-dp-20140, 2017 WL 6502489, *8 (N.D. Ohio Dec. 19, 2017))).

While Avient insists that it quickly objected once Westlake initiated the 2022 arbitration, the Court cannot ignore the fact that Avient first insisted that the parties' arbitrable cost issues be resolved in arbitration. Indeed, the clear and unambiguous language in Avient's April 2020 letter leaves no room for doubt; it clearly states Avient's position that the costs at issue "*must be resolved by an arbitration panel*." [R. 43-17 (emphasis added)]. It took this position after lengthy litigation in which it had argued that the judicial-relief provision and the arbitration provision were invalid. And it did so only seven months after the Sixth Circuit issued its decision in *PolyOne* on September 6, 2019, in which that Court clearly explained why Avient's previous insistence upon arbitration resulted in a waiver and why Avient could have and should have challenged the judicial-relief provision much sooner. *See generally PolyOne*, 937 F.3d at 697–700. Thus, the April 2020 letter was more than a mere negotiation tactic or pre-litigation posturing; it was a clear statement of Avient's intent to abandon its previous position and proceed to arbitration on those issues. *Cf. Borror Prop. Mgmt., LLC v. Oro Karric North, LLC*, 979 F.3d 491, 495–96 (6th Cir. 2020) (finding that prelitigation letter was not "completely inconsistent with the right to later demand arbitration"); *JPD, Inc. v. Chronimed Holdings, Inc.*,

539 F.3d 388, 394 (6th Cir. 2008) (finding that prelitigation letter was ambiguous and not "completely inconsistent" with the party's later reliance on an arbitration agreement); *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 574 (6th Cir. 2003) (prelitigation letter declining to engage in arbitration or alternative dispute resolution "at [that] point" was not waiver of arbitration).

Rather than explain its earlier insistence on arbitration, Avient focuses only on its behavior since Westlake's 2022 arbitration demand, noting that it "promptly objected to that arbitration" and thus, it has done nothing in connection with this arbitration that constitutes waiver. [R. 56, p. 14]. True, Avient objected to the present arbitration proceeding, and promptly sought to stay that proceeding pending resolution of this case. Avient also filed an objection in the arbitration proceeding, seeking to preserve its rights to challenge the arbitration. [R. 42-2, ¶ 3]. This distinguishes the current case from others in which parties who participated heavily in arbitration without raising any complaints were deemed to have "acquiesced to the arbitrator's authority." *Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 485 F. App'x 821, 823 (6th Cir. 2012) (citations omitted). If all it took to avoid waiver was a mere objection to the arbitration proceeding at issue, without any consideration of past behavior, Avient's case would be much stronger. But Avient cites no authority to that end.

In sum, the Court has looked at Avient's conduct, not only prior to the 2019 decisions by this Court and the Sixth Circuit, but in the nearly three years following those decisions. The Court finds that such conduct warrants an inference that Avient abandoned its right to challenge the judicial-relief provision and the arbitration agreement with respect to Westlake's 2022 arbitration demand. Specifically, the Court notes Avient's delay in seeking declaratory relief, despite ample warning by this Court and the Sixth Circuit in 2019 that such relief could be

sought (and in fact could have been sought as early as 2008). The Court is also mindful of Avient's 2020 correspondence with Westlake in which Avient insisted on arbitration of the very issues that Westlake now seeks to arbitrate. *See* [R. 15, p. 1]. Avient now asks this Court to enjoin that very arbitration. *See* [R. 1].

As explained, the Court's waiver analysis is also informed by Avient's course of conduct post-*Hall Street* and pre-*PolyOne*. During that decade, Avient invoked multiple arbitration proceedings and engaged in litigation, all while representing that the arbitration provisions were valid. Then in May and July 2018, Avient received two adverse rulings in arbitration. [R. 45-5 (Preliminary Order No. 16)]; [R. 45-6 (Preliminary Order No. 20). Only when the tides of the 2017 arbitration proceeding began to turn against Avient did Avient seek to invalidate the arbitration provision and avoid arbitration altogether, and even this action by Avient was slow moving. Given this past behavior, and Avient's insistence on arbitration in 2020, the Court views Avient's current challenges to the arbitration agreement with a suspicious eye.

In sum, the Court finds that Avient abandoned its right to challenge the judicial-relief provision and the arbitration agreement with respect to Westlake's 2022 arbitration demand. However, the Court must still consider whether Avient is barred from challenging the arbitration agreement again in the future.  Westlake argues that Avient is so barred, either due to permanent waiver, or through the doctrines of judicial estoppel, claim preclusion, and issue preclusion.[12]

---

[12] While Westlake also mentions equitable estoppel, it does so in the sections of its brief addressing judicial estoppel. [R. 74-1, pp. 13–17]. It appears that Westlake may be using the terms equitable estoppel and judicial estoppel interchangeably. Westlake has not addressed the elements of equitable estoppel, and the Court therefore considers that argument waived.  *See Brown v. Astrue*, No. 09-387-HRW, 2010 WL 4878866, *3 (E.D. Ky. Nov. 24, 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

The Court turns first to the doctrines of judicial estoppel and claim preclusion (res judicata) and, finding that they apply, declines to consider the remaining arguments.

### C.  Judicial Estoppel

The doctrine of judicial estoppel[13] "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Brandenburg Tel. Co. v. Sprint. Comms. Co., L.P.*, 658 F. Supp. 3d 427, 462 (W.D. Ky. 2023) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)) (internal quotation marks omitted). The purpose of the doctrine is "to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Id.* (quoting *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002)) (internal quotation marks omitted).

"Because the doctrine's purpose is to prevent 'improper use of judicial machinery,' it is considered 'an equitable doctrine invoked by a court at its discretion.'" *Id.* at 463 (quoting *New Hampshire*, 532 U.S. at 750). Thus, as this Court has previously explained, "it is a flexible doctrine." *Id.* (citing *Shufeldt v. Baker, Donelson, Bearman, Caldwell & Berkowitz, PC*, 855 F. App'x 239, 245 (6th Cir. 2021)). And the Supreme Court has explained, "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Id.* (quoting *New Hampshire*, 532 U.S. at 750) (internal citation marks omitted).

Nevertheless, the Court has identified several factors for district courts to consider when applying the doctrine:

---

[13] Unlike collateral estoppel and res judicata, this doctrine is governed by federal standards. *See Shufeldt v. Baker, Donelson, Bearman, Caldwell & Berkowitz, PC*, 855 F. App'x 239, 243 n.6 (6th Cir. 2021) (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 n.4 (6th Cir. 1982)); *Watkins v. Bailey*, 484 F. App'x 18, 20 n.1 (6th Cir. 2012).

(1) whether "a party's later position [is] clearly inconsistent with its earlier position;" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Id.* (quoting *Shufeldt*, 855 F. App'x at 243). District courts may also be informed by "additional considerations . . . in specific factual contexts." *Id.* (quoting *New Hampshire*, 532 U.S. at 751) (internal quotation marks omitted). In evaluating these various factors and considerations, this Court has explained that

"judicial estoppel is a flexible doctrine that is designed to consider all of the circumstances in evaluating whether the [party's] inconsistent statements justify estopping the [party] from pursuing [its] claims." *Thompson v. Davidson Transit Organization*, 725 F. Supp. 2d 701, 710 (M.D. Tenn. 2010). Ultimately, however, the doctrine of judicial estoppel "should be 'applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement.'" *New Hampshire*, 532 U.S. at 751 (quoting [*Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir. 1990)]).

*Brandenburg*, 658 F. Supp. 3d at 463.

The Court will now address each of the three factors outlined above, as well as "additional considerations" arising from the specific facts of this case.

### 1. Inconsistent Positions

As noted above, in determining whether judicial estoppel applies, the Court should consider whether Avient's current position is "clearly inconsistent" with its earlier position.[14] *Id.*; *see also Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 572, 757 (6th Cir. 2008)

---

[14] To the extent that the inconsistent statement must be made under oath, the Sixth Circuit has explained that "the 'under oath' requirement is met when a party previously asserted an inconsistent position in a written filing and argued the motion on the merits before the court." *Shufeldt*, 855 F. App'x at 245 (citation omitted). In the present case, statements at issue were made in written filings with this Court, such as Avient's response to Westlake's motion to dismiss, which was then decided by the Court. *See, e.g.*, *PolyOne Corp. v. Westlake Vinyls, Inc.*, No. 5:17-cv-157-TBR, ECF No. 27, p. 5. The "under oath" requirement has therefore been satisfied.

(explaining a party's later position must be "'clearly inconsistent with its earlier position'" (quoting *New Hampshire*, 532 U.S. at 750)). The Court previously ordered the parties to address this issue, specifically asking "whether Avient's failure to dispute the validity of the arbitration clause in the 2017 lawsuit can qualify as an inconsistent statement."[15] [R. 58, p. 27]. In response, Westlake points to certain statements made in Avient's briefing in the 2017 lawsuit, in which it argues "Avient affirmatively asserted the existence of a valid agreement to arbitrate." [R. 74-1, p. 13. For example, Westlake cites to Avient's response to Westlake's motion to dismiss, in which Avient represented that "[u]nder the terms of the 2007 Agreement, the parties agreed to resolve liability for certain environmental costs arising on or before July 31, 2007, and *PolyOne and Westlake agreed to arbitrate the allocation of certain specified environmental costs*, defined as 'Allocable Costs,' arising after July 31, 2007." *PolyOne Corp. v. Westlake Vinyls, Inc.*, No. 5:17-cv-157-TBR, ECF No. 27, p. 5. Avient made this argument when insisting that the issues it raised in its complaint were not covered by the arbitration agreement and could therefore be decided by the Court. *See id.*

Avient argues that, in making these statements, it was merely acknowledging the agreement's *existence*, not its *validity*. [R. 81, pp. 17–18]. But Avient also acknowledges that its prior statements "at most *assumed the arbitration agreement was valid*." *Id.* at 18 (emphasis added). Nevertheless, Avient insists, its prior statements "were not an 'unequivocal assertion' that [the agreement] was valid," and as a result, those statements were not "clearly inconsistent" with its current challenge to the arbitration agreement. *Id.* Instead, Avient argues, its prior

---

[15] Avient's inconsistent position might be described as legal, not factual. "There is a split among circuits as to whether the doctrine can apply to such switched legal positions." *Brandenburg*, 658 F. Supp. 3d at 466. The Sixth Circuit has not directly addressed this issue, but "case law from this circuit suggests that the doctrine *can* apply to shifting legal arguments (or at least, questions of law applied to fact)." *Id.* (discussing various cases). Neither party raises this issue.

argument in the 2017 litigation was a "narrower argument" than it makes in this case, because there it was arguing that the arbitration agreement "did not apply to *some* potential disputes between the parties." *Id.*

But Avient's arguments in the prior lawsuit addressed the *scope* of the arbitration agreement only and in doing so, acknowledged the overall *validity* of the agreement. Essentially, by arguing that the arbitration agreement applied to some issues, but not others, Avient first had to agree that the arbitration agreement was valid and binding on the parties. This position is "clearly inconsistent" with its current position, in which it argues that the arbitration agreement is invalid (due to the invalidity and materiality of the judicial-relief provision).

### 2. Court's Acceptance of Earlier Position

Having determined that Avient presented inconsistent positions to the Court, the Court next considers whether it was persuaded to accept Avient's prior position regarding the validity of the arbitration agreement. *See, e.g.*, *Teledyne*, 911 F.2d at 1218 ("[B]efore the doctrine of judicial estoppel may be invoked, the prior argument must have been accepted by the court." (citations omitted)). When discussing this factor, the Supreme Court has explained,

> courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," [*Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)]. Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," *United States v. C.I.T. Constr. Inc.*, 944 F.2d 253, 259 (5th Cir.1991), and thus poses little threat to judicial integrity. See [*United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997); *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C. Cir. 1980)].

*New Hampshire*, 532 U.S. at 750–51. However, "[t]he 'prior success' requirement does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits." *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988). And "[t]he doctrine does

not require a finding that an opponent relied on the position taken by the party in the earlier litigation, and it does not require a showing of mutuality." *Warda v. Comm'r*, 15 F.3d 533, 539 (6th Cir. 1994) (citing *Teledyne*, 911 F.2d at 1220). Instead, what the doctrine requires is "judicial acceptance." *Id.* (citing *Teledyne*, 911 F.2d at 1218). In other words, "judicial estoppel governs a dispute only if the first court 'adopted the position urged by the party, either as a preliminary matter or as part of a final disposition.'" *Id.* (quoting *Teledyne*, 911 F.2d at 1218). Thus, the issue before this Court is whether the Court accepted Avient's position about the validity of the arbitration agreement, either as a preliminary matter or as part of its final disposition, when it issued its ruling the *PolyOne May 2018 Opinion*, 2018 WL 2437241.

Typically, before compelling a party to arbitrate, "the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). However, when the parties do not dispute validity or scope, the Court need not engage in that limited review to determine validity or scope. *See Creason v. Experian Information Solutions, Inc.*, – F. Supp. 3d –, 2024 WL 1221183, *3 (W.D. Ky. Mar. 21, 2024) (explaining that the plaintiff did not dispute these issues, "[s]o the Court needn't conduct even 'a limited review'" to determine those issues (quoting *Javitch*, 315 F.3d at 624)). In other words, where the parties do not dispute validity or scope, the Court can simply adopt the parties' position on those issues, without having to explain its reasoning.

That is exactly what occurred in the prior lawsuit between Avient (then PolyOne) and Westlake. There, the Court acknowledged that, typically, courts are required to first determine whether a valid agreement to arbitrate exists between the parties. *PolyOne May 2018 Opinion*,

2018 WL 2437241, at *8 (citation omitted).  However, because "neither party dispute[d] that the 2007 Agreement containing the arbitration clause was valid," the Court did not conduct a validity analysis and instead adopted the parties' positions on that issue before going on to consider whether the parties' dispute fell within the scope of the agreement. *Id.* ("As neither party disputes that the 2007 Agreement containing the arbitration clause was valid, the Court is left to decide whether 'the specific dispute falls within the substantive scope of the agreement.'" (quoting *Masco Corp. v. Zurich American Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004))). The Court therefore concludes that, in the 2018 ruling, it accepted—indeed, adopted—Avient's position that the agreement was valid as a preliminary matter before it then went on to consider Avient's arguments regarding scope. *See generally Warda*, 15 F.3d at 539 ("[J]udicial estoppel governs a dispute only if the first court 'adopted the position urged by the party, either as a preliminary matter or as part of a final disposition.'" (quoting *Teledyne*, 911 F.2d at 1218)).

### 3. Unfair Advantage or Detriment

The third factor the Court should consider is "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."[16] *Brandenburg*, 658 F. Supp. 3d at 468 (quoting *Shufeldt*, 855 F. App'x at 243) (internal quotation marks omitted).  In this case, "[t]here can be no question that [Avient] would derive an unfair advantage if allowed to assert its inconsistent position and proceed with its [challenge to the judicial-relief provision] in this Court." *Id.* Avient "would essentially be allowed to squat" on its rights while proceeding to arbitration multiple times throughout the years—at times even insisting on arbitration—then seek to invalidate those very proceedings after receiving unfavorable rulings. *See id.* (ruling similarly where one party sat on

---

[16] The parties address this factor but style it as one of "prejudice" and "detrimental reliance." *See, e.g.* [R. 81, pp. 16–18].

its federal claims for over a decade and only asserted those claims after receiving an unfavorable ruling in state court). This "would be the quintessential second bite at the apple." *Id.*

Certainly, the Court's acceptance of Avient's current position would provide an unfair advantage to Avient. As to this element, Avient argues that "past arbitral award[s] would remain binding if Avient prevails" in invalidating the arbitration agreement. [R. 82, p. 4]. But this ignores the fact that Avient would be permitted a second bite at the apple, or more accurately, a second opportunity to dispute Allocable Costs, this time in a different forum, despite approximately sixteen years of mutual reliance on the arbitration agreement and despite multiple arbitration rulings over the years. This would all be to the detriment of Westlake, which has proceeded for years with the understanding that the arbitration agreement was valid and binding between the parties, and which has engaged fully with the arbitration process multiple times in the last sixteen years. During that time, an extensive arbitration record developed, and the arbitrators were forced to develop an expertise in the complicated facts, issues, and history of this matter. The arbitrator raised this very point in a July 2018 arbitration hearing, questioning why Avient was just now raising its judicial-relief arguments "after so much water has gone under the bridge," and not just "dribs of water," but "about eight years of water and two separate arbitrations instituted under the" arbitration agreement. [R. 45-7, pp. 9:22–11:05 (July 21, 2018 Arbitration Hearing Transcript Excerpt)]. And currently, Westlake has engaged in litigation in this Court for nearly two years, during which time the 2022 arbitration has been stayed. Thus, for two years, Westlake has waited for an answer to its allocable costs question. If nothing else, then, Avient's tactics and change in position have resulted in a significant delay in resolving the issues presently before the arbitration panel. The Court therefore concludes that Avient's current

position, if it were allowed to proceed on it, would present Avient with an unfair advantage and would work an unfair detriment on Westlake.

### 4. Additional Considerations

In addition to the three factors outlined above, the Court may also weigh "additional considerations . . . in specific factual contexts." *Brandenburg*, 658 F. Supp. 3d at 463 (quoting *New Hampshire*, 532 U.S. at 751) (internal quotation marks omitted). As this Court has previously explained,

> [T]he Court should "consider all of the circumstances in evaluating whether [a party's] inconsistent statements justify estopping the [party] from pursuing [its current] claims." *Thompson*, 725 F.Supp.2d at 710. For example, the Court should consider whether the inconsistent opinions resulted from mere mistake. As the Sixth Circuit has explained, judicial estoppel "only applies when the positions at issue are clearly contradictory and the estopped party's conduct involves more than mistake or inadvertence." *Shufeldt*, 855 F. App'x at 243 (quoting *Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 575 (6th Cir. 2020)) (internal quotation marks omitted). To that end, judicial estoppel should be invoked only "to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) (quoting *Teledyne Indus., Inc.*, 911 F.2d at 1218). The Sixth Circuit has described such "cynical gamesmanship" as "the perversion of the judicial machinery," "playing fast and loose with the courts," "blowing hot and cold as the occasion demands," and "hav[ing] [one's] cake and eat[ing] it too." *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988).

*Id.* at 468–69.

In the present case, the Court cannot ignore Avient's apparent motive in seeking to challenge the judicial-relief provision. For years, the parties have consistently proceeded to arbitration under the terms of the arbitration agreement. Then, in May 2018, the arbitration panel ruled against Avient on a motion for summary disposition and granted Westlake's motion for summary disposition, essentially ruling that Westlake was entitled to recover certain costs. [R. 45-5 (Preliminary Order No. 16)]. On July 6, 2018, the arbitration panel again ruled in favor of Westlake on another motion for summary disposition. [R. 45-6 (Preliminary Order No. 20]. In

- 37 -

other words, Westlake, not Avient, was prevailing in the arbitration proceeding. Days later, on

July 10, 2018, Avient filed suit in this Court, this time seeking to invalidate the entire arbitration

agreement based on the Tenth Circuit's February 2018 decision in *Potawatomi*. When Avient

then sought a stay of the arbitration, the arbitration panel expressed concerns regarding Avient's

motives for filing the 2018 federal court action. While the Court has already discussed those

concerns, *see supra* Section III(B)(3)(6), the arbitration panel's comments bear repeating here:

> [O]ne of the things I'm struggling with—you know, *Hall Street* is an old case and
> you guys are really good lawyers, and I find it very difficult to believe that a case
> so on point escaped your notice. . . . [B]ut one thing that occurs to me is that you
> guys did know about *Hall Street*, and instead of *Potawatomi*, it should have been
> PolyOne who brought that challenge to the arbitrability provision in your settlement
> agreement, you know, five, six, seven, eight, nine years ago. But you didn't do
> it. . . . Now things are changing and orders are being issued by this panel, and
> maybe—I don't think *Potawatomi* . . . really does a whole lot that *Hall Street*
> doesn't do. . . . And why are we just getting this now, after so much water has gone
> under this bridge? And I'm not just talking about dribs of water, I'm talking about
> eight years of water and two separate arbitrations instituted under that clause by
> [Avient], that's now telling us the clause is no good.

*See* [R. 45-7, pp. 9:22–11:05 (July 21, 2018 Arbitration Hearing Transcript Excerpt)].

As this Court has already explained, *see supra* Section III(B)(3)(b), this Court holds

similar concerns about Avient's motives. Indeed, on the record before this Court, it appears clear

that Avient sat on its right to challenge the judicial-relief provision—a right that has been well

established since *Hall Street*—until it began to receive unfavorable rulings in the arbitration

proceeding. Then, seeking a way to avoid arbitration, it attacked the judicial-relief provision and

the arbitration agreement as a whole, seeking to have that agreement severed completely from

the 2007 Settlement Agreement.

The Court cannot ignore Avient's sudden shift in position and the motive behind it.

Instead, for the reasons stated above, consideration of the equities in this case persuades the

Court that judicial estoppel is appropriate. Given Avient's inconsistent positions, the Court's

acceptance of Avient's earlier position, the unfair advantage to Avient and the unfair detriment to Westlake if the Court accepts Avient's current position, and Avient's motive for avoiding the arbitration agreement, the Court finds that the doctrine of judicial estoppel bars consideration of Avient's challenge to the judicial-relief provision.

### D.  Claim Preclusion

Even if the doctrine of judicial estoppel did not bar consideration of Avient's challenges, claim preclusion would nevertheless apply. The doctrine of claim preclusion, or res judicata, "prohibits the relitigation of claims that were litigated or could have been litigated between the same parties in a prior action." *Miller v. Admin. Office of the Courts*, 361 S.W.3d 867, 871 (Ky. 2011).[17] To invoke the doctrine, three elements must be satisfied: "(1) there must be an identity of parties between the two actions; (2) there must be an identity of the two causes of action; and (3) the prior action must have been decided on the merits." *Id.* (citing *Harrod*, 283 S.W.3d at 250). If these elements are met, the doctrine applies "even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action." *Reesor v. City of Audubon Park*, No. 2016-CA-000127-MR, 2017 WL 2609243, at *3 (Ky. Ct. App. June 16, 2017) (quoting *Dennis v. Fiscal Court of Bullitt County*, 784 S.W.2d 608, 610 (Ky. Ct. App. 1990)) (internal quotation marks omitted).

---

[17] A federal court generally "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *In re Bursack*, 65 F.3d 51, 53 (6th Cir. 1995) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Accordingly, the Court looks to Kentucky's preclusion law in this case. *See id.* (citation omitted); *see also Product Solutions International, Inc. v. Aldez Containers, LLC*, 46 F.4th 454, 457–58 (6th Cir. 2022) (discussing whether federal law or state res judicata law applies in diversity actions and concluding that state law applies).

Westlake argues that the Court's ruling in May 2018, *see PolyOne May 2018 Opinion*, 2018 WL 2437241, is entitled to preclusive effect under the doctrine of claim preclusion. *See, e.g.*, [R. 74-1, pp. 17–21]. For the reasons set forth below, the Court agrees.

### 1.   Identity of Parties

With respect to the first element, the Court finds that there exists "an identity of parties between the two actions." *Miller*, 361 S.W.3d at 872 (citation omitted). In the 2017 lawsuit (which was ultimately dismissed by the *PolyOne May 2018 Opinion*), the parties were PolyOne (Avient's predecessor) and Westlake, the same parties in this case. Neither party disputes that this element has been satisfied, and the Court finds that there is an identity of parties between the 2017 lawsuit and the present matter. The first element of claim preclusion is therefore satisfied.

### 2.   Identity of Causes of Action

The second element of res judicata requires "an identity of the two causes of action." *Id.* (citation omitted). Before turning to this issue, the Court must address Avient's failure to distinguish the doctrine of claim preclusion (res judicata) from the doctrine of issue preclusion (collateral estoppel). [R. 81, pp. 21–25]. While issue preclusion requires that "the issue in the second case must be the same as the issue in the first case," claim preclusion has no such requirement. *See Miller*, 361 S.W.3d at 871. Thus, claim preclusion "bars not only those claims previously raised, but those which could have been raised in the prior action." *Hashemian v. Louisville Regional Airport Authority*, 493 S.W.3d 843, 846 (Ky. Ct. App. 2016). Failing to recognize this distinction, Avient argues that both doctrines fail because the Court did not previously rule on the exact issue now before it, and there is no final judgment on the merits *of that issue*. *See, e.g.*, [R. 81, pp. 21–25]. But again, this argument completely overlooks the fact

that claim preclusion does *not* require that the issue in this case be the same as the issue in the prior case, and instead, it requires an identity of causes of action. *See Miller*, 361 S.W.3d at 871.

To determine whether an identity of causes of action exists, Kentucky courts employ the "transactional approach." *Lawrence v. Bingham Greenebaum Doll, L.L.P.*, 599 S.W.3d 813, 826 (Ky. 2019) (citation omitted). Under this approach, "[i]dentity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Hashemian v. Louisville Regional Airport Authority*, 493 S.W.3d 843, 846 (Ky. Ct. App. 2016) (quoting *Sanders Confectionary Products, Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992)) (internal quotation marks omitted). Thus, the reviewing court must "compare the factual issues explored in the first action with the factual issues to be resolved in the second" to determine whether there exists a "common nucleus of operative fact" among the two cases. *Lawrence*, 599 S.W.3d at 826 (quoting *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1301–02 (11th Cir. 2001)) (internal quotation marks omitted).

In the context of a res judicata claim, "the test for 'common nucleus of operative fact' . . . is not simply one of whether the two claims are related to or may materially impact one another." *Id.* (quoting *In re Piper*, 244 F.3d at 1301) (internal quotation marks omitted). Instead, "[i]f the factual scenario of the two actions parallel, the same cause of action is involved in both." *Id.* (quoting *Motient Corp. v. Dondero*, 269 S.W.3d 78, 83 (Tex. App. 2008)) (internal quotation marks omitted). Accordingly, it is possible for the doctrine of res judicata to apply even when a claim raised in the second action was not raised in the first action but *could have been* raised in that initial case. *See, e.g.*, *Hashemian*, 493 S.W.3d at 846 ("Res judicata bars not only those claims previously raised, but those which could have been raised in the prior action.").

- 41 -

With these principles in mind, the Court turns to the *PolyOne May 2018 Opinion*. As already noted, Avient initiated that lawsuit, seeking to determine whether certain construction costs qualified as Allocable Costs. *PolyOne May 2018 Opinion*, 2018 WL 2437241, at *6. The Court ultimately found that the issue was subject to arbitration and dismissed the lawsuit. *Id.* at *11. In doing so, the Court acknowledged that it was required to first determine whether a valid arbitration agreement existed between the parties. *Id.* at *8. It quickly concluded that a valid arbitration agreement existed, due to the fact that "neither party dispute[d] that the 2007 Agreement containing the arbitration clause was valid." *Id.* Clearly then, one of the factual issues that was explored in the 2017 lawsuit and resolved by the 2018 opinion was the validity of the arbitration provision—the very issue that Avient now seeks to argue in this pending lawsuit.

At the time of that lawsuit, Avient could have sought to invalidate the arbitration provision by relying on *Hall Street* and basic principles of contract interpretation. If it had been successful in doing so, the Court could have considered the issues raised in Avient's 2017 complaint (i.e., whether Westlake was entitled to indemnification of certain construction costs). Clearly then, the "'facts creating the right of action and of the evidence necessary to sustain each action'" was present in the 2017 lawsuit. *Hashemian*, 493 S.W.3d at 846 (quoting *Sanders Confectionary Products, Inc*, 973 F.2d at 484). Avient failed to raise those issues before the Court in that 2017 lawsuit, however. Nevertheless, it attempts to make those same arguments here. The Court therefore finds that there is an identity of the causes of action in this case, under Kentucky's transactional approach.

### 3.  Final Judgment on the Merits

To satisfy this final element, "the prior action must have been decided on the merits." *Miller*, 361 S.W.3d at 872 (citation omitted). In Kentucky, "[a] judgment on the merits is one

- 42 -

which is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction or form." *Martin v. Personnel Bd.*, 959 S.W.2d 779, 780–81 (Ky. Ct. App. 1997) (citations omitted). Thus, if a case is dismissed for lack of subject matter jurisdiction, failure to name an indispensable party, or similar reasons, it has not been adjudicated on the merits. *See id.*; *Clemmer v. Rowan Water, Inc.*, 277 S.W.3d 633, 635 (Ky. Ct. App. 2009); *Hamm v. Workman*, No. 2009-CA-001767-MR, 2009 WL 2192790, at *2 (Ky. Ct. App. July 24, 2009); *see also Brandenburg Tel. Co.*, 658 F. Supp. 3d at 461–62 (discussing the "final judgment on the merits" element). However, orders dismissing cases under Rule 12(b)(6) typically qualify as final judgments on the merits for preclusion purposes. *See* 50 C.J.S. *Judgments* § 949 (May 2024 Update) ("A judgment on a motion to dismiss for failure to state a claim on which relief can be granted, or on a general demurrer on substantive grounds, ordinarily bars another action for the same cause, having preclusive effect as a final judgment on the merits.").

In the *PolyOne May 2018 Opinion*, the Court addressed Westlake's motion to dismiss for lack of subject matter jurisdiction. *PolyOne May 2018 Opinion*, 2018 WL 2437241, at *9. Specifically, Westlake argued that disputes over Allocable Costs must be decided by an arbitration panel, pursuant to the Settlement Agreement's arbitration provision. *Id.* The Court ultimately granted Westlake's motion, explaining that "the question of who will decide the dispute over whether 'construction costs' qualify as Allocable Costs is at least 'arguably covered by the agreement,' and therefore, it falls under the jurisdiction of the Arbitration Panel." *Id.* at *10.

At first glance, it appears that the Court dismissed the matter for lack of subject matter jurisdiction, but a closer reading of the Court's decision reveals otherwise. First, nowhere in the May 2018 decision does the Court conclude that it lacks subject matter jurisdiction due to the

- 43 -

arbitration agreement. Instead, the Court concludes only that the issues raised in the 2017 lawsuit—namely, whether certain construction costs qualified as Allocable Costs—were reserved for arbitration. *Id.* After reaching this conclusion with respect to Count I of Avient's complaint, the Court goes on to consider Avient's remaining claims, something it could not do if it lacked subject matter jurisdiction over the suit. *See id.* at \*11. In those remaining claims, Avient disputed the costs allegedly incurred by Westlake and submitted for indemnification. *Id.* The Court concluded that, to decide these issues, it would have to decide the very question that the Court had already concluded should be decided by the arbitration panel—i.e., whether the construction costs are Allocable Costs under the Settlement Agreement. *Id.* In declining to decide that issue, the Court explained, "It would be illogical and against the interest of judicial economy for this Court to send this issue to the Arbitration Panel and then simultaneously announce its own decision on the matter." *Id.* The Court did *not* hold that it lacked subject matter jurisdiction over that issue; rather, it felt that it was in the interests of judicial economy to allow the arbitration panel to resolve that issue first.

Case law also supports the conclusion that the May 2018 decision was not a dismissal for lack of subject matter jurisdiction. For example, in *Aqua-Chem, Inc. v. Bariven, S.A.*, 3:16-cv-553, 2017 WL 10379636 (E.D. Tenn. Aug. 17, 2017), the defendant argued that the district court lacked subject matter jurisdiction because the parties had entered into a mandatory arbitration agreement. *Id.* at \*2. The district court reviewed "[b]asic jurisdictional principles, the text of the Federal Arbitration Act, and persuasive authority from the Supreme Court and the Sixth Circuit," and concluded that "the more reasonable interpretation of the law" is that Federal Rule of Civil Procedure 12(b)(1) (which allows for dismissal for lack of subject matter jurisdiction) is an improper procedural mechanism for enforcing an arbitration agreement. *Id.* On this point, the

district court noted that the parties cannot alter the Court's authority to hear a case via contract. *Id.* (citing *Valinski v. Detroit Edison*, 197 F. App'x 403, 406 (6th Cir. 2006)). In that case, the requirements of diversity jurisdiction were satisfied, so the court had "subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, even in the face of a binding arbitration agreement." *Id.* (citation omitted). The court therefore denied the defendant's motion to dismiss to the extent it sought dismissal for lack of subject matter jurisdiction. *Id.* at 3. To enforce the arbitration agreement, the defendant would need to seek dismissal under Rule 12(b)(6), instead. *Id.*; *see also Jacobs Field Servs. N. Am., Inc. v. Wacker PolySilicon N. Am., LLC*, 375 F. Supp. 3d 898 (E.D. Tenn. 2019) (construing a motion to dismiss based on an arbitration clause as a motion under Rule 12(b)(6) because "[t]he arbitration agreement, if valid, would not deprive the Court of subject matter jurisdiction" (citation omitted)); *Rajapakse v. Internet Escrow Services*, 2022 WL 4084417, *4 (ED Tenn. 2022) (agreeing with the *Aqua-Chem* court that "the mere existence of an arbitration agreement between the parties does not deprive the Court of subject-matter jurisdiction over the parties' disputes"); *FCCI Ins. Co. v. Nicholas County Library*, No. 5:18-cv-038-JMH, 2019 WL 1234319, at *3–4 ("Here, the defect created by the binding arbitration clause, assuming it applies to these claims, does not appear to be a lack of subject matter jurisdiction where the Court in fact has and may retain subject matter jurisdiction pending arbitration.").

The Court therefore finds that the May 2018 decision did *not* dismiss for lack of subject matter jurisdiction. In other words, this Court had "subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, even in the face of a binding arbitration agreement." *Aqua-Chem, Inc.*, 2017 WL 10379636, at *2 (citation omitted). Instead, the May 2018 decision is best characterized as a dismissal under Rule 12(b)(6). As noted above, dismissals under Rule 12(b)(6) are generally

considered to be final judgments on the merits for claim preclusion purposes. *See* 50 C.J.S. *Judgments* § 949 (May 2024 Update) ("A judgment on a motion to dismiss for failure to state a claim on which relief can be granted, or on a general demurrer on substantive grounds, ordinarily bars another action for the same cause, having preclusive effect as a final judgment on the merits."). Further, Avient does not dispute that the *PolyOne May 2018 Opinion* is a final[18] judgment on the merits.[19] The Court therefore finds that this final element of claim preclusion has been satisfied.

In sum, there exists an identity of the parties and the causes of action in this suit and the 2017 lawsuit, and the *PolyOne May 2018 Opinion* is a final judgment on the merits for purposes of claim preclusion. With all elements of claim preclusion satisfied, the Court finds that the doctrine applies to this case and specifically to the issue of whether the judicial-relief provision (and arbitration agreement) is valid. As such, even assuming the doctrines of waiver or judicial estoppel did not apply, the doctrine of claim preclusion bars Avient's claims in this Court.

Accordingly, for the reasons outlined above, the Court finds that Avient has abandoned its right to challenge the judicial-relief provision (and the arbitration agreement) with respect to Westlake's 2022 arbitration demand, and moreover, the doctrines of judicial estoppel and claim preclusion bar Avient from challenging the validity of the judicial-relief provision, in this action

---

[18] While neither party appears to dispute the finality of the May 2018 decision, the Court notes that, in other contexts, courts have held that orders compelling arbitration are considered final judgments. *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 86–87 (2000) (finding that an order compelling arbitration and dismissing claims without prejudice was a final judgment that could be immediately appealed under Section 16 of the FAA); *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 885 (6th Cir. 2002) (finding that a district court's order granting a petition to compel arbitration and enjoining related state-court proceedings was a final judgment that could be immediately appealed under the FAA); *Teamsters Loc. Union No. 89 v. Kroger Co.*, No. 3:07-CV-351, 2009 WL 2487362, at *2 (W.D. Ky. Aug. 14, 2009) (determining that, for purposes of Federal Rule of Civil Procedure 54(b), order compelling arbitration of certain claims was a final judgment).

[19] Instead, Avient argues that the 2018 decision is not a final judgment on the merits *of the validity issue*. [R. 81, pp. 22–24]. The Court has already explained, however, that Avient's arguments are based on a misunderstanding of the requirements of claim preclusion versus the requirements of issue preclusion. *See supra* Section III(D)(2).

and in future actions. The Court's analysis does not end here, however, as it must go on to consider whether it can or should turn a blind eye to a contractual provision that likely violates federal law.

### E.   Illegal Contract Provision[20]

Both this Court and the Sixth Circuit have suggested that the judicial-relief provision was likely to be invalid under *Hall Street*. *See, e.g.*, *PolyOne Corp.*, 937 F.3d at 694 ("On the merits, PolyOne has a strong case."); *PolyOne July 2018 Opinion*, 2018 WL 3625742, at *2 ("[T]here is a strong argument that Section 6 is invalid under the holding of the Supreme Court in [*Hall Street*]."). Recognizing this, the Sixth Circuit in *PolyOne* identified an "important issue to consider": "can [a court] turn a blind eye to a contract that violates federal law, simply because one party has waived its challenge to that contract?" *PolyOne Corp.*, 937 F.3d at 701.

On this point, Westlake argues that the Court can simply sever the offending provision while leaving the remainder of the arbitration agreement intact. [R. 74-1, pp. 8–13]. As Westlake acknowledges, this requires the Court to undertake a materiality analysis to determine if the judicial-relief provision is material to (and therefore not severable from) the arbitration agreement. *See id.* But, Westlake argues, Avient has waived its right to make that materiality argument, so the Court should simply sever the judicial-relief provision and go no further. *Id.* at 9. In other words, Westlake asks this Court to find that the judicial-relief provision is invalid and sever it from the arbitration agreement. Yet, Westlake spent the bulk of this litigation seeking to prevent Avient from challenging the judicial-relief provision. *See, e.g.*, [R. 43-1, pp. 13–16 (arguing that Avient has permanently waived its validity challenge). Now, Westlake continues to

---

[20] Westlake argues in its response brief that the contract is not "illegal." [R. 80, pp. 17–19]. But the point of the Sixth Circuit's analysis on this issue, *PolyOne Corp.*, 937 F.3d at 701, was that the contract's judicial-relief provision likely violates federal law and, as a result, the Court must consider whether it should "turn a blind eye" to that provision. *Id.* Whether one calls it an illegal provision or an invalid provision, the question is the same.

argue waiver—indeed, *permanent* waiver—and other doctrines that would bar Avient from raising these issues, but it nevertheless asks the Court to invalidate the judicial-relief provision and sever it from the arbitration agreement. [R. 74-1, pp. 8–13]. Regardless, for the reasons set forth below, the Court finds that it need not address the validity, materiality, or severability of the judicial-relief provision.

As the Sixth Circuit explained in *PolyOne*, "It is a basic principle of contract law that a court 'may refuse to enforce a contract on grounds of illegality where the contract has a direct objective or purpose that violates the federal or a state Constitution, a statute, an ordinance, or the common law.'" *PolyOne Corp.*, 937 F.3d at 701 (quoting *Yeager v. McLellan*, 177 S.W.3d 807, 809 (Ky. 2005)); *see also Wieland Holdings, Inc. v. Synergy Tax Consultants, LLC*, No. 3:22-CV-72-CRS, 2023 WL 2731046, *7 (W.D. Ky. Mar. 30, 2023) (explaining that, in Kentucky, a court may refuse to enforce a contract on grounds of illegality (citations omitted)). Simply put, "[c]ourts may void contracts that violate law or public policy." *Martello v. Santana*, 713 F.3d 309, 313 (6th Cir. 2013).

But, as the Sixth Circuit acknowledged, a court need not do so in every case. In some cases, the illegality is serious enough that "a court simply cannot ignore the illegality of a contract, no matter the parties' prior conduct." *PolyOne*, 937 F.3d at 701 (citing 8 Richard A. Lord, Williston on Contracts § 19:12 (4th ed. 2012)). For example, the unenforceability of some contracts "is plain," such as "when an agreement involves a serious crime or tort." *Id.* (quoting Restatement (Second) of Contracts § 178 cmt. b (1981)). On the other hand, in some cases "the contravention [of public policy] is so trivial [such] that it plainly does not preclude enforcement." *Id.* (quoting Restatement (Second) of Contracts § 178 cmt. b).

Accordingly, in this case, the Court must determine whether the alleged illegality in this case is serious enough to warrant voiding that provision (or the entire arbitration agreement, depending on the merits of the parties' severance arguments). The Sixth Circuit considered this same question in *PolyOne* in 2019 but concluded that "[t]his Agreement does not involve activity so egregious that we must overlook PolyOne's waiver and reach the merits of its argument." *Id.* The Sixth Circuit noted that "[t]he Agreement does not contemplate criminal activity or the commission of a tort. Nor did the parties include the judicial-relief provision to willfully contravene the law," as *Hall Street* had not been decided at the time the parties entered into the Agreement. *Id.* Thus, the Court did not "feel compelled to ignore PolyOne's waiver" and therefore did not consider the merits of PolyOne's argument that the judicial-relief provision was invalid. *Id.*

This Court reaches the same conclusion. According to the Restatement (Second) of Contracts, "[w]hether a promise is unenforceable on grounds of public policy is determined as of the time that the promise is made and is not ordinarily affected by a subsequent change of circumstances, whether of fact or law." Restatement (Second) of Contracts § 179 cmt. d (1981) (June 2024 Update); *see generally Burton v. Farm Bureau Ins. Co.*, 116 S.W.3d 475, 479 (Ky. 2003) (explaining that validity is determined at the time the contract is made and thus it "is either against public policy or it is not"). The Sixth Circuit relied in part on this comment from the Restatement when determining that it was not compelled to consider the illegality of the judicial-relief provision, noting that the provision did not contravene public policy at the time the parties entered into the Settlement Agreement. *PolyOne*, 937 F.3d at 701. For the same reason, this Court also declines to consider the alleged illegality of the judicial-relief provision. In doing so, this Court, like the Sixth Circuit, also recognizes that the judicial-relief provision does not

contemplate or encourage criminal or tortious conduct. The Court also notes that at no point since entering into the Settlement Agreement (and arbitration agreement) in 2007 has either party invoked the judicial-relief provision. Thus, the Court has no reason to believe that the continued existence of the judicial-relief provision will have any detrimental effect or significant public policy implications moving forward. Indeed, to cabin the use of this provision, Section 6.5 disincentivizes a party from invoking the judicial-relief provision by entitling the "prevailing party" to recover legal fees and expenses. [R. 6, p. 9].

Lastly, the Court notes that the equities of this situation do not "compel[] [the Court] to ignore [Avient's] waiver," or the preclusive effect of claim preclusion or judicial estoppel. *PolyOne*, 937 F.3d at 701. As already explained, Avient repeatedly demanded arbitration over the years and only argued for invalidity of the judicial-review provision (and severance of the entire arbitration agreement) after it began receiving unfavorable rulings in arbitration, despite knowledge of *Hall Street*. And even after the Sixth Circuit issued its decision in 2019, Avient continued to demand arbitration, only filing suit in this Court after Westlake initiated the 2022 arbitration. [R. 43-17 (April 2020 Letter)]; *see also* [R. 74-9 (2021, 2022, and 2023 Letters referring to April 2020 Letter)]. Accordingly, for this reason and those set out above, the Court will not consider the alleged illegality of the judicial-relief provision, or its materiality or severability from the arbitration agreement.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Westlake's Motion for Summary Judgment, [R. 74], on the grounds that Avient has waived its right to challenge the arbitration provision with respect to the 2022 arbitration proceeding, and it is further barred from

challenging the validity of the judicial-relief provision by the doctrines of judicial estoppel and claim preclusion. It will therefore deny Avient's Motion for Summary Judgment, [R. 77].

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Defendant Westlake Vinyls, Inc.'s Motion for Summary Judgment, [**R. 74**], is **GRANTED**.

2. Plaintiff Avient Corporation's Motion for Summary Judgment, [**R. 77**], is **DENIED**.

3. A separate judgment shall issue.

This the 30th day of September, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc: Counsel of Record